IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LR TRUST, et al., | ) | |
| | ) | |
| | ) | Civil Action No. 2:14-cv-00612 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE MICHAEL H. WATSON |
| | ) | |
| NICHOLAS DiAPAOLO *et al.*, | ) | MAGISTRATE JUDGE KING |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AND ENTRY OF ACCOMPANYING ORDER FOR NOTICE
AND SCHEDULING OF HEARING ON SETTLEMENT**

**Table of Contents**

TABLE OF AUTHORITIES ................................................................................... ii

I.      PRELIMINARY STATEMENT .................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................3

III.    THE TERMS OF THE SETTLEMENT .....................................................9

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..............12

        A.      Standard For Preliminary Approval...................................................12

        B.      The Settlement Obtained Significant And Meaningful Benefits For R.G.
                Barry Shareholders.............................................................................14

                1.      Material Disclosures Regarding Management's Financial  Projections ....16

                2.      Material Disclosures Regarding The Sales Process And Background
                        Leading up to the Merger.........................................................18

                3.      Material Disclosures Regarding PJSC's Financial Analyses....................19

        C.      The Risk and Expense of Further Litigation........................................21

V.      PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER .....25

        A.      The Settlement Class Is So Numerous That Joinder Of All Members Is
                Impracticable.....................................................................................26

        B.      There are Issues of Law and Fact Common to All Settlement Class Members ....27

        C.      Plaintiffs' Claims Are Typical of the Settlement Class' Claims ..........................28

        D.      Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ..............29

        E.      Certification Is Proper Under Rules 23(B)(1) And 23(b)(2) ................................29

VI.     THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS IS
        ADEQUATE.........................................................................................30

VII.    PROPOSED SCHEDULE OF EVENTS.....................................................31

VIII.   CONCLUSION.....................................................................................33

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adair v. Wozniak*,
  492 N.E.2d 426 (Ohio 1986)....................................................................23

*Arnold v. Soc'y for Sav. Bancorp., Inc.*,
  650 A.2d 1270 (Del. 1994) ...............................................................15, 18

*Babcock v. Computer Assocs. Int'l.*,
  212 F.R.D. 126 (E.D.N.Y. 2003) ..........................................................29

*Bailey v. AK Steel Corp.*,
  2008 U.S. Dist. LEXIS 16704 (S.D. Ohio Feb. 21, 2008), *aff'd sub nom. Bailey v. White*, 320
  F. App'x 364 (6th Cir. 2009) ...............................................................12

*Bert v. AK Steel Corp.*,
  2008 U.S. Dist. LEXIS 111711 ...............................................................13

*Bittinger v. Tecumseh Prods. Co.*,
  123 F.3d 877 (6th Cir. 1997) ...............................................................27

*Carlson v. Rabkin*,
  789 N.E. 2d 1122 (Ohio 2003)...............................................................22

*In re Celera Corp. S'holder Litig.*,
  2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012), *rev'd in part on other grounds*, 2012 Del.
  LEXIS 658 (Del. 2012).............................................................21, 25, 30

*In re Chips & Techs., Inc. S'holders Litig.*,
  1998 Del. Ch. LEXIS 109 (Del. Ch. June 24, 1998) .................................19

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005)....................................................13

*In re Countrywide Corp. S'holders Litig.*,
  2009 Del. Ch. LEXIS 155 (Del. Ch. Aug. 24, 2009).................................14

*In re Countrywide Corp. S'holders Litig.*,
  2009 Del. Ch. LEXIS 44 (Del. Ch. Mar. 31, 2009) .................................27

*In re Cox Radio, Inc. S'holders Litig.*,
  2010 Del. Ch. LEXIS 102 (Del. Ch. May 6, 2010) .................................30

*David P. Simonetti Rollover IRA v. Margolis*,
  2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) .................................16

*Dubroff v. Wren Holdings, LLC*,
  2010 Del. Ch. LEXIS 178 (Del. Ch. Aug. 20, 2010)............................................................27

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)............................................................................................................30

*In re Emerging Commc'ns, Inc. S'holder Litig.*,
  C.A. No. 16415, Del. Ch. LEXIS 70 2004 WL 1305745 (Del. Ch. May 3, 2004)................16

*Granada Invest., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ............................................................................................12

*Henkel v. Aschinger*,
  962 N.E.2d 395 (Ohio Com. Pl. 2012) ..........................................................................23, 24

*In re IXC Commc'ns, Inc. Shareholder Litig.*,
  Nos. 17324 & 17334, 1999 WL 1009174 (Del. Ch. Oct. 27, 1999).....................................25

*In re Keithley Instruments, Inc.*,
  599 F. Supp. 2d 908 (N.D. Ohio 2009)................................................................................14

*Kennedy v. United Healthcare of Ohio, Inc.*,
  206 F.R.D. 191 (S.D. Ohio 2002) ..................................................................................26, 29

*Kugelman v. PVF Capital Corp.*,
  972 F. Supp. 2d 993 (S.D. Ohio 2013) ...............................................................................25

*Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*,
  2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009)............................................................21

*In re Lease Oil Antitrust Litig.*,
  186 F.R.D. 403 (S.D. Tex. 1999)........................................................................................30

*Little Caesar Entpr., Inc. v. Smith*,
  172 F.R.D. 236 (E.D. Mich. 1997) ......................................................................................28

*LR Trust v. R.G. Barry Corporation et al.*,
  Case No. 14 CV 362 ..............................................................................................................3

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc., et. al.*,
  C.A. No. 5402-VCS, 2010 WL 1931084 (May 13, 2010).....................................................16

*Marie Raymond Revocable Trust v. MAT Five LLC*,
  980 A.2d 388 (Del. Ch. 2008)..............................................................................................28

*Mayo v. Sears, Roebuck & Co.*,
  148 F.R.D. 576 (S.D. Ohio 1993) .......................................................................................28

*Mentis v. Delaware Am. Life Ins. Co.*,
  2000 Del. Super. LEXIS 237 (Del. Super. Ct. May 30, 2000) .................................................27

*Metro Commc'n Corp. BVI v. Advanced MobileComm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004)...................................................................................................15

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)...................................................................................................................14

*Monday v. Meyer*,
  No. 1:10 CV 1838, 2011 WL 5974664 (N.D. Ohio 2011) .................................................23, 24

*In re The MONY Grp. Inc. S'holder Litig.*,
  852 A.2d 95 (Del. Ch. 2004)......................................................................................................19

*Nagy v. Bistricer*,
  770 A.2d 43 (Del. Ch. 2000).....................................................................................................18

*In re Nationwide Fin. Servs. Litig.*,
  2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009).....................................................12

*In re Netsmart Techs. Inc.*,
  924 A.2d 171 (Del. Ch. 2007)........................................................................................ 18-20, 22

*Olden v. Gardner*,
  294 F.App'x. 210 (6th Cir. 2008) .............................................................................................14

*In re Packaged Ice Antitrust Litig.*,
  2010 U.S. Dist. LEXIS 77645 ( E.D. Mich. Aug. 2, 2010) .......................................................12

*Pfeffer v. Redstone*,
  965 A.2d 676 (Del. 2009) ..........................................................................................................25

*In re PNB Holding Co. S'holders Litig.*,
  No. 28-N, 2006 Del. Ch. LEXIS 158 (Del. Ch. Aug. 18, 2006).................................................16

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) ....................................................................................................14

*In Re Pure Res., S'holders Litig.*,
  808 A.2d 421 (Del. Ch. 2002).....................................................................................................20

*Radol v. Thomas*,
  772 F.2d 244 (6th Cir. 1985) ......................................................................................................23

*Smith v. Robbins & Myers*,
  969 F.Supp. 2d 850 (S.D. Ohio 2013) ......................................................................................23

iv

*Sprague v. GMC,*
    133 F.3d 388 (6th Cir. 1998) ...................................................................27, 28

*In re Staples, Ins. S'holders Litig.,*
    792 A.2d 934 (D. Ch. 2001) ...................................................................16, 19

*Stroud v. Grace,*
    606 A.2d 75 (Del. 1992) ................................................................................15

*In re Syncor ERISA Litig.,*
    227 F.R.D. 338 (C.D. Cal. 2005) ..................................................................30

*Turberg v. ArcSight,*
    C.A. No. 5821-VCL, at 43 (Del. Ch. 2011) (transcript attached as Exhibit 2 to the Acocelli Aff.)........................................................................................................21

*Turner v. Bernstein,*
    768 A.2d 24 (Del. Ch. 2000)........................................................................30

*Walther v. Pension Plan for Salaried Employees of the Dayton-Walther Corp.,*
    880 F. Supp. 1170 (S.D. Ohio 1994) ......................................................27, 29

*Weston v. Weston Paper & Mfg. Co.,*
    74 Ohio St. 3d 377, 658 N.E.2d 1058 (1996) .............................................23

*Williams v. Vukovich,*
    720 F.2d 909 (6th Cir. 1983) ........................................................................13

*In re Wm. Wrigley Jr. Co. S'holders Litig.,*
    2009 Del. Ch. LEXIS 12 (Del. Ch. Jan. 22, 2009) .................................14, 28

*Zirn v. VLI Corp.,*
    621 A.2d 773 (Del. 1993) ..............................................................................16

**Statutes**

O.R.C. section 1701.59(C)(1) .........................................................................23

**Other Authorities**

Fed. R. Civ. P. 23 .............................................. 9, 24, 26, 27, 29-30

Ohio Civil Rule 23.1 ......................................................................................24

## I.  PRELIMINARY STATEMENT

Plaintiff LR Trust ("LR") respectfully submits this memorandum in support of its Motion for Preliminary Approval of Settlement and Entry of Accompanying Order for Notice and Scheduling of Hearing on Settlement, seeking entry of an Order ("Preliminary Approval Order") that will: (1) grant preliminary approval of the proposed settlement reached by the parties (the "Settlement") in the above-captioned shareholder derivative action (the "Federal Court Action") and the related state court action (collectively, the "Actions") on the terms set forth in the Stipulation and Agreement of Settlement entered into by the parties on September 25, 2015 (the "Stipulation");[1] (2) conditionally certify, for purposes of settlement only, a Settlement Class (defined below); (3) approve the proposed form and method for disseminating notice of the Settlement to the Settlement Class; and (4) set a hearing date at which, following notice and an opportunity for members of the Settlement Class to be heard, the Court will, *inter alia*, consider whether to grant final approval of the Settlement and to grant Plaintiffs' Counsel's application for reasonable attorneys' fees and expenses incurred in connection with their litigation and settlement of the Actions (the "Fee Application").

This is a proposed class action and shareholder derivative action brought on behalf of similarly situated public shareholders of R.G. Barry Corporation ("RG Barry" or the "Company")) and derivatively on behalf of nominal defendant R.G. Barry against members of the Company's Board of Directors, arising out of the proposed sale of R.G. Barry to Mill Road Capital II, L.P. ("Mill Road") at a purchase price of $19.00 per share, announced on May 1, 2014, and completed on September 3, 2014 (the "Merger"). Through their respective Actions, Plaintiffs alleged derivative and class action claims

---

[1] The Stipulation is attached to the Affidavit of Richard A. Acocelli in Support of Plaintiff's Motion for Preliminary Approval of Settlement and Entry of Accompanying Order for Notice and Scheduling of Hearing on Settlement (the "Acocelli Aff.") as Exhibit 1.  Unless otherwise herein defined, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

against the Defendants for breaching their fiduciary duties to R.G. Barry and its shareholders by, among other things, attempting to obtain shareholder approval of the Merger through a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A ("Preliminary Proxy") filed with the United States Securities and Exchange Commission ("SEC") on June 12, 2014.  The factual and procedural background of the Litigation is set forth below at pp. 3-10.

As detailed below, the Settlement obtained substantial and meaningful benefits to R.G. Barry's shareholders and is in the best interests of the Company and its shareholders.  As a direct result of Plaintiffs' successful prosecution of the Actions, R.G. Barry made supplemental disclosures to R.G. Barry's shareholders disclosing information about the Merger well in advance of the Stockholder Vote that was necessary for shareholders to make a fully informed decision on whether to vote in favor of the Merger.  The terms of the Settlement and the benefits to the Settlement Class are described in detail below at pp. 10-12.

The parties agree that certification of a Settlement Class (as defined in Section V *infra* at pp. 26-31) for settlement purposes only, is appropriate in the Federal Court Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

The Stipulation also provides for Notice to the Settlement to the Settlement Class, as explained below at pp. 31-32.

The Parties seek an Order granting preliminary approval of the Settlement, and agree on a proposed settlement schedule (as set forth below at pp. 32-33), subject to this Court's approval.

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that notice of the proposed Settlement should be provided to the shareholders and that a hearing be scheduled for final settlement approval.   Here, there can be no question that the Settlement meets

this standard.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 2, 2014, R.G. Barry, an Ohio corporation, and Mill Road Capital II, L.P., MRGB Hold Co., and MRVK Merger Co. (collectively, "Mill Road") announced that the Company and Mill Road executed a merger agreement ("Merger Agreement") pursuant to which Mill Road would acquire all of the outstanding shares of R.G. Barry (the "Merger").  The Merger was valued at approximately $215 million.

On June 12, 2014, the Company filed the Preliminary Proxy concerning the Merger with the SEC.  Defendants filed amendments to the Preliminary Proxy with the SEC on June 23, 2014, July 16, 2014, and July 29, 2014.

On May 8, 2014, R.G. Barry shareholder Plaintiff Scarfuto commenced the State Court Action by filing a Class Action Complaint challenging the Merger on behalf of the shareholders of R.G. Barry against the Company's Board of Directors and R.G. Barry (collectively, the "R.G. Barry Defendants") and Mill Road.   On May 20, 2014, Plaintiff Scarfuto filed an Amended Derivative and Class Action Complaint in the State Court Action.

On May 14, 2014, another R.G. Barry shareholder, LR, commenced an action in the Fairfield County Court of Common Pleas, titled *LR Trust v. R.G. Barry Corporation et al.*, Case No. 14 CV 362, by filing a Direct Shareholder Class Action Complaint challenging the Merger on behalf of the shareholders of R.G. Barry against R.G. Barry Defendants (the "First LR Action"). On June 9, 2014, LR filed notice dismissing all of its claims asserted in the First LR Action, without prejudice.

On June 17, 2014, the R.G. Barry Defendants filed a motion to dismiss Scarfuto's Direct

---

[2] The background of facts is derived from the Stipulation.

Shareholder Class Action Complaint filed in the State Court Action.

On June 24, 2014, LR commenced the Federal Court Action by filing a Verified Derivative and Class Action Complaint (the "Complaint") challenging the Merger on behalf of the shareholders of R.G. Barry against the R.G. Barry Defendants. LR's Complaint filed in the Federal Court Action alleges, among other things, that the members of the R.G. Barry Board of Directors (the "Board") breached their fiduciary duties in connection with the Merger by: (i) failing to run an adequate sales process, failing to appropriately consider a potentially superior bid from another party, and ultimately agreeing to inadequate Merger consideration; (ii) including in the Merger Agreement deal protection devices that benefit Mill Road; and (iii) making materially misleading statements and/or failing to disclose material information in the Preliminary Proxy, including, among other things, information regarding the background of the Merger and the financial analysis performed by Peter J. Solomon Company L.P. ("PJSC"), the Company's financial advisor.

On June 26, 2014, Scarfuto sought leave in the State Court Action to file a Second Amended Derivative and Class Action Complaint against the R.G. Barry Defendants, dropping Mill Road as a defendant and alleging, among other things, that the members of the R.G. Barry Board breached their fiduciary duties in connection with the Merger by: (i) failing to maximize shareholder value by, among other things, including in the Merger Agreement deal protection devices that benefit Mill Road; and (ii) making materially misleading statements and/or failing to disclose material information in the Preliminary Proxy, including, among other things, information regarding the background of the Merger and the financial analysis performed by PJSC, the Company's financial advisor. On August 6, 2014, in the State Court Action, the State Court entered Orders allowing Scarfuto to file his Second Amended Derivative and Class Action Complaint, deeming the R.G. Barry Defendants' motion to dismiss Scarfuto's prior class action

complaint moot, and allowing the R.G. Barry Defendants additional time to move, plead, or otherwise respond to Scarfuto's Second Amended Derivative and Class Action Complaint.

In July and early August 2014, the Parties in both the State Court Action and the Federal Court Action met and conferred numerous times concerning, among other things, Scarfuto's and LR's informal requests for discovery and the terms of a Stipulated Protective Order.  During this time, LR prepared a motion for a Temporary Restraining Order, Preliminary Injunction Pending Expedited Discovery and Expedited Discovery (the "Expedited Motion") which sought production of certain discovery on an expedited basis and also sought to temporarily enjoin the stockholder vote on whether to adopt the Merger Agreement ("Stockholder Vote") until such discovery was conducted.

On July 11, 2014, LR's counsel served a draft of the Expedited Motion on R.G. Barry's counsel in an effort to advance the Parties' negotiations regarding Plaintiffs' discovery demands.

On August 6, 2014, pursuant to the execution of the agreed-upon Stipulated Protective Order and following the parties' negotiations concerning the scope of informal discovery, the R.G. Barry Defendants' counsel commenced a rolling production of internal, non-public documents to Plaintiffs' Counsel, including (among other things) minutes of meetings of R.G. Barry's Board concerning the Merger, written presentations made to the Board by PJSC containing PJSC's financial analysis relating to the Merger, and certain communications between third-party bidders and R.G. Barry and/or PJSC.

On August 1, 2014, the Company filed a Definitive Proxy Statement on Schedule 14A with the SEC concerning the Merger (the "Definitive Proxy").  The special meeting of shareholders of

R.G. Barry was set for September 3, 2014 to, among other things, vote on a proposal to adopt the Merger Agreement.

Following review and analysis of R.G. Barry's and PJSC's internal documents and further analysis of the Preliminary Proxy, Plaintiffs, in consultation with their retained financial expert, identified certain additional information that they believed had been improperly omitted from the Preliminary Proxy, and that in their view required disclosure prior to the Stockholder Vote to permit R.G. Barry's public shareholders to make fully informed decisions as to whether to vote in favor of the Merger and/or seek appraisal.

Accordingly, on August 14, 2014, Plaintiffs, by and through their counsel, made a written settlement demand (the "Demand") on the R.G. Barry Defendants which included numerous requests for supplemental disclosures to the Company's shareholders regarding the Merger. Thereafter, the Parties engaged in extensive arm's-length negotiations regarding the requests made in the Demand.

On August 22, 2014, counsel for all Parties to the Litigation reached an agreement-in-principle providing for the Settlement of the Litigation on the terms and subject to the conditions set forth in the Stipulation .  In Settlement of the Litigation, the R.G. Barry Defendants agreed to make a filing with the SEC, in a Current Report on Form 8-K, which included the disclosures described below and set forth in Attachment A to a Memorandum of Understanding ("MOU") entered into by the Parties as of August 22, 2014, addressing Plaintiffs' Demand for the disclosure of additional supplemental information regarding the Merger to R.G. Barry shareholders prior to

the Stockholder Vote (the "Supplemental Disclosures"). The Supplemental Disclosures are attached as Exhibit A to the Stipulation filed concurrently herewith.

Prior to providing the Company's shareholders with the Supplemental Disclosures (as defined in Section III, *infra*) with the SEC, Defendants consulted and negotiated with Plaintiffs' Counsel regarding the substance of information to be contained therein.

On August 22, 2014, according to the Parties' agreement set forth in the MOU, R.G. Barry filed the Current Report on Form 8-K containing the Supplemental Disclosures, which forms the basis of the resolution of the Litigation, well in advance of the Stockholder Vote scheduled for September 3, 2014.

Pursuant to the MOU, Defendants agreed to provide Plaintiffs with additional discovery in order to confirm the fairness, reasonableness and adequacy of the proposed Settlement (the "Confirmatory Discovery"). The Confirmatory Discovery was one of the conditions of the Settlement, and was described in the MOU as follows:

> Defendants will provide Plaintiffs' counsel with such reasonable further discovery as may be reasonably necessary to confirm the fairness, reasonableness, and adequacy of the Settlement and the disclosures relating to the [Merger], which confirmatory discovery shall include (i) the depositions of a representative of R.G. Barry and a representative of PJSC, which Plaintiffs agree to use reasonable good faith efforts to limit to 3 hours each; and (ii) certain additional, limited, reasonably available documents and information highly relevant to confirming the fairness of the Settlement, for which Plaintiffs' counsel and R.G. Barry Defendants' counsel will continue to negotiate in good faith. Plaintiffs intend to seek discovery into the Antitrust Analysis presented to the Board on June 13, 2014 ("Antitrust Analysis") and R.G. Barry Defendants, while agreeing to negotiate in good faith in connection with same, reserve all objections to discovery relating to the Antitrust Analysis, based on all applicable privileges and immunities.

Following extensive negotiations between the Parties concerning the scope of the Confirmatory Discovery, Defendants produced additional confidential, non-public documents relevant to Plaintiffs' claims, including additional emails concerning the Merger.

Moreover, Plaintiffs' Counsel conducted the depositions of David P. Lauer, Lead Director of the Company, on April 2, 2015, and Jeffrey Hornstein, Managing Director of PJSC's Mergers and Acquisitions Group and lead financial advisor on the R.G. Barry engagement, on April 23, 2015.

Following the depositions of Messrs. Lauer and Hornstein, Plaintiffs sought additional confirmatory discovery regarding the Antitrust Analysis presented to the Board on June 13, 2014, and the Board's deliberations in connection with the potentially superior third-party bid.

On July 16, 2015, following protracted negotiations among the Parties, the Parties entered into an agreement whereby Defendants agreed to make available additional information regarding the Antitrust Analysis.  This additional information demonstrated that the Board members reasonably informed themselves with respect to the potentially superior third-party bid (the "Alternative Proposal") and justifiably relied on their advisers in determining that the Alternative Proposal was not reasonably expected to result in a superior offer, satisfying their fiduciary duties under Ohio law.  This additional information further confirmed that, subject to the Supplemental Disclosures, the Definitive Proxy did not contain any material misrepresentations or omissions concerning the Board's considerations with respect to the antitrust risk presented by the Alternative Proposal and its determination that the Alternative Proposal was no longer reasonably expected to result in a superior proposal.  This additional information adequately addressed Plaintiffs' concerns regarding the Antitrust Analysis, and completed the Confirmatory Discovery.

After a careful and thorough review of the confidential non-public documents produced by Defendants since August 6, 2014, and consideration of the deposition testimony, Plaintiffs' Counsel have determined that the Supplemental Disclosures provided the Company's shareholders with material information sufficient to make a fully informed decision whether to vote for the

Merger. Defendants expressly acknowledge that the filing and prosecution of the Litigation, and discussions and negotiations with Plaintiffs' Counsel were the sole cause of their decision to make the Supplemental Disclosures. *See* Stipulation at pp. 9, 15.

The Settlement reflects the Parties' vigorous arm's-length negotiations and the material terms of the Stipulation. During the negotiations, all Parties were represented by counsel with extensive experience and expertise in shareholder class action litigation, and had a clear view of the strengths and weaknesses of their respective claims and defenses.

Plaintiffs' Counsel respectfully submit that the Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class in light of: (i) the substantial benefits that Plaintiffs and the Members of the Settlement Class will receive from resolution of the Litigation; (ii) the attendant risks of litigation; and (iii) the desirability of permitting the Settlement to be consummated pursuant to the terms of the Stipulation. Moreover, pursuant to the Settlement, the Parties agree that certification of a Settlement Class (as defined in Section V *infra*) for settlement purposes only, is appropriate in the Federal Court Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## III. THE TERMS OF THE SETTLEMENT

As a direct result of the prosecution of the Litigation, the extensive ongoing negotiations between the Parties, and in consideration for the full settlement and release of all Settled Claims (as defined in the Stipulation), R.G. Barry made the Supplemental Disclosures in a Form 8-K filed with the SEC on August 22, 2014.

The Supplemental Disclosures provided additional supplemental material information to R.G. Barry shareholders, informing them of important and material aspects of the Merger; the events, facts and circumstances leading up to it; and the financial analyses underlying it. Specifically, as fully set forth in Exhibit A to the Stipulation, Defendants agreed to make, and did

make, the Supplemental Disclosures providing additional supplemental information to the

Definitive Proxy:

- that PJSC had presented to the Board a list of financial and strategic buyers which might have an interest in acquiring the Company, which list included both Party A and Party B;

- revisions and updates to financial projections provided in April 2014 to PJSC and Mill Road for fiscal year 2015;

- concerns expressed by Mill Road about those revised and updated projections as expressed in an April 29, 2014, letter from Mill Road to PJSC, which also expressed concerns about alleged inadequate disclosures to Mill Road by R.G. Barry about certain long-term employee incentive plans, a change in R.G. Barry's pension accounting, and the feasibility of sustaining cuts in projected marketing expenses, which combined to make the acquisition more expensive for Mill Road than anticipated when it made its prior $20.00 per share offer and necessitated that Mill Road's investment committee reduce its offer price to $18.75 per share;

- R.G. Barry's subsequent Board meetings to assess Mill Road's April 29, 2014, Letter and how to respond to it;

- information about the specific provisions of the confidentiality agreement entered into between R.G. Barry and Party A, including the fact that it contained customary standstill provisions and a description of those provisions;

- information about PJSC's previously undisclosed contacts in early May 2014 with a fashion accessories retailer referred to in the Definitive Proxy as Party B, who was the only potential acquirer besides Party A who made an inquiry during the "go-shop" period;

- the details concerning R.G. Barry's discussions with Party A and Party B and the details of R.G. Barry's compliance with the Merger Agreement in providing information concerning same to Mill Road in connection with the "go-shop process," including, among other things, that on June 2, 2014, R.G. Barry advised Mill Road that the Board had determined that Party A was an "excluded party" under the Merger Agreement and provided to Mill Road the documents that comprised the Alternative Proposal by Party A, but did not disclose to Mill Road any deliberations by the Board regarding the Alternative Proposal;

- that in estimating a potential $56 million loss of market capitalization (determined by multiplying R.G. Barry's 11.2 million outstanding common shares by a $5 per share drop in trading price) if Party A terminated a merger with R.G. Barry, one of the bases for R.G. Barry's proposed $65 million termination fee with Party A, the

PJSC representative pointed to an earlier analysis in connection with its PJSC fairness opinion (*i.e.*, the Opinion of Peter J. Solomon L.P.--Present Value of Future Stock Price Analysis, which is set forth in full on pages 50-51 of the Definitive Proxy) that suggested that R.G. Barry's share price could drop to $14.00 per share or lower the Company were not sold, a $5 per share drop from the Company's then-trading price of $19 per share;

- that at the June 16, 2014, meeting the Board discussed whether it would be fruitful to request that Mill Road increase its offer in response to the Alternative Proposal from Party A, to which PJSC's representative responded that, based on his discussions with Mill Road, he believed that Mill Road's current offer was its best and final offer and that, even if Mill Road might be willing to increase its offer, it would not do so unless and until the Board determined that the Alternative Proposal was a "superior proposal" which would trigger certain conditions and rights in the Merger Agreement.  Following such discussion, the Board determined it would not be fruitful to request that Mill Road Capital increase its offer;

- the specific transaction-by-transaction enterprise values and multiples forming the basis for the *Selected Precedent Transactions Analysis* conducted by PJSC in connection with and underlying its fairness opinion;

- PJSC's method for calculating unlevered, after-tax free cash flows in connection with its *Discounted Cash Flow ("DCF") Analysis*; and

- details concerning R.G. Barry's projected financial information, as used by PJSC in connection with its *DCF Analysis* based on the financial projections prepared by management for fiscal years 2015 through 2018, including (i) with respect to the Management Case Projections–Excluding Acquisitions, which exclude acquisitions, the following items: (a) EBITDA, (b) EBIT, (c) taxes and tax rate, (d) depreciation and amortization expense, (e) capital expenditures, (f) change in net working capital, and (g) unlevered, after tax free-cash flows; and (ii) with respect to the Management Case Projections–Including Acquisitions which apply the financial impact of two illustrative hypothetical acquisitions, the profiles of which were developed by management and applied to the financial projections prepared by management, the following items: (a) taxes and tax rate, (b) change in net working capital, (c) acquisitions, and (d) unlevered, after tax free-cash flows.

Without admitting any wrongdoing, and for the purposes of the Settlement only, Defendants have acknowledged that Plaintiffs and Plaintiffs' Counsel, through the institution and prosecution of, and the negotiations to resolve the Federal Court Action and the State Court Action, were the sole cause of R.G. Barry having made the Supplemental Disclosures filed with the SEC on August 22, 2014.  *See* Stipulation at pp. 9, 15.

11

In Plaintiffs' view, the Supplemental Disclosures enabled R.G. Barry shareholders to decide whether to vote for the proposed Merger based on full and complete information.  As is discussed in Section IV(B), *infra*, and as will be briefed in greater detail prior to the final Settlement approval hearing, obtaining such disclosures was a particularly appropriate method of settling this case not only because it provided Plaintiffs with a portion of the relief sought in the Complaint, but because it allowed the Company's shareholders to make a fully-informed decision whether to vote in favor of the Merger or seek appraisal with full disclosure of all relevant facts and information.

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Standard For Preliminary Approval

There is a well-settled policy within the Sixth Circuit favoring settlement of class actions. *See In re Packaged Ice Antitrust Litig.*, 2010 U.S. Dist. LEXIS 77645, at 33-34 ( E.D. Mich. Aug. 2, 2010) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."); *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 16704, at 2 (S.D. Ohio Feb. 21, 2008) ("[i]n making this determination, the Court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions"), *aff'd sub nom. Bailey v. White*, 320 F. App'x 364 (6th Cir. 2009) (citation omitted); *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at 3 (S.D. Ohio Aug. 18, 2009) ("The Court recognizes  that settlement of a class action is generally favored and encouraged.") (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)).  To that end, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with."  *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (citing *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)).

Courts particularly favor settlement in shareholder derivative actions, such as this, "because such litigation is notoriously difficult and unpredictable." *Id.* (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (derivative litigation "'is notoriously difficult and unpredictable.'") (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)). Indeed, "'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Moreover, there is an initial presumption that a settlement is fair and reasonable where, as here, the decision to enter into the Settlement was made by highly experienced counsel in complex shareholder litigation who reached that decision only after significant arm's-length negotiations. *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *see also Olden v. Gardner*, 294 F.App'x. 210, 219 (6th Cir. 2008) ("Under ordinary conditions, this court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *Bert v. AK Steel Corp.,* 2008 U.S. Dist. LEXIS 111711 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008) ("[c]lass counsel are all experienced class action litigators. … [having been] involved in dozens, if not hundreds, of such cases. [] His opinion that the proposed settlement is fair to the class is entitled to considerable weight.").

Importantly, preliminary approval does not require the trial court to answer the ultimate question — whether a proposed settlement is fair, reasonable and adequate.[3] *See,* MANUAL

---

[3]    Among the factors that courts consider in connection with final approval of a derivative action settlement are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Poplar Creek Dev.*

FOR COMPLEX LITIGATION (FOURTH) § 13.14 ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").  Rather, that determination is made only *after* Notice of the Settlement has been given to the members of the Settlement Class and *after* they have been given the opportunity to comment on the Settlement.

### B. The Settlement Obtained Significant And Meaningful Benefits For R.G. Barry Shareholders

Courts have long recognized that in derivative actions, non-monetary benefits provide substantial benefits and settlements based on such benefits warrant approval.  *See, e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) (noting that "a corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature.").  Indeed, "Delaware courts have often approved settlements of merger class litigation that entail only non-monetary relief.  Thus, it is not adequate grounds for objection to complain that potential monetary claims are being compromised on terms that do not afford any monetary relief to the class."  *In re Wm. Wrigley Jr. Co. S'holders Litig.*, 2009 Del. Ch. LEXIS 12, at 18-19 (Del. Ch. Jan. 22, 2009) (citations omitted); *see also In re Countrywide Corp. S'holders Litig.*, 2009 Del. Ch. LEXIS 155, at *11 (Del. Ch. Aug. 24, 2009) (holding that "it is not the case that a settlement must include a monetary element in order to pass muster as fair and reasonable.").[4]

---

*Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011).  As will be demonstrated in greater detail at the final approval stage, in a case of difficult to prove and uncertain damages, where considerable risk of recovering nothing existed, Plaintiffs nevertheless obtained a Settlement that provided significant and meaningful benefits for R.G. Barry shareholders.

[4]     R.G. Barry is both incorporated and headquartered in Ohio and "Ohio courts routinely look to Delaware case law for guidance in deciding corporate law issues [.]"  *In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 908, 918, n. 6 (N.D. Ohio 2009) ("[b]oth parties repeatedly reference cases dealing with Delaware law in their briefs.  Accordingly, the Court refers often to such authorities, and, unless distinguished, treats those cases as highly persuasive.").

Here, Plaintiffs' Counsel believe that the Supplemental Disclosures provided significant and meaningful benefits to R.G. Barry shareholders because, without complete disclosure of this information, the Company's shareholders would not have been able to make an informed decision on whether to vote in favor of the Merger.   A fundamental tenet of corporate law is that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval.  *See e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (noting the "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action"); *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (citations omitted) (noting the "well-recognized propositions that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action."); *Metro Commc'n Corp. BVI v. Advanced MobileComm Techs. Inc.*, 854 A.2d 121, 156 (Del. Ch. 2004) ("[T]he fiduciary has the duty to disclose all material facts bearing on the decision at issue.").

The materiality standard is defined as follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . .   It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused a reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Arnold*, 650 A.2d at 1277 (citing *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449, (1976)). Importantly, "materiality is to be assessed from the viewpoint of the 'reasonable' stockholder, not from a director's subjective perspective." *Arnold*, 650 A.2d at 1277 (citing *Zirn v. VLI Corp.*, 621

A.2d 773, 779 (Del. 1993)). Thus, "a material omission is not rendered immaterial simply because the party making the omission honestly believes it [is] insignificant." *Zirn*, 621 A.2d at 779. *Id.*

As detailed herein, the Supplemental Disclosures provided R.G. Barry shareholders with information that was material and vital to shareholders in evaluating the fairness of the Merger and determining how to vote their shares of R.G. Barry stock.

## 1. Material Disclosures Regarding Management's Financial Projections

Courts have repeatedly held that management's financial projections are among the most important information a stockholder can have when evaluating the proposed consideration in a merger. *See, e.g.*, *In re Staples, Ins. S'holders Litig.,* 792 A.2d 934, 958 n.44 (D. Ch. 2001) ("'[o]ne suspects that projections are the information that most stockholders would find the most useful to them."); *David P. Simonetti Rollover IRA v. Margolis*, 2008 Del. Ch. LEXIS 78, at *30 (Del. Ch. June 27, 2008) ("Delaware law places a premium on management's predictions of future performance.") (quotation omitted).[5]  The importance of complete and accurate disclosure of management's financial projections is magnified where, as here, stockholders must determine whether to approve an all-cash going private transaction or whether to seek appraisal for their shares based heavily on management's expectations of the company's growth and earnings potential.  *See In re Emerging Commc'ns, Inc. S'holder Litig.*, C.A. No. 16415, Del. Ch. LEXIS 70 at 134 2004 WL 1305745, at *37 (Del. Ch. May 3, 2004) (projections are "highly material" because

---

[5]      *See also Maric Capital Master Fund, Ltd. v. Plato Learning, Inc., et. al.*, C.A. No. 5402-VCS, 2010 WL 1931084, at *2 (May 13, 2010) ("management's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information" that shareholders ought to have when deciding whether it is in their best interest to accept the proposed merger price); *Margolis*, 2008 Del. Ch. LEXIS 78, at *30 ("A proxy statement should give the stockholder the best estimate of the company's future cash flows as of the time the board approved the [transaction].");  *In re PNB Holding Co. S'holders Litig.*, No. 28-N, 2006 Del. Ch. LEXIS 158 at 59 (Del. Ch. Aug. 18, 2006) (holding that "reliable management projections of the company's future prospects are of obvious materiality to the electorate.").

knowledge of projections "would have enabled the [unit holders] to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company").

For the benefit of R.G. Barry's shareholders, the Settlement obtained Supplemental Disclosures which provided supplemental detail and context concerning management's financial projections. Specifically, the Supplemental Disclosures provided details concerning R.G. Barry's financial information, as used by PJSC in conjunction with its Discounted Cash Flow Analysis ("*DCF Analysis*), based on the financial projections prepared by management for fiscal years 2015 through 2018, including: (i) with respect to the *Management Case Projections-Excluding Acquisitions*, which exclude acquisitions, the following items: (a) EBITDA, (b) EBIT, (c) taxes and tax rate, (d) depreciation and amortization expense, (e) capital expenditures, (f) change in net working capital and (g) unlevered, after tax free-cash flows; and (ii) with respect to *the Management Case Projections-Including Acquisitions* which apply the financial impact of two illustrative hypothetical acquisitions developed by management to find the financial projections prepared by management, the following items: (a) taxes and tax rate, (b) change in net working capital, (c) acquisitions, and (d) unlevered, after-tax free-cash flows. Absent disclosure of this information based on management's financial projections and utilized by PJSC in its *DCF Analysis*, the Company's shareholders would not be able to reliably assess the credibility of the financial analyses conducted by PJSC and, thus, would not be able to determine whether the Merger is fair and in their best interests.

Given that courts have repeatedly found these types of financial projections to be "among the most highly-prized disclosures by investors," *In re Netsmart Techs. Inc.*, 924 A.2d 171 at 203, (Del. Ch. 2007) the disclosure of these projections provided a substantial benefit to the Class and weighs strongly in favor of preliminarily approving the Settlement.

17

### 2. Material Disclosures Regarding The Sales Process And Background Leading up to the Merger

As courts have held, shareholders are entitled to an accurate description of the "process" directors used "in coming to their decision to support the Merger." *See Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000). The Court in *Nagy* further held that "[i]nformation of this kind is self-evidently material to [a shareholder's] decision whether to accept the merger consideration or to seek appraisal." *Id.*; *see also Arnold*, 650 A.2d at 1280 ("[O]nce defendants traveled down the road of partial disclosure of the history leading up to [a merger] . . ., they had an obligation to provide the shareholders with an accurate, full, and fair characterization of these historic events.").

Here, the Settlement provided the Company's shareholders with numerous material disclosures concerning the circumstances, events, and sales process leading up to Defendants' entry into the Merger and recommendation to R.G. Barry's shareholders that they cast their votes in favor of the Merger. These disclosures included material information concerning, *inter alia*: (i) the list of financial strategic buyers presented to the Board by PJSC as potential acquirers of R.G. Barry (ii) discussions held by the Board during Board meetings relating to Mill Road's April 29, 2014 Letter; (iii) provisions of the confidentiality agreement entered into between R.G. Barry and Company A; and (iv) details concerning R.G. Barry's discussions with Party A and Party B relating to the "go-shop process" provided by the Merger Agreement. *See* Stipulation, Ex. A.

Without this omitted information R.G. Barry's shareholders would have been misled about and/or unable to assess: (i) the actual effectiveness of the Board to orchestrate a robust and fair sales process, designed to achieve the best value reasonably available under the circumstances for the Company's shareholders; and/or (ii) the extent the Board failed to adequately discharge its duty to act in the best interests of R.G. Barry's shareholders. *See, e.g.*, *In re Chips & Techs., Inc. S'holders Litig.*, 1998 Del. Ch. LEXIS 109, at *5-6 (Del. Ch. June 24, 1998) ("The supplemental disclosure

18

document … contains a substantially expanded section titled "Background of the Offer: Reasons for the Recommendation," … While it is unnecessary to decide the materiality as a matter of law of the additional information contained in [the disclosure document], I note that the disclosures there made are both substantial and helpful to an understanding of the decision to authorize the transaction with [the buyer] and to recommend it to the stockholders.").

Accordingly, the supplemental disclosure of this material information further supports preliminary approval of the Settlement.

### 3. Material Disclosures Regarding PJSC's Financial Analyses

When directors of corporations seek shareholder action, they are obligated to disclose fully and fairly all material information within their control. *See, e.g., Netsmart*, 924 A.2d at 199. While they need not provide information that is simply "helpful," once directors take it upon themselves to disclose information, that information must not be misleading or materially incomplete. *See, e.g., In re The MONY Grp. Inc. S'holder Litig.*, 852 A.2d 9, 2425 (Del. Ch. 2004). To that end, once directors travel down the road of a "partial disclosure," they become obligated to provide an accurate, full, and fair characterization of events. *Id.,* at 25; *see also In re Staples, Inc. S'holders Litig.*, 792 A.2d 934, 954 (Del. Ch. 2001) (directors must "avoid partial disclosures that create a materially misleading impression").

This is particularly the case for disclosures concerning the analyses and valuation methods of a financial advisor relied upon in support of a transaction. *See In Re Pure Res., S'holders Litig.*, 808 A.2d 421 at 449 (Del. Ch. 2002) ("In my view, it is time that this ambivalence be resolved in favor of a firm statement that stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely."). As the Delaware Court of Chancery has observed:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Only providing some of that information is insufficient to fulfill the duty of providing a "fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the[] board as to how to vote . . . rely."

*Netsmart*, 924 A.2d at 203-204 (citations omitted); *see also Pure Res.*, 808 A.2d at 449 ("[I]nvestment bankers' analyses . . . usually address the most important issue to stockholders – the sufficiency of the consideration being offered to them for their shares in a merger or tender offer.").

The Supplemental Disclosures provided the Company's shareholders with material information relating to the financial analyses conducted by PJSC leading to its issuance of the fairness opinion, which had been previously omitted from the Definitive Proxy.  Namely, R.G. Barry shareholders were provided with the transaction-by-transaction enterprise values and multiples for the *Selected Precedent Transactions Analysis* conducted by PJSC in connection with tis fairness opinion.[6]  Because these enterprise values and multiples formed the basis of PJSC's *Selected Precedent Transactions Analysis* underlying its fairness opinion, and the Board's recommendation to shareholders that the Merger is financially fair, they constitute information highly material to shareholders.  *See Turberg v. ArcSight*, C.A. No. 5821-VCL, at 43 (Del. Ch. 2011) (transcript attached as Exhibit 2 to the Acocelli Aff.) ("If you were to consider what really constitutes a fair summary, then the background multiples should be on there, just like they're in there when you give them to the board … you would never see a board book that would go to the

---

[6]     According to the Definitive Proxy, PJSC's *Selected Precedent Transactions Analysis* consisted of reviewing and comparing selected publicly available financial information relating to twelve selected transactions announced between July 19, 2010 and May 14, 2013, which transactions generally were selected because they were transactions involving companies operating in similar segments and experiencing similar sector trends as compared to R.G. Barry, or transactions that PJSC, based on its experience and judgment as a financial advisor, deemed relevant to consider in relation to the Merger.

board without the background multiples"); *In re Celera Corp. S'holder Litig.*, 2012 Del. Ch. LEXIS 66, at *1212 (Del. Ch. Mar. 23, 2012), *rev'd in part on other grounds*, 2012 Del. LEXIS 658 (Del. 2012) ("[A] fair summary of a comparable companies or transactions analysis probably should disclose the market multiples derived for the comparable companies or transactions.").

In addition, the Supplemental Disclosures also provided shareholders with PJSC's method for calculating unlevered, after-tax free cash flows in connection with its *DCF Analysis* and, as discussed *supra*, with material information concerning how PJSC utilized management's financial projections and applied the financial impact of two illustrative hypothetical acquisitions developed by management in order to perform its *Analysis*. Disclosure of complete and accurate information regarding a DCF analysis is highly material to shareholders who must vote on whether to approve an all-cash private transaction, as courts have found the DCF analysis, driven by management financial projections, to be the most reliable indicator of value of a company's stock on the date of a merger transaction. *See, e.g.*, *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, 2009 Del. Ch. LEXIS 210, at *2 (Del. Ch. Nov. 18, 2009) (holding that "the discounted cash flow analysis [is] arguably the most important valuation metric" for a company)); *Netsmart*, 924 A.2d at 203 (where company filed to disclose projections underlying financial advisor's DCF analysis, finding that "projections of this sort are probably among the most highly-prized disclosures by investors").

In sum, Plaintiffs respectfully submit that the Settlement is an excellent result for R.G. Barry and its shareholders and is well within the range of what is fair, reasonable, and adequate, and therefore should be granted preliminary approval.

### C. The Risk and Expense of Further Litigation

The benefits obtained here for the Settlement Class compare favorably with the risks and expenses of further litigation. The Supplemental Disclosures obtained by Plaintiffs' efforts,

especially when weighed against the risks of continued litigation, provided a significant, concrete benefit to the Settlement Class.

Plaintiffs' Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence adduced to date, the likelihood of prevailing on the claims asserted and the likelihood of obtaining additional economic and/or equitable relief over and above the benefits obtained, as well as the risk, expense and duration of continued litigation, have concluded that the Settlement is clearly fair, reasonable and adequate and in the best interests of the Settlement Class.

While Plaintiffs believe that their claims have substantial merit, Plaintiffs faced risks in establishing Defendants' liability. For example, Plaintiffs faced a high hurdle in establishing their direct claims for breach of fiduciary duty. Although Plaintiffs would allege that Defendants directly harmed them and the Company's shareholders by failing to disclose all material information in connection with the Stockholder Vote and prevented Plaintiffs and the Company's shareholders from being able to exercise their individual rights of corporate suffrage,[7] under Ohio law, "a plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed toward the corporation." *Adair v. Wozniak*, 492 N.E.2d 426, 429 (Ohio 1986). As the Ohio Supreme Court has held, a minority shareholder's claim must be brought derivatively if his claim is based upon an alleged injury that was suffered by "all other shareholders alike." *Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St. 3d 377 at 379, 658 N.E.2d 1058 (1996) (finding that minority shareholders' claims had to be

---

[7]  *See, e.g., Carlson v. Rabkin*, 789 N.E. 2d 1122, 1128 (Ohio 2003) (where alleged injuries "implicate individual rights of a member," "[t]hese are special injuries that are distinct from an injury suffered by all members" and "[t]herefore, these are direct claims; *see also Smith v. Robbins & Myers*, 969 F.Supp. 2d 850, 862-864 (S.D. Ohio 2013) (finding allegations that a "flawed Proxy precluded the Company's shareholders 'from casting a fully informed vote' on the Merger" were properly pled as a direct claim.").

brought derivatively because "[i]f any injuries occurred, they occurred to all the other shareholders alike.").

Even if the Court were to find that Plaintiffs have standing to bring direct claims for breach of fiduciary duty, Plaintiffs' success on the merits was not assured.  If the Litigation continued, Defendants would argue that they exercised valid "business judgment."  "Ohio courts adhere to the 'business judgment rule," and will not inquire into the wisdom of actions taken by the directors in the absence of fraud, bad faith or abuse of discretion." *Radol v. Thomas*, 772 F.2d 244, 256 (6th Cir. 1985).  The Ohio General Assembly gives great deference to the business judgment of corporate directors, and provides a statutory presumption that directors "act independently, in good faith, and having in mind the best interests of the corporation." *Henkel v. Aschinger*, 962 N.E.2d 395, 405 (Ohio Com. Pl. 2012) (citing O.R.C. section 1701.59(C)(1).  Overcoming the presumption of the business judgment rule requires "clear and convincing evidence that the director has not acted in good faith."  O.R.C. section 1701.59(C)(1); *see also Monday v. Meyer*, No. 1:10 CV 1838 at 15 2011 U.S. Dist. LEXIS 136858 (N.D. Ohio  Nov. 29, 2011).

Plaintiffs' derivative claims likewise faced challenges at the pleading stage because under Ohio Civil Rule 23.1, a derivative complaint must "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and, if necessary, from the shareholders of members; and the reasons for his failure to obtain the action or for not making the effort.  *See* Fed. R. Civ. P. 23.1(b)(3); *see also* Ohio R. Civ. P. 23.1.  As a result, shareholders do not have standing to bring a suit on behalf of the company "unless the board refuses to do so and that refusal is wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias on the part of the directors." *Monday*, 2011 U.S. Dist. LEXIS 136858 at 9-10 (quoting *Drage v. Procter & Gamble*, 694 N.E.2d 479, 482 (Ohio App. 1997).  Ohio law provides a limited

exception to the demand requirement when the shareholder demonstrates that demand would be futile.  *Id.*  However, "establishing demand futility under Ohio law 'is not an easy task.'"  *Henkel*, 962 N.E.2d at 405.  To demonstrate futility, a plaintiff bears the heavy burden of pleading, with particularity, that "the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed."  *Monday*, 2011 U.S. Dist. LEXIS 136858 at *9-10.

Plaintiffs also faced obstacles in establishing certain of their discrete claims.  For example, Ohio law provides that a proxy need only convey material information.  *See Henkel*, 962 N.E.2d at 406.  Plaintiffs must identify specific statements rendered misleading by allegedly omitted information.  *See Kugelman v. PVF Capital Corp.*, 972 F. Supp. 2d 993, 997 (S.D. Ohio 2013).  Although Plaintiffs alleged that PJSC's financial analyses omitted material facts, under Ohio law, shareholders need not "be given all the financial data they would need if they were making an independent determination of fair value in the first instance."  *Henkel*, 962 N.E.2d at 406.  Plaintiffs' claims regarding the sales process undertaken by Defendants similarly faced a high bar.  "[M]anagement is ordinarily not obligated to discuss the panoply of possible alternatives to a course of action it is proposing."  *Id.* (citations omitted).  Moreover, in the absence of a showing of disloyalty or lack of care in agreeing the preclusive deal measures such as those alleged here, such provisions "are reviewable as business judgments and are, thus, granted deference."  *In re IXC Communs. Shareholder Litig.*, *v. Cincinnati Bell*, 1999 Del. Ch. LEXIS 210 at *29 (Del. Ch. Oct. 27, 1999).  Likewise, the Delaware Chancery Court has not ruled that standstill provisions like those at issue here are *per se* indicative of a breach of fiduciary duty.  *See In re Celera*, 2012 U.S. Dist. LEXIS 66.

Despite these risks and others, the Settlement has provided the Company's shareholders with a large portion of the relief sought by providing significant material information that enhanced each shareholder's ability to make a fully-informed decision on the Merger.  With a fully-informed vote achieved, further litigation over monetary damages likely would not have succeeded.  *See Pfeffer v. Redstone*, 965 A.2d 676, 684 n.17 (Del. 2009) ("in the absence of coercion or disclosure violations, the adequacy of the price in a voluntary tender offer cannot be an issue" (citation omitted).  A balancing of these considerations supports approval of the Settlement.  Plaintiffs' Counsel weighed the expense, length and uncertainty of continued litigation as well as the likelihood of obtaining a better result after continued litigation.  Based on their evaluations, Plaintiffs' Counsel determined that the proposed Settlement provides the Settlement Class with substantial benefits that address the claims and relief sought in the Litigation and therefore is in the best interests of the Settlement Class.

## V.  PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

The Parties seek the preliminary certification of the Federal Court Action as a class action pursuant to Fed. R. Civ. P.  23, for settlement purposes only, of a non-opt-out Settlement Class consisting of:

> all record and beneficial owners of R.G. Barry common shares during the period beginning on May 2, 2014 (the announcement date of the Merger Agreement), through September 3, 2014 (the date of the consummation of the Merger) ("Class Period"), including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them.  Excluded from the Settlement Class are R.G. Barry Defendants, members of the immediate family of any R.G. Barry Defendant, any entity in which an R.G. Barry Defendant has or had a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded person.

Acocelli Aff., Ex. 1, Stipulation at paragraph 1(t).

Under Rule 23 of the Federal Rules of Civil Procedure, a case is appropriate for class treatment if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a); *see also Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 195 (S.D. Ohio 2002) (setting forth Rule 23's requirements for class certification). Each of these criteria for class certification is satisfied in this case.

### A.     The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable

The numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "[t]his requirement is not amenable to a strict numerical test[,] … common sense dictates that at some point numbers alone will satisfy the numerosity requirement." *Kennedy*, 206 F.R.D. at 195*; see also Walther v. Pension Plan for Salaried Employees of the Dayton-Walther Corp.*, 880 F. Supp. 1170, 1177 (S.D. Ohio 1994) ("Rule 23 does not create a specific number which it deems to be sufficiently "numerous" to permit class certification.").

Here, according to the Definitive Proxy, as of July 21, 2014, R.G. Barry had 11,178,921 common shares outstanding and entitled to vote in the Stockholder Vote, owned by hundreds of thousands of individual shareholders. It would have been difficult, if not impossible, to join all of R.G. Barry's stockholders before this Court. Accordingly, the numerosity requirement has been satisfied here. *See, e.g., Dubroff v. Wren Holdings, LLC*, 2010 Del. Ch. LEXIS 178, at *15-17 (Del. Ch. Aug. 20, 2010) (class of forty-five members met the numerosity requirement); *In re Countrywide Corp. S'holders Litig.*, 2009 Del. Ch. LEXIS 44, at *50 (Del. Ch. Mar. 31, 2009)

(joinder of over 430,000 stockholders would be impracticable); *Mentis v. Delaware Am. Life Ins. Co.*, 2000 Del. Super. LEXIS 237, at *8, (Del. Super. Ct. May 30, 2000) ("Courts have observed that usually more than 40 members is adequate" to satisfy the numerosity requirement).

**B.   There are Issues of Law and Fact Common to All Settlement Class Members**

The commonality requirement is satisfied where there are questions of law or fact common to the proposed class.  *See* Fed. R. Civ. P. 23(a)(2).  The test for satisfying the commonality requirement is qualitative rather than quantitative:  there need be only a single issue common to the members of the class, but the issue's resolution must "advance the litigation."  *Sprague v. GMC,* 133 F.3d 388, 397 (6th Cir. 1998); *see also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) ("Rule 23(a) simply requires *a* common question of law or fact.") (emphasis in original).

Here, there are common questions of law or fact because all Settlement Class members were similarly harmed because of Defendants' alleged breaches of fiduciary duty in connection with the Merger.  *See, e.g.*, *In re Countrywide,* 2009 Del. Ch. LEXIS 44, at *51 ("The plaintiffs allege injuries which all investors share in proportion to their holdings stemming from a common course of action by the Defendants in the alleged breaches of fiduciary duties owed to the class in connection with the merger. This is sufficient to meet the commonality requirement."); *In re Wm. Wrigley Jr. Co. S'holders Litig.*, 2009 Del. Ch. LEXIS 12, at *14 (Del. Ch. Jan. 22, 2009) ("[T]he claims of all [] stockholders other than the defendants are identical in challenging the process by which the merger was approved and the proxy materials used to solicit the stockholders to vote in favor of it."); *Marie Raymond Revocable Trust v. MAT Five LLC*, 980 A.2d 388, 400 (Del. Ch. 2008) (claim that defendant directors breached their fiduciary duties to the class was sufficient to meet the commonality requirement).

Accordingly, the commonality requirement is satisfied.

### C.      Plaintiffs' Claims Are Typical of the Settlement Class' Claims

With respect to the typicality requirement, the Sixth Circuit explained that "a representative's claims need not always involve the *same* facts or law provided there is a common element of fact or law [which unites the claims of the representative and the class]." *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 581 (S.D. Ohio 1993) (citing *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. Ohio 1976) (emphasis added)).  Rather, typicality asks whether there is a sufficient nexus between the alleged injuries to the class representative and the conduct affecting the class rendering the conduct complained of that of a collective nature.  *See Sprague*, 133 F.3d at 399; *see also Little Caesar Entpr., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (inquiry is whether the class representatives and putative class members' claims arise from the same practice or course of conduct engaged in by the defendants and whether their claims are based on the same legal theory).

In this case, Plaintiffs owned R.G. Barry common stock on the day that the Merger was announced and all relevant times thereafter.  As such: (1) Plaintiffs were confronted with the same alleged injury as the others members of the Settlement Class of R.G. Barry shareholders they seek to represent; (2) Plaintiffs' alleged injury resulted from the same alleged course of conduct by Defendants; and (3) Plaintiffs' claims are based on the same legal theory as the claims of the other members of the Settlement Class.  As a result, Plaintiffs' claims are typical of those of the members of the Settlement Class.

### D.      Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

There are no conflicts of interest between Plaintiffs and the other members of the putative Settlement Class.  Furthermore, Plaintiffs retained counsel who is highly experienced in class actions and corporate matters.  *See* Plaintiffs' Counsel's respective firm resumes attached as Exhibits 3, 4 and 5 to the Acocelli Aff.  Given the lack of conflict and the retention of competent counsel, Plaintiffs are adequate Settlement Class representatives.  *See, e.g.*, *Walther*, 880 F. Supp.

at 1178 (finding adequacy met where plaintiffs' counsel has "vigorously represented Plaintiffs in the current litigation" and is "experienced in class action litigation"); *Kennedy*, 206 F.R.D. at 198 (finding counsel well-qualified to serve as class counsel where "Counsel in this case has served as class counsel in factually similar cases").

### E.    Certification Is Proper Under Rules 23(B)(1) And 23(b)(2)

In addition to the requirements of Fed. R. Civ. P. 23(a), a proposed class must satisfy one of the three alternative requirements of Fed. R. Civ. P. 23(b).  *See Walther*, 880 F. Supp. at 1176-77 (noting that "if the foregoing [Rule 23(a)] prerequisites are satisfied, the court must then decide whether one of the factual situations described in Rule 23(b) has been met.").  While only one of the conditions of Rule 23(b) must be satisfied to merit class certification, if the class meets more than one of the alternatives, the court may certify the action under each section satisfied.  *See e.g., Babcock v. Computer Assocs. Int'l.,* 212 F.R.D. 126, 133 (E.D.N.Y. 2003) (granting class certification under subsections 23(b)(1), (b)(2) and (b)(3) for breach of fiduciary duty claims).

Courts routinely find that class certification is appropriate under Fed. R. Civ. P. 23(b)(1) and (b)(2) in actions challenging the exercise of fiduciary responsibilities and most commonly certify under Rule 23(b)(1).  *See, e.g.*, *In re Syncor ERISA Litig*., 227 F.R.D. 338, 346 (C.D. Cal. 2005) (noting that breach of trust by fiduciary similarly affecting the members of a large beneficiary class is a "classic example of a Rule 23(b)(1)(B) action").[8]

Here, pursuant to Fed. R. Civ. P. 23(b)(1), if separate actions were commenced by other members of the Settlement Class, Defendants would be subject to the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct and would, as a

---

[8]    *See also In re Celera Corp. S'holder Litig*., 2012 Del. Ch. LEXIS 66, at *66, (Del. Ch. Mar. 23, 2012), *aff'd in part and rev'd in part,* 59 A.3d 418 (Del. 2012); *In re Cox Radio, Inc. S'holders Litig.*, 2010 Del. Ch. LEXIS 102, at *27-28 (Del. Ch. May 6, 2010); *Turner v. Bernstein*, 768 A.2d 24, 33 (Del. Ch. 2000).

practical matter, be dispositive of the interests of other Settlement Class members. Additionally, pursuant to Fed. R. Civ. P. 23(b)(2), Defendants' conduct amounted to a single course of conduct that affects all members of the Settlement Class, such that injunctive and/or declaratory relief would be appropriate with respect to the entire Settlement Class.

Accordingly, this Action, which alleges that Defendants breached their fiduciary duties to the Settlement Class in connection with the Merger, is certifiable pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2).

## VI.  THE PROPOSED NOTICE TO SETTLEMENT CLASS MEMBERS IS ADEQUATE

The individualized mailing of Notice to the Settlement Class that the parties propose here will be the "best notice practicable under the circumstances." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (finding that the best notice practicable was individual notices to "all class members whose names and addresses may be ascertained through reasonable effort"); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 429 (S.D. Tex. 1999) (holding that "[w]here a potential class member's address is known or is available through reasonable efforts, individual or actual notice is required"). As contemplated by the proposed Notice, within twenty-one (21) calendar days after the Court's entry of the Preliminary Approval Order, Plaintiffs' Counsel shall, at their expense, cause a copy of the Notice (as described *infra*) to be mailed by United States first-class mail, postage pre-paid, to all Settlement Class Members who can be identified with reasonable effort, at their last known addresses appearing in the share transfer records maintained by or on behalf of R.G. Barry.

Plaintiffs' Counsel will make additional copies of the Notice available to nominee purchasers, such as brokerage firms who held R.G. Barry stock during the Class Period, and such nominees will be asked to either forward a copy of the Notice to such beneficial owners of R.G.

Barry shares or provide the notice administrator retained by Plaintiffs' Counsel with a list of the names and addresses of such beneficial owners. Plaintiffs' Counsel will undertake reasonable efforts to give notice to such beneficial owners by (a) making additional copies of the Notice available to any record holders who, prior to the Final Approval Hearing, request the same for the purpose of distribution to beneficial owners or (b) mailing copies of the Notice to beneficial owners whose addresses have been provided to the notice administrator by the record holders of such shares.

The Notice informs Settlement Class Members in plain and easily understandable language about, *inter alia*, the following: (i) the nature of the action, including the class claims, issues and defenses, and a description of the proposed Settlement; (ii) the definition of the Settlement Class to be certified; (iii) the Plaintiffs' Fee Application concerning the proposed award of attorneys' fees and expenses to Plaintiffs' Counsel; (iv) the Settlement Class Members' right to object, with the assistance of his, her or its own retained counsel if the Class Member so desires, to any aspect of the Settlement and/or Plaintiffs' Application and the procedures for doing so; (v) the binding effect of a class judgment on Class Members; (vi) the date and time of the Final Approval Hearing and Settlement Class Members' right to attend the Final Approval Hearing; and (vii) how to obtain additional information. The Notice provides Settlement Class Members with more than sufficient information to make informed decisions about whether to object to any aspect of the Settlement and Plaintiffs' Fee Application.

As such, the proposed form and manner of Notice to the Settlement Class fulfills the requirements of federal law and due process, and the Parties respectfully ask the Court to approve it.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiffs respectfully request

that the Court to establish dates by which Notice of the Settlement will be sent to potential Settlement Class Members, and to set the date for the Final Approval Hearing. The following is a proposed schedule of events leading to the final approval hearing:

| | |
|---|---|
| Notice mailed to Settlement Class Members | No later than twenty-one (21) calendar days after entry of the Preliminary Approval Order ("Notice Date")<br><br>(Preliminary Approval Order at paragraph 7) |
| Settlement Class Members Objections | No later than fourteen (14) calendar days before the Final Approval Hearing<br><br>(Preliminary Approval Order at paragraph 11) |
| The Parties' papers in support of final approval of Settlement and Plaintiff's Fee Application (the "Final Approval Hearing") | No later than twenty-eight (28) calendar days prior to the Final Approval Hearing<br><br>(Preliminary Approval Order at paragraph 13) |
| Defendants' papers in opposition to Plaintiffs' Fee Application, if any | No later than fourteen (14) calendar days prior to the Final Approval Hearing<br><br>(Preliminary Approval Order at paragraph 13) |
| The Parties' papers in response to objections by Settlement Class Members and other reply papers in support of the Settlement and Plaintiffs' reply papers in support of the Fee Application, if any | No later than seven (7) calendar days prior to the Final Approval Hearing<br><br>(Preliminary Approval Order at paragraph 13) |
| Final Approval Hearing | At least ninety (90) calendar days after entry of the Notice Order, at the Court's convenience<br><br>(Preliminary Approval Order at paragraph 41) |

**VIII.   CONCLUSION**

In the judgment of the Parties, the proposed Settlement is a fair compromise of the issues in dispute in light of the circumstances of the case.  After weighing the benefits of the Settlement against the uncertainty and risks of continued litigation, and following confirmatory discovery, Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate and that it warrants preliminary approval.  The Parties respectfully request that the Court grant the instant Motion and enter the Preliminary Approval Order.

DATED: September 25, 2015

Respectfully submitted,

/s/ John C. Camillus
John C. Camillus (0077435)
Law Office of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio 43214
Telephone: (614) 558-7254
Facsimile:  (614) 559-6731
jcamillus@camilluslaw.com

***Counsel for Plaintiff LR Trust***

**OF COUNSEL:**

WeissLaw LLP
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 683-3025
Facsimile: (212) 682-3010
racocelli@weisslawllp.com
mrogovin@weisslawllp.com
kkeenan@weisslawllp.com

***Counsel for Plaintiff LR Trust***

33

*Additional Counsel:*

Milberg LLP
Kent A. Bronson
Roy Shimon
One Pennsylvania Plaza
49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
kbronson@milberg.com
rshimon@milberg.com

Cohen Rosenthal & Kramer LLP
James Rosenthal
700 West St. Clair Avenue
Cleveland, OH  44113
Telephone: (216) 781-7956
Facsimile: (212) 781-8061
jbr@crklaw.com

*Counsel for State Action Plaintiff*
*Neil Scarfuto*