IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LR TRUST, *et al*.,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS DiPAOLO, *et al*.,<br><br>Defendants. | )<br>)<br>)  Civil Action No. 2:14-cv-00612<br>)<br>)<br>)  JUDGE MICHAEL H. WATSON<br>)<br>)  MAGISTRATE JUDGE JOLSON<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT, FINAL
CERTIFICATION OF THE SETTLEMENT CLASS, AND APPROVAL OF
AWARD OF ATTORNEYS' FEES AND REIMBURSMENT OF EXPENSES**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ vi

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................... 4

III.    THE TERMS OF THE SETTLEMENT ..................................................... 13

        A.      The Settlement Obtained Significant And Meaningful Benefits For R.G.
                Barry's Public Shareholders .................................................. 16

        B.      The Material Supplemental Disclosures Regarding Management's Financial
                Projections ............................................................................ 18

        C.      The Material Supplemental Disclosures Regarding The Sales Process And
                Background Of The Merger ...................................................... 20

        D.      The Material Disclosures Regarding PJSC's Financial Analyses ........................ 22

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND
        SHOULD BE GRANTED FINAL APPROVAL ........................................... 25

        A.      Standard For Settlement Approval ......................................... 25

.In determining whether to approve a proposed class or derivative litigation settlement as  fair, reasonable, and adequate, courts consider and balance several factors, including:  (1) Plaintiffs' likelihood of ultimate success on the merits, balanced against the amount and form of relief offered in settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest.  *Amos v. PPG Indus.*, No. 2:05-CV-70, 2015 U.S. Dist. LEXIS 106944, at *4-5 (S.D. Ohio Aug. 13, 2015) An examination of each of these relevant factors weighs heavily in favor of granting final approval of the proposed Settlement of the Actions herein.

        B.      Balancing The Benefits Offered By The Settlement Against The Likelihood
                Of Success On The Merits Favors Final Approval Of The Settlement ................ 27

Balancing the likelihood of success on the merits with the substantial relief obtained for the benefit of the Settlement Class in connection with the Settlement favors granting final approval of the Settlement.  *See, e.g., Gascho v. Global Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 U.S. Dist. LEXIS 46846, at *52 (S.D. Ohio Apr. 4, 2014).

i

C.      The Risk, Complexity, and Delay of Further Litigation ........................................32

Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.  *Amos*, 2015 U.S. Dist. LEXIS 106944, at *10.  This case is factually and legally complex, and this factor also favors approval of the proposed settlement.

D.      Plaintiffs Have Completed Ample Discovery, Supporting The Settlement ..........33

Counsel for Plaintiffs conducted thorough discovery before agreeing to the proposed final settlement.  *UAW v. General Motors Corp.*, No. 05-CV-73991, 2006 U.S. Dist. LEXIS 14890, *58 (E.D. Mich. Mar. 31, 2006).

E.      Highly Experienced And Well-Informed Plaintiffs' Counsel Endorse The
        Settlement ...........................................................................................................35

Where, as here, an arms-length negotiation conducted by experienced counsel results in an agreed resolution, the settlement is presumptively fair and reasonable.  *Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, at *14 (N.D. Ohio Nov. 6, 2007)

F.      The Settlement Is The Result Of Good Faith, Arms-Length Negotiations,
        And Is Entirely Non-Collusive ...........................................................................36

There has been no collusion, nor any indication of collusion, which also supports approval of the proposed settlement.  *Mees v. Skreened, Ltd.*, No. 2:14-CV-142, 2016 U.S. Dist. LEXIS 1242, at *6 (S.D. Ohio Jan. 6, 2016);

G.      There Have Been No Objections To The Settlement, Further Supporting Final
        Settlement Approval ...........................................................................................37

The fact that, to date, not a single RG Barry shareholder has objected to the settlement is a strong indication of its fairness and reasonableness.  *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).

H.      The Public Interest Is Served By Final Approval Of The Settlement...................39

The public interest favors settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.  *Gascho*, 2014 U.S. Dist. LEXIS 46846, at *55-56

V.      Certification Of The Settlement Class Is Proper............................................................39

        A.      The Settlement Class Is So Numerous That Joinder Of All Members Is
                Impracticable........................................................................................................40

According to the Definitive Proxy, as of July 21, 2014, R.G. Barry had 11,178,921 common shares outstanding and entitled to vote in the Stockholder Vote, owned by hundreds of thousands of individual shareholders, and Notice was disseminated to 4,079 absent Settlement Class members and potential nominees.  The numerosity requirement is readily satisified here.  *Mentis v. Delaware Am. Life Ins. Co.*, C.A. No. 98C-12-023 WTQ, 2000 Del. Super. LEXIS 237, at *8, (Del. Super. Ct. May 30, 2000); *Dubroff v. Wren Holdings, LLC*, C.A. No. 3940-VCN, 2010 Del. Ch. LEXIS 178, at *15-17 (Del. Ch. Aug. 20, 2010); *Adams v. Anheuser-Busch Cos., Inc.*, No. 2:10-CV-826, 2012 U.S. Dist. LEXIS 42364, at *8-10 (S.D. Ohio Mar. 28, 2012).

        B.      There Are Issues Of Law And Fact Common To All Settlement Class
                Members ..............................................................................................................42

There are numerous questions of law or fact capable of class-wide resolution, as all Settlement Class members were similarly harmed because of Defendants' alleged breaches of fiduciary duty in connection with the Merger.  *In re Countrywide Corp. S'holder Litig., Consolidated* C.A. No. 3464-VCN 2009 Del. Ch. LEXIS 44, at *51 (Del. Ch. Mar. 31, 2009)

        C.      Plaintiffs' Claims Are Typical Of The Settlement Class' Claims .........................43

Plaintiffs owned R.G. Barry common stock on the day that the Merger was announced and all relevant times thereafter.  This is sufficient to satisfy Rule 23's typicality requirement.

        D.      Plaintiffs Have And Will Continue To Fairly And Adequately Protect The
                Interests Of The Settlement Class........................................................................44

The Settlement Class representatives and Settlement Class members have been subjected to the same alleged misconduct and each has the same interest in achieving the best possible result. Plaintiffs and their counsel have vigorously and aggressively pursued the claims against Defendants on behalf of those Plaintiffs and the Settlement Class.  In addition, Plaintiffs have retained and been represented in the Actions by counsel who are highly experienced in class actions and corporate matters.

        E.      Settlement Class Certification Is Proper Under Rules 23(B)(1) And 23(b)(2)......45

Pursuant to Fed. R. Civ. P. 23(b)(1), if separate actions were commenced by other Settlement Class members, Defendants would be subject to the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct and would, as a practical matter, be dispositive of the interests of other Settlement Class members.  Additionally, pursuant to Fed. R. Civ. P. 23(b)(2), Defendants' conduct as alleged in the Actions amounted to a single course of conduct that affected all members of the Settlement Class, such that injunctive and/or declaratory relief would be appropriate with respect to the entire Settlement Class.

VI.     PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE .............47

        A.     The Applicable Legal Standard ...........................................................................48

Where "[a] litigant [] creates a 'common fund' or 'substantial benefit' allocable with some exactitude to a definite group of persons [the litigant] may acquire an equitable claim against that group for the costs incurred in creating the fund or benefit."  Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir. 1983).

        B.     Application Of The Legal Standard Supports Approval Of The Fee Request ......49

                1.     The Value of the Benefit Rendered to the Settlement Class.....................50

Plaintiffs' Counsel have conferred a significant benefit on the Settlement Class by obtaining the Supplemental Disclosure prior to the Stockholder Vote in order to enable R.G. Barry shareholders to cast a fully informed vote on the Merger.

                2.     Society's Stake in Rewarding Class Counsel who Obtain Benefits for
                       the Class ...................................................................................................51

Absent the efforts of Plaintiffs' Counsel in prosecuting these complex Actions on a purely contingent basis, R.G. Barry shareholders would have been deprived of the meaningful Supplemental Disclosures that were vital to their ability to cast a fully informed vote on the Merger.  *Lonardo*, 706 F. Supp. 2d at 795; *In re Sulzer*, 268 F. Supp. 2d at 936.

                3.     Plaintiffs' Counsel Undertook this Litigation on a Purely Contingent
                       Basis…………………...................................................................................52

Plaintiffs' Counsel undertook this litigation on a purely contingent basis, at a risk of total loss, with no assurance of recovering any expenses or attorneys' fees.  *Gascho*, 2014 U.S. Dist. LEXIS 46846 at *100-101.

                4.     The Value of the Services on an Hourly Basis ..........................................53

Plaintiffs' Counsel collectively spent 737.70 hours and incurred a total aggregate lodestar of $407,264.44, plus collective unreimbursed expenses of $18,629.44 in litigating the Actions and obtaining the related Settlement and the Supplemental Disclosures, substantial material benefits for the Settlement Class

                5.     The Complexity of the Litigation ..............................................................55

The complexity of Plaintiffs' claims in the Actions and the arm's length negotiations that were conducted leading to the Settlement weigh in favor of approving the Fee Request.  *In re Sulzer*, 268 F. Supp. 2d at 939-40

6.      The Professional Skill and Standing of Counsel.........................................55

Plaintiffs' Counsel consists of highly experienced and skilled shareholder advocates with nationwide practices specializing in complex shareholder litigation, particularly in the context of mergers and acquisitions.  *In re Sulzer*, 268 F. Supp. 2d at 940

VII.    CONCLUSION...............................................................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Wozniak*,
 492 N.E.2d 426 (Ohio 1986)......................................................................................28

*Adams v. Anheuser-Busch Cos., Inc.*,
 No. 2:10-CV-826, 2012 U.S. Dist. LEXIS 42364 (S.D. Ohio Mar. 28, 2012).................. 41-42

*Amos v. PPG Indus.*,
 No. 2:05-CV-70, 2015 U.S. Dist. LEXIS 106944 (S.D. Ohio Aug. 13, 2015)............... *passim*

*Arnold v. Soc'y for Sav. Bancorp., Inc.*,
 650 A.2d 1270 (Del. 1994) ........................................................................... 17-18, 21

*In re Associated Estates Realty Corp. S'holder Litig.*,
 No. 1:15-cv-00857-DCN, slip op. (N.D. Ohio June 8, 2016)................................................51

*Babcock v. Computer Assocs. Int'l.*,
 212 F.R.D. 126 (E.D.N.Y. 2003) ............................................................................46

*Bailey v. AK Steel Corp.*,
 No. 1:06-CV-468, 2008 U.S. Dist. LEXIS 16704 (S.D. Ohio Feb. 21, 2008),
 *aff'd sub nom. Bailey v. White*, 320 F. App'x 364 (6th Cir. 2009)..........................................25

*Bailey v. AK Steel Corp.*,
 No. 1:06-CV-468, 2008 U.S. Dist. LEXIS 18838 (S.D. Ohio Feb. 28, 2008) .................48, 55

*Behrens v. Wometco Enters., Inc.*,
 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .....................................55

*Bert v. AK Steel Corp.*,
 No. 1:02-CV-467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio 2008) ....................................36

*In re Beverly Hills Fire Litig.*,
 639 F. Supp. 915 (E.D. Ky. 1986) ............................................................................55

*Bittinger v. Tecumseh Prods. Co.*,
 123 F.3d 877 (6th Cir. 1997) ....................................................................................42

*In re Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, PA.*,
 778 F.2d 890 (1st Cir. 1985)......................................................................................55

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) ........................................................49, 56

*Brent v. Midland Funding, LLC*,
    No. 3:11-CV 1332, 2011 U.S. Dist. LEXIS 98763 (N.D. Ohio Sept. 1, 2011) ......................37

*In re Broadwing, Inc. ERISA Litig.*,
    252 F.R.D. 369 (S.D. Ohio 2006) ........................................................26, 32, 39, 50

*Brotherton v. Cleveland*,
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ........................................................38

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ........................................................39

*Carlson v. Rabkin*,
    789 N.E.2d 1122 (Ohio Ct. App. 2003) ........................................................28

*In re Celera Corp. S'holder Litig.*,
    No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012), *rev'd in
    part on other grounds*, 2012 Del. LEXIS 658 (Del. 2012) ........................................24, 30, 47

*In re Chips & Techs., Inc. S'holders Litig.*,
    No. 15832, 1998 Del. Ch. LEXIS 109 (Del. Ch. June 24, 1998) ........................................22

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ........................................................26

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ........................................................55

*Continuum Capital v. Nolan*,
    No. 5687-VCL, 2011 Del. Ch. LEXIS 69 (Del. Ch. Feb. 3, 2011) ........................................52

*In re Countrywide Corp. S'holders Litig.*,
    No. 3464-VCN, 2009 Del. Ch. LEXIS 155 (Del. Ch. Aug. 24, 2009) ..............................17, 43

*In re Cox Radio, Inc. S'holders Litig.*,
    Consolidated Civil Action No. 4461-VCP, 2010 Del. Ch. LEXIS 102 (Del.
    Ch. May 6, 2010) ........................................................47

*David P. Simonetti Rollover IRA v. Margolis*,
    No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) ........................................19

*Dubroff v. Wren Holdings, LLC*,
    C.A. No. 3940-VCN, 2010 Del. Ch. LEXIS 178 (Del. Ch. Aug. 20, 2010) ..........................41

*In re Emerging Commc'ns, Inc. S'holder Litig.*,
  No. 16415, 2004 Del. Ch. LEXIS 70 (Del. Ch. May 3, 2004) .................................................19

*In re Fine Host Corp. Sec. Litig.*,
  No. 3:97-CV-2619, 2000 WL 33116538 (D. Conn. Nov. 8, 2000)........................................55

*Fournier v. PFS Invs., Inc.*,
  997 F. Supp. 828 (E.D. Mich. 1998)....................................................................................55

*Gascho v. Global Fitness Holdings, LLC*,
  No. 2:11-CV-436, 2014 U.S. Dist. LEXIS 46846 (S.D. Ohio Apr. 4, 2014) .................. *passim*

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ........................................................................................26, 37

*Henkel v. Aschinger*,
  962 N.E.2d 395 (Ohio Com. Pl. 2012) ...........................................................................29, 30

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)...........................................................................................55

*IUE-CWA v. GMC*,
  238 F.R.D. 583 (E.D. Mich. 2006) ...........................................................................37, 38, 39

*In re IXC Commc'ns, Inc. S'holder Litig., v. Cincinnati Bell, Inc.*,
  No. 17324, 1999 Del. Ch. LEXIS 210 (Del. Ch. Oct. 27, 1999)..........................................30

*In re Keithley Instruments, Inc.*,
  599 F. Supp. 2d 908 (N.D. Ohio 2009)................................................................................17

*Kennedy v. United Healthcare of Ohio, Inc.*,
  206 F.R.D. 191 (S.D. Ohio 2002)...........................................................................40, 41, 46

*Kugelman v. PVF Capital Corp.*,
  972 F. Supp. 2d 993 (S.D. Ohio 2013) .................................................................................30

*Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*,
  No. 5002-CC, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009) ......................................24

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997)..............................................................................38, 51

*In re LCA-Vision S'holder Litig.*,
  No. A1401239, slip op. (Ohio Com. Pl.- Hamilton Cnty. Aug. 10, 2015) ............................52

*Levell v. Monsanto*,
  191 F.R.D. 543 (S.D. Ohio 2000) ........................................................................................34

*Little Caesar Enters., Inc. v. Smith*,
   172 F.R.D. 236 (E.D. Mich. 1997) .......................................................................44

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010)......................................................... *passim*

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
   No. 5402-VCS, 2010 WL 1931084 (May 13, 2010) ............................................19

*Marie Raymond Revocable Trust v. MAT Five LLC*,
   980 A.2d 388 (Del. Ch. 2008)..............................................................................43

*Mayo v. Sears, Roebuck & Co.*,
   148 F.R.D. 576 (S.D. Ohio 1993) .........................................................................43

*McMullin v. Beran*,
   765 A.2d 910 (Del. 2000) .....................................................................................32

*In re Meadowbrook Ins. Group, Inc. S'holder Litig.*,
   No. 5:15-cv-11057-JCO-MJH, slip op. (E.D. Mich. April 7, 2016)......................51

*Mees v. Skreened, Ltd.*,
   No. 2:14-CV-142, 2016 U.S. Dist. LEXIS 1242 (S.D. Ohio Jan. 6, 2016) ............37

*Mentis v. Delaware Am. Life Ins. Co.*,
   C.A. No. 98C-12-023 WTQ, 2000 Del. Super. LEXIS 237 (Del. Super. Ct.
   May 30, 2000)......................................................................................................41

*Metro Commc'n Corp. BVI v. Advanced MobileComm Techs. Inc.*,
   854 A.2d 121 (Del. Ch. 2004)...............................................................................17

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)..............................................................................................17

*Monday v. Meyer*,
   No. 1:10 CV 1838, 2011 U.S. Dist. LEXIS 136858 (N.D. Ohio Nov. 29, 2011)
   ..............................................................................................................................28

*In re The MONY Grp. Inc. S'holder Litig.*,
   852 A.2d 9 (Del. Ch. 2004)...................................................................................22

*Nagy v. Bistricer*,
   770 A.2d 43 (Del. Ch. 2000)..................................................................................20

*In re Nationwide Fin. Servs. Litig.*,
   No. 2:08-CV-249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009)......25

*In re Netsmart Techs. Inc.*,
    924 A.2d 171 (Del. Ch. 2007)................................................................20, 22, 24, 25

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ...............................................................................34

*Nichting v. DPL, Inc.*,
    No. 3:11-cv-00141, slip op. (S.D. Ohio Feb. 24, 2012)..........................................51

*Olden v. Gardner*,
    294 F. App'x. 210 (6th Cir. 2008) ........................................................................36

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002)...................................................................................32

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-1952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) .......................25

*Pfeffer v. Redstone*,
    965 A.2d 676 (Del. 2009) ....................................................................................31

*In re PNB Holding Co. S'holders Litig.*,
    No. 28-N, 2006 Del. Ch. LEXIS 158 (Del. Ch. Aug. 18, 2006).............................................19

*Prater v. Ohio Educ. Ass'n*,
    No. C2041077, 2008 U.S. Dist. LEXIS 88511 (S.D. Ohio June 26, 2008)................42, 44, 45

*Priddy v. Edelman*,
    883 F.2d 438 (6th Cir. 1989) ...............................................................................27

*In re Pure Res., S'holders Litig.*,
    808 A.2d 421 (Del. Ch. 2002)..................................................................22, 23, 31

*Radol v. Thomas*,
    772 F.2d 244 (6th Cir. 1985) ...............................................................................29

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) .......................................................................50, 56

*Rawlings v. Prudential-Bache Props., Inc.*,
    9 F.3d 513 (6th Cir. 1993) ...........................................................................48, 49, 55

*Redington v. Goodyear Tire & Rubber Co.*,
    No. 5:07CV 1999, 2008 U.S. Dist. LEXIS 64639 (N.D. Ohio Aug. 22, 2008)...........34, 36, 37

*Robinson v. Ford Motor Co.*,
    Nos. 1:04-CV-00844, 1:04-CV-00845, 2005 U.S. Dist. LEXIS 11673 (S.D.
    Ohio June 15, 2005)..............................................................................................38

*Smillie v. Park Chem. Co.*,
     710 F.2d 271 (6th Cir. 1983) .............................................................................49

*Smith v. Ajax Magnethermic Corp.*,
     No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551 (N.D. Ohio Nov. 6, 2007).........................35

*Smith v. Robbins & Myers*,
     969 F. Supp. 2d 850 (S.D. Ohio 2013) .............................................................28

*Sprague v. GMC*,
     133 F.3d 388 (6th Cir. 1998) ........................................................................42, 43

*In re Staples, Inc. S'holders Litig.*,
     792 A.2d 934 (Del. Ch. 2001).......................................................................18, 22

*Stinson v. Delta Mgmt. Assocs.*,
     302 F.R.D. 160 (S.D. Ohio 2014) ......................................................................28

*Stroud v. Grace*,
     606 A.2d 75 (Del. 1992) ...............................................................................17

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
     268 F. Supp. 2d 907 (N.D. Ohio 2003).........................................................50, 52, 53, 55, 56

*In re Syncor ERISA Litig.*,
     227 F.R.D. 338 (C.D. Cal. 2005) ......................................................................46

*In re Telectronics Pacing Sys., Inc. Accufix Atrial "J" Leads Prods. Liab. Litig.*,
     137 F. Supp. 2d 985 (S.D. Ohio 2001) .................................................26, 32, 33, 36, 52

*Turberg v. ArcSight*,
     C.A. No. 5821-VCL (Del. Ch. 2011)....................................................................23

*Turner v. Bernstein*,
     768 A.2d 24 (Del. Ch. 2000)...........................................................................47

*UAW v. General Motors Corp.*,
     No. 05-CV-73991, 2006 U.S. Dist. LEXIS 14890 (E.D. Mich. Mar. 31, 2006) .........33, 34, 37

*Vassalle v. Midland Funding LLC*,
     708 F.3d 747 (6th Cir. 2013) ..........................................................................26

*Walther v. Pension Plan for Salaried Employees of the Dayton-Walther Corp.*,
     880 F. Supp. 1170 (S.D. Ohio 1994) .............................................................41, 45, 46

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
     899 F. Supp. 1297 (D.N.J. 1995) ......................................................................55

*Wess v. Storey*,
   No. 2:08-CV-623, 2011 U.S. Dist. LEXIS 41050 (S.D. Ohio Apr. 14, 2011) ............... *passim*

*Weston v. Weston Paper & Mfg. Co.*,
   658 N.E.2d 1058 (Ohio 1996) ................................................................................................28

*In re Wm. Wrigley Jr. Co. S'holders Litig.*,
   No. 3750-VCL, 2009 Del. Ch. LEXIS 12 (Del. Ch. Jan. 22, 2009) ..................................16, 43

**Statutes**

O.R.C. Section 1701.59(C)(1) ....................................................................................................28

**Other Authorities**

Fed. R. Civ. P. 23(a) ...................................................................................................40, 41, 42, 46

Fed. R. Civ. P. 23(b) .........................................................................................................40, 46, 47

Fed. R. Civ. P. 23(h) ....................................................................................................................48

Ohio Civil Rule 23.1 ....................................................................................................................29

## I.      PRELIMINARY STATEMENT

Plaintiff LR Trust ("LR Trust") respectfully submits this Memorandum of Law[1] in support of its application that the Court: (1) grant final approval of the proposed settlement (the "Settlement") of the above-captioned shareholder derivative action (the "Federal Court Action") and the related state court class action (the "State Court Action") (collectively, the "Actions"), which proposed Settlement was preliminarily approved by this Court on March 14, 2016; (2) grant final certification of the Settlement Class for settlement purposes; and (3) grant Plaintiffs' Counsel's request for reasonable attorneys' fees and expenses incurred in connection with the litigation of the Actions in the aggregate amount of up to $318,000, consisting of $300,000 in fees plus up to $18,000 in reasonable, itemized, out-of-pocket, expenses (the "Fee Request").[2]

Through their respective Actions, plaintiffs LR Trust and Neil Scarfuto (the plaintiff in the State Court Action) (collectively, "Plaintiffs") asserted claims against Defendants, the Board of Directors (the "Board") of R.G. Barry Corporation ("R.G. Barry" or the "Company"), for breaching their fiduciary duties to the shareholders of R.G. Barry in connection with the sale of the Company to Mill Road Capital II, L.P. ("Mill Road").  This deal (the "Merger" or the "Transaction") was announced publicly on May 2, 2014 and completed on September 3, 2014.

Plaintiffs alleged, among other things, that Defendants attempted to obtain shareholder approval of the Merger through a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy") filed with the United States Securities and

---

[1]  This brief incorporates by reference the entirety of the Stipulation and Agreement of Settlement (the "Stipulation") entered into by the Parties on September 25, 2015 (ECF No. 18-3).  Unless defined otherwise herein, all capitalized terms used herein are as defined in the Stipulation.

[2]  Defendants do not oppose the relief requested herein for settlement purposes, nor do they oppose the Fee Request as long as it is not in excess of the designated amount.  However, the Parties acknowledge that this Memorandum of Law and the supporting papers are being submitted unilaterally by Plaintiffs, and that Defendants do not necessarily agree with all of the representations and characterizations set forth herein.

Exchange Commission ("SEC") on June 12, 2014. As a result, R.G. Barry's public shareholders faced irreparable harm by being deprived of the valuable right to cast a fully informed vote on whether or not to approve the Merger. As a direct result of Plaintiffs' prosecution of the Actions, R.G. Barry made a number of supplemental disclosures to its shareholders (the "Supplemental Disclosures," defined below at pp. 13-15, and also attached to the accompanying July 26, 2016 Declaration of Richard A. Acocelli, Esq. in Support of Plaintiffs' Motion For Final Approval of the Settlement, Final Certification of the Settlement Class, and Approval of Award of Attorneys' Fees and Reimbursement of Expenses (the "Acocelli Decl.") as Exhibit 5).[3] These Supplemental Disclosures provided material, yet previously undisclosed, information about the Merger well in advance of the September 3, 2014 shareholder vote (the "Stockholder Vote"), and constituted a material benefit for R.G. Barry and its public shareholders, allowing those shareholders to make a fully informed decision on whether or not to vote in favor of the Merger.

On September 25, 2015, Plaintiffs filed their motion requesting preliminary approval of the proposed Settlement, and requesting that the Court direct that Court-approved Notice of the proposed Settlement be issued to R.G. Barry's shareholders. (ECF. No. 18-3). By Order dated March 14, 2016, this Court: (1) preliminarily approved the Settlement; (2) conditionally certified the Settlement Class for settlement purposes; (3) appointed Plaintiffs as Class representatives and their attorneys as Plaintiffs' Counsel; (4) directed that Notice to be disseminated to the Settlement Class in the form and method provided in the Stipulation; and (5) scheduled a fairness hearing on the proposed Settlement and the Fee Request, to be held on August 9, 2016, after which time the Court will decide whether to grant final approval of the Settlement and the Fee Request. (ECF No. 20).

---

[3] A copy of these Supplemental Disclosures are also attached as Exhibit A to the Stipulation. (ECF No. 18-3).

Plaintiffs and Plaintiffs' Counsel respectfully submit that the Settlement is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the members of the Settlement Class, and, therefore, final approval should be granted by the Court. In complex litigation such as this with uncertain and difficult-to-prove damages, in the face of considerable risk of a recovery of no benefit at all for the Settlement Class, Plaintiffs and their counsel nevertheless obtained a Settlement that provided substantial and meaningful (although non-pecuniary) benefits to R.G. Barry's public shareholders. Moreover, the Settlement is the product of arm's-length, good-faith negotiations and is endorsed by the opinions of experienced and well-informed Plaintiffs' Counsel, and enjoys the apparent unanimous support of the absent members of the Settlement Class, considering that not a single objection to the Settlement has been received in response the robust Court-approved notice program undertaken by the Parties pursuant to which 4,079 Notices were disseminated to former R.G. Barry shareholders. (*See* Affidavit of Jose C. Fraga Regarding Mailing of the Notice, ECF No. 25).

In addition, as set forth at Section V. below, the Settlement Class, already preliminarily certified, meets all of the requirements of Federal Rule of Civil Procedure 23. The Court should therefore grant final certification of the Settlement Class.

Finally, the Fee Request is eminently fair and reasonable in light of, among other things, the substantial benefits obtained for the Settlement Class, the contingent risk undertaken by Plaintiffs' Counsel, the complexity of the litigation, and fee awards in comparable litigation with similar results, and the fact that Plaintiffs' Counsels' aggregate lodestar far exceeds the total attorneys' fees sought in the Fee Request. Acocelli Decl., Exs. 6 through 9. Again, it is particularly noteworthy that following the dissemination of over four-thousand direct Notices in conformity with the Preliminary Approval Order, not a single member of the Settlement Class has objected to the Fee Request.

Accordingly, Plaintiffs and their counsel respectfully request that the Court grant final approval of the Settlement, finally certify the Settlement Class as defined below and in the Stipulation, and grant the Fee Request.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[4]

On May 2, 2014, R.G. Barry, an Ohio corporation, and Mill Road announced their entry into a merger agreement dated May 1, 2014 ("Merger Agreement"), pursuant to which Mill Road would acquire all of the outstanding shares of R.G. Barry. Acocelli Decl. ¶15. The Merger was valued in the aggregate at approximately $215 million. *Id.*

On May 8, 2014, R.G. Plaintiff Scarfuto, then an R.G. Barry shareholder, commenced the State Court Action by filing a Class Action Complaint challenging the Merger on behalf of the shareholders of R.G. Barry against both the Board, R.G. Barry (collectively, the "R.G. Barry Defendants"), and Mill Road. *Id.* at ¶16. On May 20, 2014, Plaintiff Scarfuto filed an Amended Derivative and Class Action Complaint in the State Court Action. *Id.*

On May 14, 2014, LR Trust, also an R.G Barry shareholder, commenced an action (the "First LR Trust Action") titled *LR Trust v. R.G. Barry Corporation et al.*, Case No. 14 CV 362, in the Fairfield County, Ohio, Court of Common Pleas. *Id.* at ¶17. This May 14, 2014 action by LR Trust was in the form of a Direct Shareholder Class Action Complaint challenging the Merger on behalf of the shareholders of R.G. Barry, bringing breach of fiduciary duty claims against the R.G. Barry Defendants. *Id.* On June 9, 2014, LR Trust filed notice dismissing all of its claims asserted in the First LR Trust Action without prejudice. *Id.* at ¶18.

On June 12, 2014, the Company filed the Preliminary Proxy concerning the Merger with

---

[4]  The factual and procedural background recited herein is also set forth in, and derived mainly from, the Stipulation (at pp. 2-7).  (ECF No. 18-3).

the SEC. *Id.* at ¶19. Defendants filed amendments to the Preliminary Proxy with the SEC on June 23, 2014, July 16, 2014, and July 29, 2014. *Id.*

On June 17, 2014, the R.G. Barry Defendants filed a motion to dismiss Plaintiff Scarfuto's Direct Shareholder Class Action Complaint filed in the State Court Action. *Id.* at ¶20.

On June 24, 2014, LR Trust commenced the Federal Court Action by filing a Verified Derivative and Class Action Complaint (the "Complaint") challenging the Merger on behalf of the shareholders of R.G. Barry against the R.G. Barry Defendants (ECF No. 1). LR Trust's Federal Court Action Complaint alleged, among other things, that the members of the Board breached their fiduciary duties in connection with the Merger by: (i) failing to run an adequate sales process, failing to appropriately consider a potentially superior bid from another party, and ultimately agreeing to inadequate Merger consideration; (ii) including in the Merger Agreement overly restrictive and onerous deal protection devices for the benefit of Mill Road; and (iii) making materially misleading statements and/or failing to disclose material information in the Preliminary Proxy, including, among other things, information regarding the background of the Merger and the financial analyses performed by R.G. Barry's financial adviser Peter J. Solomon Company L.P. ("PJSC"). *Id.* at ¶21.

More specifically, LR Trust alleged in the Complaint that activist investor Mill Road sought to capitalize on the Company's long-term potential for over five years, aggressively increasing its ownership to 9.6% of R.G. Barry's outstanding shares while making numerous bids to purchase the Company, all of which were deemed inadequate by the Board. *See* Complaint, ¶¶40-43 (ECF No. 1). Mill Road tried again in September 2013 with a $20.00 bid all cash offer to acquire R.G. Barry. *Id.* at ¶43. Despite the Company's bright prospects, the Board ultimately acquiesced to the activist investor, agreeing to the cash-out Merger on May 1, 2014 following an

eight-month single-bidder "process" in which the Board decided to forego a market check or any other mechanism by which they could determine value of the Company on the open market.  *Id.* at ¶¶ 54-55, 60, 62, 66.  Unsurprisingly Mill Road never increased its initial September 2013 $20.00 per share bid during those eight months.  In fact, even after Mill Road *decreased* its $20.00 offer price to a best-and-final $19.00 per share (citing a costs associated with R.G. Barry's long-term incentive plans and a deterioration in R.G. Barry's 2015 projections), the Board failed to conduct a market check, and instead relied solely upon the financial analyses of its financial advisor PJSC (a substantial portion of whose fee was contingent on consummation of the Merger) to ascertain fair value for the Company, and took on faith PJSC's opinion that Mill Road's proposal was unlikely to be exceeded by any other party.  *Id.* at ¶¶ 58-65.

Moreover, although the Company received a potentially superior $21.00 per share third-party bid (the "Alternative Proposal") from Party A during the 30-day "go shop" – a $2.00 premium to the Merger Consideration – the Board determined that the Alternative Proposal was not reasonably expected to result in a Superior Proposal, citing antitrust concerns and PJSC's claim that if a deal with Party A was terminated, R.G. Barry's share price could drop to $14 per share, resulting in a potential $65 million loss to the Company and its shareholders.  *Id.* at ¶¶70, 81-83.

The Complaint further alleged that the Proxy failed to disclose material information concerning:  (i) the sale process, including Mill Road's basis for decreasing its offer price to $19.00 per share (*id.* at ¶101), information concerning the go-shop sale process, including whether the confidentiality agreement entered into by Party A contained a standstill provision and whether any other parties contacted during the go-shop signed confidentiality agreements or engaged in due diligence (*id.* at ¶¶104-105), and PJSC's basis for claiming the Company's shares could drop to $14 per share if a deal with Party A fell through, resulting in a $65 million loss in market

capitalization (*id.* at ¶81); (ii) the financial analyses underlying PJSC's "fairness opinion" which was relied upon by the Board (*id.* at ¶¶108-125); and (iii) R.G. Barry's financial projections, including the unlevered free cash flows for the different sets of projections PJSC utilized in its financial analyses (*id.* at ¶¶126-130).

On June 26, 2014, Scarfuto sought leave in the State Court Action to file a Second Amended Derivative and Class Action Complaint against the R.G. Barry Defendants, dropping Mill Road as a defendant, alleging, among other things, that the Board members committed fiduciary breaches by, *inter alia*: (i) failing to maximize shareholder value by, *inter alia*, including in the Merger Agreement deal overly restrictive and onerous deal protection devices that disproportionately benefitted Mill Road; and (ii) making materially misleading statements and/or failing to disclose material information in the Preliminary Proxy, including, among other things, information regarding the background, facts and circumstances leading up to the Merger, and PJSC's Merger-related financial analyses. Acocelli Decl. at ¶25. On August 6, 2014, the State Court entered Orders in the State Court Action allowing Scarfuto to file his Second Amended Derivative and Class Action Complaint, deeming the R.G. Barry Defendants' motion to dismiss Scarfuto's prior class action complaint moot, and allowing the R.G. Barry Defendants additional time to move, plead, or otherwise respond to Scarfuto's latest amended pleading. *Id.* at ¶26.

In July and early August 2014, the Parties in both the State Court Action and the Federal Court Action met and conferred numerous times concerning, among other things, Plaintiffs LR Trust's and Scarfuto's informal requests for discovery and the terms of a Stipulated Protective Order. *Id.* at ¶27. During this time, LR Trust prepared a motion for a Temporary Restraining Order, Preliminary Injunction Pending Expedited Discovery and Expedited Discovery (the "Expedited Motion") which sought production of certain discovery on an expedited basis and also

sought to temporarily enjoin the Stockholder Vote on whether to adopt the Merger Agreement until such discovery was conducted. *Id.*

On July 11, 2014, LR Trust's counsel served a draft of the Expedited Motion on R.G. Barry's counsel in an effort to advance the Parties' negotiations regarding Plaintiffs' expedited discovery demands. *Id.* at ¶28.

On August 6, 2014, pursuant to the execution of the agreed-upon Stipulated Protective Order and following the Parties' negotiations concerning the scope of informal discovery, the R.G. Barry Defendants' counsel commenced a rolling production of internal non-public documents to Plaintiffs' Counsel, including (among other things) minutes of meetings of R.G. Barry's Board concerning the Merger, written presentations made to the Board by PJSC containing PJSC's financial analyses relating to the Merger, and certain communications between third-party bidders and R.G. Barry and/or PJSC. *Id.* at ¶30.

On August 1, 2014, the Company filed a Definitive Proxy Statement on Schedule 14A with the SEC concerning the Merger (the "Definitive Proxy"). *Id.* at ¶29; Acocelli Decl., Ex. 4. The special meeting of shareholders of R.G. Barry was then set for September 3, 2014 in order to, among other things, hold the Stockholder Vote on the proposal to adopt the Merger Agreement. Acocelli Decl., ¶29.

Following review and analysis of R.G. Barry's and PJSC's internal documents and further analysis of the Preliminary Proxy and the Definitive Proxy, Plaintiffs and their counsel, in consultation with their retained financial expert, identified certain additional information that they believed had been improperly omitted from the Proxy materials, and that in their view required disclosure prior to the Stockholder Vote to permit R.G. Barry's public shareholders to make fully informed decisions as to whether or not to vote in favor of the Merger and/or seek appraisal. *Id.*

at 31.

Accordingly, on August 14, 2014, Plaintiffs, by and through their counsel, made a written settlement demand (the "Demand") on the R.G. Barry Defendants.  *Id.* at ¶32.  This Demand included multiple requests for supplemental disclosures of additional information to the Company's shareholders regarding the Merger.  *Id.*  Thereafter, the Parties engaged in extensive arm's-length negotiations regarding the requests made in the Demand.  *Id.*

On August 22, 2014, counsel for all Parties to the Actions reached an agreement-in-principle providing for the Settlement of the Actions on the terms and conditions set forth in the Stipulation.  *Id.* at ¶33.  In Settlement of the Actions, the R.G. Barry Defendants agreed to make a filing with the SEC, in a Current Report on Form 8-K, which included the Supplemental Disclosures described below and herein, and set forth in Attachment A to a Memorandum of Understanding ("MOU") entered into by the Parties as of August 22, 2014.  Prior to providing the Company's shareholders with the Supplemental Disclosures (as described and defined in Section III, *infra*) with the SEC, Defendants consulted and negotiated with Plaintiffs' Counsel regarding the substance of information to be contained therein.  *Id.*  The MOU and the additional disclosures addressed Plaintiffs' Demand for the disclosure of additional supplemental information regarding the Merger to R.G. Barry shareholders prior to the Stockholder Vote.  *Id.*  The Supplemental Disclosures are attached as Exhibit 5 to the Acocelli Decl. and are also attached as Exhibit A to the Stipulation, filed with the Court on September 25, 2015.  (ECF No. 18-3).

Also on August 22, 2014, in accordance with the Parties' agreement set forth in the MOU, R.G. Barry filed the Current Report on Form 8-K containing the Supplemental Disclosures, which forms the basis of the resolution of the Actions.  *See* Acocelli Decl., Ex. 5.  The Supplemental

Disclosures were issued well in advance of (in fact, twelve (12) days prior to) the September 3, 2014 Stockholder Vote.  Acocelli Decl., ¶33.

Pursuant to the MOU, Defendants agreed to provide Plaintiffs with substantial additional discovery in order to confirm the fairness, reasonableness and adequacy of the proposed Settlement (the "Confirmatory Discovery").  *Id.* at ¶35.  The Confirmatory Discovery was one of the conditions of the Settlement, and was described in the MOU as follows:

> Defendants will provide Plaintiffs' counsel with such reasonable further discovery as may be reasonably necessary to confirm the fairness, reasonableness, and adequacy of the Settlement and the disclosures relating to the [Merger], which confirmatory discovery shall include (i) the depositions of a representative of R.G. Barry and a representative of PJSC, which Plaintiffs agree to use reasonable good faith efforts to limit to 3 hours each; and (ii) certain additional, limited, reasonably available documents and information highly relevant to confirming the fairness of the Settlement, for which Plaintiffs' counsel and R.G. Barry Defendants' counsel will continue to negotiate in good faith.  Plaintiffs intend to seek discovery into the Antitrust Analysis presented to the Board on June 13, 2014 ("Antitrust Analysis") and R.G. Barry Defendants, while agreeing to negotiate in good faith in connection with same, reserve all objections to discovery relating to the Antitrust Analysis, based on all applicable privileges and immunities.

*Id.*

Following extensive negotiations between the Parties concerning the scope of the Confirmatory Discovery, Defendants produced additional confidential, non-public documents relevant to Plaintiffs' claims, including, among other things, additional emails concerning the Merger.  *Id.* at ¶36.  Plaintiffs' Counsel also conducted the depositions of David P. Lauer, Lead Director of the Company, on April 2, 2015, and Jeffrey Hornstein, Managing Director of PJSC's Mergers and Acquisitions Group and lead financial advisor on the R.G. Barry engagement, on April 23, 2015.  *Id.*

Following the depositions of Messrs. Lauer and Hornstein, Plaintiffs sought additional Confirmatory Discovery regarding the Antitrust Analysis which was presented to the Board on June 13, 2014, and the Board's deliberations in connection with a related and potentially superior

third-party bid.  *Id.* at ¶37.  Plaintiffs' Counsel and Defendants' Counsel then engaged in extensive and hard-fought negotiations over the next several months concerning the production of the Antitrust Analysis and/or related information.  *Id.*  Plaintiffs' Counsel took the position that the Antitrust Analysis was highly relevant to the Board's decisions to reject competing bids which Defendants' Counsel claimed raised serious antitrust concerns, and that said Antitrust Analysis (or in the alternative certain portions thereof) was not protected by privilege and/or any privilege had been waived or was trumped by the significance of Plaintiffs' interest in obtaining the materials. *Id.*  Defendants, on the other hand, took the position that the Antitrust Analysis was not sufficiently relevant or important to the litigation under the circumstances, and/or that it was and remained privileged and protected from disclosure to the Plaintiffs and thus need not be produced.  *Id.*

On July 16, 2015, following protracted negotiations among the Parties concerning the production of the Antitrust Analysis and related documents, and on the eve of the submission of Plaintiffs' motion to compel, the Parties entered into an agreement pursuant to which Defendants agreed to make available additional information concerning the Antitrust Analysis.  *Id.* at ¶38. Defendants would have argued that this additional information demonstrated that the Board members reasonably informed themselves with respect to the potentially superior third-party Alternative Proposal, and justifiably relied on their advisers in determining that the Alternative Proposal was not reasonably expected to result in a superior offer, satisfying their fiduciary duties under Ohio law.  *Id.*  This additional information also further confirmed that, subject to the Supplemental Disclosures issued on August 22, 2014, the Definitive Proxy did not contain any other material misrepresentations or omissions concerning the Board's considerations with respect to the antitrust risk presented by the Alternative Proposal and the Board's determination that the Alternative Proposal was not reasonably expected to result in a superior proposal.  *Id.*  In the

opinion of Plaintiffs and their counsel, this additional information obtained in Confirmatory Discovery adequately addressed Plaintiffs' concerns regarding the Antitrust Analysis and the Alternative Proposal.  *Id.*

In sum, after careful and thorough review and analysis of the confidential non-public documents produced by Defendants since August 6, 2014, and analysis and consideration of the deposition testimony of both R.G. Barry's Lead Director and PJSC's Managing Director of its Mergers and Acquisitions Group and lead financial advisor on the R.G. Barry engagement, Plaintiffs' Counsel have determined that the August 22, 2014 Supplemental Disclosures provided the Company's shareholders with additional material information sufficient to make a fully informed decision whether or not to vote in favor of the Merger or seek appraisal.  *Id.* at ¶39. Defendants have also expressly acknowledged that the filing and prosecution of the Actions, and their discussions and negotiations with Plaintiffs' Counsel in settlement of the Actions, were the sole cause of their decision to make, and the issuance of, the Supplemental Disclosures.  *Id.* at ¶42; *see also* Stipulation at pp. 9, 15.

The Settlement reflects the Parties' vigorous arm's-length negotiations and the material terms of the Stipulation.  During the negotiations, all Parties were represented by counsel with extensive experience and expertise in shareholder class and derivative action litigation, and had a clear view of the strengths and weaknesses of their respective claims and defenses.  Acocelli Decl., ¶¶ 7, 91.

By Order dated March 14, 2016, the Court, among other things, granted preliminary approval of the proposed Settlement, certified the litigation as a class action for settlement purposes, directed that the Court-approved Notice be given to the so-certified class, and scheduled

a fairness hearing for August 19, 2016 to determine whether the Court should grant final approval to the Settlement and the Fee Request.  (ECF No. 20).

## III.  THE TERMS OF THE SETTLEMENT

The terms of the Settlement are set forth in the Stipulation.  Acocelli Decl., ¶1, and Ex. 1. As a direct result of the prosecution of the Litigation, the extensive negotiations between the Parties, and in consideration for the settlement and release of all Settled Claims (as defined in the Stipulation, ¶ 1(r)), R.G. Barry made the Supplemental Disclosures in a Form 8-K filed with the SEC on August 22, 2014.  *Id.*  The Supplemental Disclosures provided additional and supplemental material information to R.G. Barry shareholders, informing them of important and material "information" concerning certain aspects of the Merger; the events, facts, and circumstances leading up to it; and the financial analyses underlying it.  *Id.* at ¶41, and Ex. 5.  Specifically, as fully set forth in Exhibit A to the Stipulation, Defendants agreed to make (and did make) the Supplemental Disclosures providing material supplemental information to the Definitive Proxy regarding:

- that PJSC had presented to the Board a list of financial and strategic buyers which might have an interest in acquiring the Company, which list included both Party A and Party B;

- revisions and updates to financial projections provided in April 2014 to PJSC and Mill Road for fiscal year 2015;

- concerns expressed by Mill Road about those revised and updated projections as expressed in an April 29, 2014, letter from Mill Road to PJSC, which also expressed concerns about alleged inadequate disclosures to Mill Road by R.G. Barry about certain long-term employee incentive plans, a change in R.G. Barry's pension accounting, and the feasibility of sustaining cuts in projected marketing expenses, which combined to make the acquisition more expensive for Mill Road than anticipated when it made its prior $20.00 per share offer and necessitated that Mill Road's investment committee reduce its offer price to $18.75 per share;

- R.G. Barry's subsequent Board meetings to assess Mill Road's April 29, 2014, Letter and how to respond to it;

- information about the specific provisions of the confidentiality agreement entered into between R.G. Barry and Party A, including the fact that it contained standstill provisions and a description of those provisions;

- information about PJSC's previously undisclosed contacts in early May 2014 with a fashion accessories retailer referred to in the Definitive Proxy as Party B, who was the only potential acquirer besides Party A who made an inquiry during the "go-shop" period;

- the details concerning R.G. Barry's discussions with Party A and Party B and the details of R.G. Barry's compliance with the Merger Agreement in providing information concerning same to Mill Road in connection with the "go-shop process," including, among other things, that on June 2, 2014, R.G. Barry advised Mill Road that the Board had determined that Party A was an "excluded party" under the Merger Agreement and provided to Mill Road the documents that comprised the Alternative Proposal by Party A, but did not disclose to Mill Road any deliberations by the Board regarding the Alternative Proposal;

- that in estimating a potential $56 million loss of market capitalization (determined by multiplying R.G. Barry's 11.2 million outstanding common shares by a $5 per share drop in trading price) if Party A terminated a merger with R.G. Barry, one of the bases for R.G. Barry's proposed $65 million termination fee with Party A, the PJSC representative pointed to an earlier analysis in connection with its PJSC fairness opinion (*i.e.*, the Opinion of Peter J. Solomon L.P.--Present Value of Future Stock Price Analysis, which is set forth in full on pages 50-51 of the Definitive Proxy) that suggested that R.G. Barry's share price could drop to $14.00 per share or lower if the Company were not sold, a $5 per share drop from the Company's then-trading price of $19 per share;

- that at the June 16, 2014 meeting the Board discussed whether it would be fruitful to request that Mill Road increase its offer in response to the Alternative Proposal from Party A, to which PJSC's representative responded that, based upon his discussions with Mill Road, he believed that Mill Road's current offer was its best and final offer and that, even if Mill Road might be willing to increase its offer, it would not do so unless and until the Board determined that the Alternative Proposal was a "superior proposal" which would trigger certain conditions and rights in the Merger Agreement. Following such discussion, the Board determined it would not be fruitful to request that Mill Road Capital increase its offer;

- the specific transaction-by-transaction enterprise values and multiples forming the basis for the *Selected Precedent Transactions Analysis* conducted by PJSC in connection with and underlying its fairness opinion;

- PJSC's method for calculating unlevered, after-tax free cash flows in connection with its *Discounted Cash Flow ("DCF") Analysis*; and

- additional information concerning R.G. Barry's projected financial performance, as used by PJSC in connection with its *DCF Analysis* based on the financial projections prepared by management for fiscal years 2015 through 2018, including (i) with respect to the Management Case Projections–Excluding Acquisitions, the following items: (a) EBITDA, (b) EBIT, (c) taxes and tax rate, (d) depreciation and amortization expense, (e) capital expenditures, (f) change in net working capital, and (g) unlevered, after tax free-cash flows; and (ii) with respect to the Management Case Projections–Including Acquisitions which apply the financial impact of two illustrative hypothetical acquisitions, the profiles of which were developed by management and applied to the financial projections prepared by management, the following items: (a) taxes and tax rate, (b) change in net working capital, (c) acquisitions, and (d) unlevered, after tax free-cash flows.

*Id.*

Without admitting any wrongdoing, and for the purposes of the Settlement only, Defendants have acknowledged that Plaintiffs and Plaintiffs' Counsel, through the institution and prosecution of, and the negotiations to resolve the Actions, were the sole cause of R.G. Barry having made the Supplemental Disclosures filed with the SEC on August 22, 2014. *Id.* at ¶42. *See also* Stipulation at pp. 9, 15.

The Supplemental Disclosures addressed the core of Plaintiffs' allegations described above and provided critical information concerning, *inter alia*, whether the Board properly executed its duties in agreeing to the terms of the Merger, and whether RG Barry shareholders received fair value for their shares. As such, armed with the Supplemental Disclosures, R.G. Barry shareholders were able to decide whether or not to vote for the proposed Merger or seek appraisal based on full and complete information. Acocelli Decl., ¶43. Obtaining such disclosures was a particularly appropriate method of settling this case because it provided Plaintiffs and the putative Settlement Class with a portion of the relief sought in the Complaint, and because it also provided them with full disclosure of additional material relevant facts and information and thereby allowed the

Company's public shareholders to make a fully-informed decision as to whether or not to vote in favor of the Merger or seek appraisal.  *Id.*

### A. The Settlement Obtained Significant And Meaningful Benefits For R.G. Barry's Public Shareholders

Whether or not the Merger consideration sufficiently valued R.G. Barry was a complex matter, and at the end of the day, after expedited discovery (and later Confirmatory Discovery) was undertaken, there was substantial evidentiary support for Defendants' position that the Board's decision to accept Mill Road's offer fell within the range of a fully defensible business judgment decision.  Moreover, relatedly, and most importantly, based on his review of non-public financial information obtained by Plaintiffs and their counsel in the course of expedited discovery (and later Confirmatory Discovery), Plaintiffs' valuation expert determined that he would have had considerable difficulty ultimately demonstrating that the Merger consideration fell outside of the range of fairness.  Accordingly, even if Plaintiffs were able to persuade the Court that there was some deficiency in the sale process that resulted in the Merger Agreement, after analysis of the facts and circumstances of the case in light of discovery and substantial consultation with their financial expert, Plaintiffs chances of recovering a money judgment in favor of the Settlement Class were determined to be very low, if not unrealistic.  *See, e.g.*, *In re Wm. Wrigley Jr. Co. S'holders Litig.*, No. 3750-VCL, 2009 Del. Ch. LEXIS 12, at *18-19 (Del. Ch. Jan. 22, 2009) ("Delaware courts have often approved settlements of merger class litigation that entail only non-monetary relief.  Thus, it is not adequate grounds for objection to complain that potential monetary claims are being compromised on terms that do not afford any monetary relief to the class.");[5] *see*

---

[5] R.G. Barry is both incorporated and headquartered in Ohio; however, "Ohio courts routinely look to Delaware case law for guidance in deciding corporate law issues [.]"  *In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 908, 918, n.6 (N.D. Ohio 2009) ("[b]oth parties repeatedly reference cases dealing with Delaware law in their briefs.  Accordingly, the Court refers often to such authorities, and, unless distinguished, treats those cases as highly persuasive.").

*also In re Countrywide Corp. S'holders Litig.*, No. 3464-VCN, 2009 Del. Ch. LEXIS 155, at *11 (Del. Ch. Aug. 24, 2009) (holding that "it is not the case that a settlement must include a monetary element in order to pass muster as fair and reasonable.").

Courts have long recognized that in derivative actions, non-monetary benefits provide substantial benefits and settlements based on such benefits warrant approval.  *See, e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) (noting that "a corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature.").

Here, Plaintiffs' Counsel believe that the Supplemental Disclosures provided significant and meaningful benefits to R.G. Barry shareholders because, without complete disclosure of this information, the Company's shareholders would not have been able to make an informed decision on whether to vote in favor of (or against) the Merger or seek appraisal.  A fundamental tenet of corporate law is that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval.  *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (noting the "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action"); *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (citations omitted) (noting the "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action."); *Metro Commc'n Corp. BVI v. Advanced MobileComm Techs. Inc.*, 854 A.2d 121, 156 (Del. Ch. 2004) ("[T]he fiduciary has the duty to disclose all material facts bearing on the decision at issue.").  The materiality standard is defined as follows:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . .  ***It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused a reasonable investor to change his vote.*** What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Arnold*, 650 A.2d at 1277 (emphasis added) (citing *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449 (1976)).  Importantly, "materiality is to be assessed from the viewpoint of the 'reasonable' stockholder, not from a director's subjective perspective."  *Arnold*, 650 A.2d at 1277 (citing *Zirn v. VLI Corp.*, 621 A.2d 773, 779 (Del. 1993)).  Thus, "a material omission is not rendered immaterial simply because the party making the omission honestly believes it [is] insignificant." *Id.*

As detailed herein, the August 22, 2014 Supplemental Disclosures provided R.G. Barry's public shareholders with additional information that was material and vital to those shareholders in evaluating the fairness of the Merger and determining how to vote their shares of R.G. Barry stock vis-à-vis the Merger and whether to seek appraisal.

### B.    The Material Supplemental Disclosures Regarding Management's Financial Projections

Courts addressing complex merger litigation like this one have repeatedly held that management's financial projections are among the most important information a stockholder can have when evaluating the proposed consideration in a merger.  *See, e.g.*, *In re Staples, Inc. S'holders Litig.,* 792 A.2d 934, 958 n.44 (Del. Ch. 2001) ("[o]ne suspects that the projections are the information that most stockholders would find the most useful to them."); *David P. Simonetti Rollover IRA v. Margolis*, No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *30 (Del. Ch. June 27, 2008) ("Delaware law places a premium on management's predictions of future performance.")

(citation omitted).[6]  The importance of complete and accurate disclosure of management's financial projections is magnified where, as here, stockholders must determine whether to approve an all-cash going private transaction or whether to seek appraisal for their shares based heavily on management's expectations of the company's growth and earnings potential.  *See In re Emerging Commc'ns, Inc. S'holder Litig.*, No. 16415, 2004 Del. Ch. LEXIS 70, at *, at *134 (Del. Ch. May 3, 2004) (projections are "highly material" because knowledge of projections "would have enabled the [unit holders] to understand [the company's] intrinsic worth and the extent of the market's undervaluation of their company").

The Settlement achieved Supplemental Disclosures for the benefit of R.G. Barry's shareholders which provided material supplemental detail and context concerning management's financial projections.  Specifically, the Supplemental Disclosures provided additional information concerning R.G. Barry's financial performance, as used by PJSC in conjunction with its *DCF Analysis*, based on the financial projections prepared by management for fiscal years 2015 through 2018, including:

> (i)     with respect to the *Management Case Projections-Excluding Acquisitions*, which exclude acquisitions, the following items:  (a) EBITDA, (b) EBIT, (c) taxes and tax rate, (d) depreciation and amortization expense, (e) capital expenditures, (f) change in net working capital and (g) unlevered, after tax free-cash flows; and

---

[6]  *See also Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, No. 5402-VCS, 2010 WL 1931084, at *2 (May 13, 2010) ("management's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information" that shareholders ought to have when deciding whether it is in their best interest to accept the proposed merger price); *Margolis*, 2008 Del. Ch. LEXIS 78, at *30 ("A proxy statement should give the stockholder the best estimate of the company's future cash flows as of the time the board approved the [transaction]."); *In re PNB Holding Co. S'holders Litig.*, No. 28-N, 2006 Del. Ch. LEXIS 158, at *59 (Del. Ch. Aug. 18, 2006) (holding that "reliable management projections of the company's future prospects are of obvious materiality to the electorate.").

(ii) with respect to *the Management Case Projections-Including Acquisitions* which apply the financial impact of two illustrative hypothetical acquisitions developed by management to find the financial projections prepared by management, the following items: (a) taxes and tax rate, (b) change in net working capital, (c) acquisitions, and (d) unlevered, after-tax free-cash flows.

Absent disclosure of this information based on management's financial projections and utilized by PJSC in its *DCF Analysis*, the Company's shareholders would not be able to reliably assess the credibility of the financial analyses conducted by PJSC and, thus, would not be able to determine whether the Merger is fair and in their best interests.

Given that courts have repeatedly found these types of financial projections to be "among the most highly-prized disclosures by investors," *In re Netsmart Techs. Inc.*, 924 A.2d 171, 203 (Del. Ch. 2007), the supplemental disclosure of these projections provided a substantial benefit to the Settlement Class, and accordingly weighs strongly in favor of finally approving the Settlement.

## C. The Material Supplemental Disclosures Regarding The Sales Process And Background Of The Merger

Courts have routinely held that corporate shareholders are entitled to an accurate description of the "process" directors used "in coming to their decision to support the Merger." *See Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000). The *Nagy* Court further held that "[i]nformation of this kind is self-evidently material to [a shareholder's] decision whether to accept the merger consideration or to seek appraisal." *Id.*; *see also Arnold*, 650 A.2d at 1280 ("[O]nce defendants traveled down the road of partial disclosure of the history leading up to [a merger] . . . , they had an obligation to provide the shareholders with an accurate, full, and fair characterization of these historic events.").

Here, the Settlement provided the Company's shareholders with numerous material

supplemental disclosures concerning the circumstances, events, and sales process leading up to Defendants' entry into the Merger and their parallel recommendation to R.G. Barry's public shareholders, the Settlement Class, that those shareholders cast their votes in favor of the Merger. As described above (at pp. 13-15) and also set forth in Exhibit A to the Stipulation, these Supplemental Disclosures included material information concerning key subjects such as, *inter alia*: (i) the list of financial strategic buyers presented to the Board by PJSC as potential acquirers of R.G. Barry (ii) discussions held by the Board during meetings relating to Mill Road's April 29, 2014 Letter concerning the reduction in Mill Road's offer price; (iii) provisions of the respective confidentiality agreements entered into between R.G. Barry and Party A and Party B; (iv) additional information concerning R.G. Barry's discussions with Party A and Party B relating to the "go-shop" process provided by the Merger Agreement; and (v) information concerning PJSC's basis for determining R.G. Barry's share price could drop from $19.00 to $14.00 per share or lower if a deal with Party A was terminated, resulting in a potential $65 million loss to R.G. Barry and its shareholders. *See* Stipulation, Ex. A. ECF No. 18-3. This information was particularly material to R.G. Barry shareholders in light of the single-bidder sale process driven by Mill Road and Party A's $21.00 Alternative Proposal during the go-shop. Without this information previously omitted from R.G. Barry's proxy materials, R.G. Barry's public shareholders would have been misled about and/or unable to fully and fairly assess: (i) the effectiveness of the Board in orchestrating a robust and fair sales process, designed to achieve the best value reasonably available under the circumstances for the Company's shareholders; and/or (ii) the extent the Board in fact failed to adequately discharge its duties to act in the best interests of R.G. Barry's shareholders. *See*, *e.g.*, *In re Chips & Techs., Inc. S'holders Litig.*, No. 15832, 1998 Del. Ch. LEXIS 109, at *5-6 (Del. Ch. June 24, 1998) ("The supplemental disclosure document . . . contains a substantially expanded

section titled "Background of the Offer: Reasons for the Recommendation," . . . While it is unnecessary to decide the materiality as a matter of law of the additional information contained in [the disclosure document], I note that the disclosures there made are both substantial and helpful to an understanding of the decision to authorize the transaction with [the buyer] and to recommend it to the stockholders.").

Accordingly, the supplemental disclosure of this material additional information further supports final approval of the Settlement.

### D.    The Material Disclosures Regarding PJSC's Financial Analyses

When corporate directors seek shareholder action, they are obligated to disclose fully and fairly all material information within their control. *See, e.g., Netsmart*, 924 A.2d at 199. While they need not provide information that is simply "helpful," once directors take it upon themselves to disclose information, that information must not be misleading or materially incomplete. *See, e.g.*, *In re The MONY Grp. Inc. S'holder Litig.*, 852 A.2d 9, 24-25 (Del. Ch. 2004). To that end, once directors travel down the road of a "partial disclosure," they become obligated to provide an accurate, full, and fair characterization of events. *Id.* at 25; *see also In re Staples*, 792 A.2d at 954 (directors must "avoid partial disclosures that create a materially misleading impression").

This is particularly the case for disclosures concerning the analyses and valuation methods of a financial advisor relied upon in support of a transaction such as a merger or an acquisition. *See In re Pure Res.*, *S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002) ("In my view, it is time that this ambivalence be resolved in favor of a firm statement that stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely."). As the Delaware Court of Chancery has observed:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Only providing some of that information is insufficient to fulfill the duty of providing a "fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the[] board as to how to vote . . . rely."

*Netsmart*, 924 A.2d at 203-04 (citations omitted); *see also In re Pure Res.*, 808 A.2d at 449 ("[I]nvestment bankers' analyses . . . usually address the most important issue to stockholders – the sufficiency of the consideration being offered to them for their shares in a merger or tender offer.").

The Supplemental Disclosures provided the Company's shareholders with material information relating to the financial analyses conducted by PJSC leading to its issuance of the fairness opinion, and its conclusion that the deal was "fair" to R.G. Barry's stockholders, information which had been previously omitted from the Definitive Proxy.  Namely, R.G. Barry shareholders were provided with the transaction-by-transaction enterprise values and multiples for the *Selected Precedent Transactions Analysis* conducted by PJSC in connection with tis fairness opinion.[7]  Because these enterprise values and multiples formed the basis of PJSC's *Selected Precedent Transactions Analysis* underlying its fairness opinion, and the Board's recommendation to shareholders that the Merger is financially fair and thus that shareholders should vote in favor, they constitute information highly material to shareholders.  *See Turberg v. ArcSight*, C.A. No. 5821-VCL, at 43 (Del. Ch. 2011) (transcript attached as Exhibit 10 to the Acocelli Decl.) ("If you were to consider what really constitutes a fair summary, then the background multiples should be

---

[7]  According to the Definitive Proxy, PJSC's *Selected Precedent Transactions Analysis* consisted of reviewing and comparing selected publicly available financial information relating to twelve selected transactions announced between July 19, 2010 and May 14, 2013, which transactions generally were selected because they were transactions involving companies operating in similar segments and experiencing similar sector trends as compared to R.G. Barry, or transactions that PJSC, based on its experience and judgment as a financial advisor, deemed relevant in relation to the Merger.

on there, just like they're in there when you give them to the board . . . you would never see a board book that would go to the board without the background multiples"); *In re Celera Corp. S'holder Litig.*, No. 6304-VCP, 2012 Del. Ch. LEXIS 66, at *1212 (Del. Ch. Mar. 23, 2012), *rev'd in part on other grounds*, 2012 Del. LEXIS 658 (Del. 2012) ("[A] fair summary of a comparable companies or transactions analysis probably should disclose the market multiples derived for the comparable companies or transactions.").

In addition, the Supplemental Disclosures also provided Company shareholders with PJSC's method for calculating unlevered, after-tax free cash flows utilized in connection with its *DCF Analysis*. And, as discussed *supra* (at pp. 15, 19), the Supplemental Disclosures provided R.G. Barry stockholders with material information concerning how PJSC utilized management's financial projections and applied the financial impact of two illustrative hypothetical acquisitions developed by management in order to perform its *DCF Analysis*. Disclosure of complete and accurate information regarding a DCF analysis is highly material to shareholders who must vote on whether or not to approve an all-cash private transaction; courts have found the DCF analysis, driven by management financial projections, to be the most reliable indicator of value of a company's stock on the date of a merger transaction. *See, e.g.*, *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, No. 5002-CC, 2009 Del. Ch. LEXIS 210, at *2 (Del. Ch. Nov. 18, 2009) (holding that "the discounted cash flow analysis [is] arguably the most important valuation metric" for a company); *Netsmart*, 924 A.2d at 203 (where company filed to disclose projections underlying financial advisor's DCF analysis, finding that "projections of this sort are probably among the most highly-prized disclosures by investors").

Plaintiffs therefore respectfully submit that the Settlement, and the benefit it has provided in the form of the Supplemental Disclosures, is an excellent result for R.G. Barry and its

shareholders. For these reasons and as explained elsewhere herein, the proposed Settlement is well within the range of what is fair, reasonable, and adequate, and therefore should be granted final approval.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE GRANTED FINAL APPROVAL

### A.   Standard For Settlement Approval

There is a well-settled and longstanding policy within the Sixth Circuit and other courts favoring settlement of complex class and derivative actions. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-MD-1952, 2010 U.S. Dist. LEXIS 77645, at *33-34 (E.D. Mich. Aug. 2, 2010) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."); *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 U.S. Dist. LEXIS 16704, at *2 (S.D. Ohio Feb. 21, 2008) ("[i]n making this determination, the Court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions"), *aff'd sub nom. Bailey v. White*, 320 F. App'x 364 (6th Cir. 2009) (citation omitted); *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-249, 2009 U.S. Dist. LEXIS 126962, at *3 (S.D. Ohio Aug. 18, 2009) ("The Court recognizes  that settlement of a class action is generally favored and encouraged.") (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)).  Courts also particularly favor settlement in shareholder derivative actions, such as are involved in the instant litigation, "because such litigation is notoriously difficult and unpredictable." *Id.* (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (derivative litigation "'is notoriously difficult and unpredictable.'") (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973)).  Indeed, "'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal

litigation.'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

In determining whether to approve a proposed class or derivative litigation settlement as fair, reasonable, and adequate, courts consider and balance several factors, including:  (1) Plaintiffs' likelihood of ultimate success on the merits, balanced against the amount and form of relief offered in settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest.  *Amos v. PPG Indus.*, No. 2:05-CV-70, 2015 U.S. Dist. LEXIS 106944, at *4-5 (S.D. Ohio Aug. 13, 2015) (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006.  In reviewing a proposed class or derivative action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors.'"  *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

Importantly, in considering these factors, the task of the court "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *In re Telectronics Pacing Sys., Inc. Accufix Atrial "J" Leads Prods. Liab. Litig.*, 137 F. Supp. 2d 985, 1018 (S.D. Ohio 2001) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  Moreover, "[t]he fact that the plaintiff might have received more if the case had been fully litigated is no reason not to approve the settlement."  *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989).

An examination of each of these relevant factors weighs heavily in favor of granting final approval of the proposed Settlement of the Actions herein.

**B.    Balancing The Benefits Offered By The Settlement Against The Likelihood Of Success On The Merits Favors Final Approval Of The Settlement**

The Sixth Circuit has previously held that "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co*., 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig*., 726 F.2d 1075, 1086 (6th Cir. 1984)).  *See also Amos*, 2015 U.S. Dist. LEXIS 106944, at *6 (same); *Wess v. Storey*, No. 2:08-CV-623, 2011 U.S. Dist. LEXIS 41050, at *5 (S.D. Ohio Apr. 14, 2011) (same).  Moreover, "a class action settlement may be particularly beneficial to the class if the risk of losing the case on the merits is high."  *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 779 (N.D. Ohio 2010)

In negotiating the Settlement, Plaintiffs' Counsel thoroughly examined the facts and applicable law relating to Plaintiffs' claims and the arguments Defendants could advance in defending against those claims, and weighed the benefits secured by the Settlement against the inherent risks, costs, and uncertainties of continued litigation.  While Plaintiffs believe that their claims had and have substantial merit, even apart from the disclosure claims which have now been remedied by the Settlement and the Supplemental Disclosures, Plaintiffs recognized that they faced substantial risks in establishing Defendants' liability on Plaintiffs' other claims (*i.e.*, those relating to the reasonableness of the Merger price).  *See*, *e.g.*, *Amos*, 2015 U.S. Dist. LEXIS 106944, at *7 ("While the parties remain convinced of their respective positions, they also recognize the inherent risks of continuing to advance those positions in litigation."); *Stinson v. Delta Mgmt. Assocs*., 302 F.R.D. 160, 164-65 (S.D. Ohio 2014) ("The settlement provides relief to class members and eliminates the risks that the parties would otherwise bear if this litigation were to continue on for

more years.  While Plaintiff believes that he would ultimately prevail on these issues, there is an inherent risk of litigation and trial.").

For example, Plaintiffs would have faced a high hurdle in establishing direct claims for breach of fiduciary duty.  Plaintiffs would conceivably have continued to allege that Defendants directly harmed them and the Company's other public shareholders by failing to disclose all material information, and/or making materially misleading statements and representations, in connection with the Stockholder Vote on the Merger, preventing Settlement Class members from exercising their individual rights of corporate suffrage.[8]  However, under Ohio law, it has been held that "a plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed toward the corporation."  *Adair v. Wozniak*, 492 N.E.2d 426, 429 (Ohio 1986).  As the Ohio Supreme Court has held, a minority shareholder's claim must be brought derivatively if his claim is based upon an alleged injury that was suffered by "all other shareholders alike."  *Weston v. Weston Paper & Mfg. Co.*, 658 N.E.2d 1058, 1060 (Ohio 1996) (finding that minority shareholders' claims had to be brought derivatively because "[i]f any injuries occurred, they occurred to all the other shareholders alike.").

And even if the Court were to find that Plaintiffs have standing to bring direct claims for breach of fiduciary duty, Plaintiffs' success on the merits was far from assured.  If the Actions continued, Defendants would undoubtedly argue that they exercised valid "business judgment."  "Ohio courts adhere to the 'business judgment rule,'" and will not inquire into the wisdom of

---

[8]  *See, e.g., Carlson v. Rabkin*, 789 N.E.2d 1122, 1128 (Ohio Ct. App. 2003) (where alleged injuries "implicate individual rights of a member," "[t]hese are special injuries that are distinct from an injury suffered by all members" and "[t]herefore, these are direct claims"); *see also Smith v. Robbins & Myers*, 969 F. Supp. 2d 850, 862-64 (S.D. Ohio 2013) (finding allegations that a "flawed Proxy precluded the Company's shareholders 'from casting a fully informed vote' on the Merger" were properly pled as a direct claim.").

actions taken by the directors in the absence of fraud, bad faith or abuse of discretion." *Radol v. Thomas*, 772 F.2d 244, 256 (6th Cir. 1985).  The Ohio General Assembly has chosen to give great deference to the business judgment of corporate directors, and provides a statutory presumption that directors "act independently, in good faith, and having in mind the best interests of the corporation." *Henkel v. Aschinger*, 962 N.E.2d 395, 405 (Ohio Com. Pl. 2012) (citing O.R.C. section 1701.59(C)(1)).  Overcoming the presumption of the business judgment rule requires "clear and convincing evidence that the director has not acted in good faith."  O.R.C. section 1701.59(C)(1); *see also Monday v. Meyer*, No. 1:10 CV 1838, 2011 U.S. Dist. LEXIS 136858, at *15 (N.D. Ohio  Nov. 29, 2011).

Plaintiffs' derivative claims likewise faced significant challenges at the pleading stage because under Ohio Civil Rule 23.1, a derivative complaint must "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and, if necessary, from the shareholders of members; and the reasons for his failure to obtain the action or for not making the effort.  *See* Fed. R. Civ. P. 23.1(b)(3); *see also* Ohio R. Civ. P. 23.1.  As a result, shareholders generally do not have standing to bring a suit on behalf of the company "unless the board refuses to do so and that refusal is wrongful, fraudulent, or arbitrary, or is the result of bad faith or bias on the part of the directors." *Monday*, 2011 U.S. Dist. LEXIS 136858, at *9-10 (quoting *Drage v. Procter & Gamble*, 694 N.E.2d 479, 482 (Ohio App. 1997)).  Ohio law provides a limited exception to the demand requirement when the shareholder demonstrates that demand would be futile, *id*, but "establishing demand futility under Ohio law 'is not an easy task.'" *Henkel*, 962 N.E.2d at 405.  To demonstrate futility, a plaintiff bears the heavy burden of pleading, with particularity, that "the directors' minds are closed to argument and that they cannot properly exercise their business judgment in determining whether the suit should be filed." *Monday*, 2011

29

U.S. Dist. LEXIS 136858, at *9-10.  There is obviously no assurance that Plaintiffs would have succeeded in establishing demand futility with respect to their derivative claims, and doing so would have been difficult, to say the least.

Plaintiffs also faced obstacles in establishing certain of their discrete claims.  For example, Ohio law provides that a proxy need only convey material information.  *See Henkel*, 962 N.E.2d at 406.  Plaintiffs must identify specific statements rendered misleading by allegedly omitted information.  *See Kugelman v. PVF Capital Corp.*, 972 F. Supp. 2d 993, 997 (S.D. Ohio 2013).  Although Plaintiffs believe they raised strong allegations that PJSC's financial analyses omitted material facts, under Ohio law, shareholders need not "be given all the financial data they would need if they were making an independent determination of fair value in the first instance."  *Henkel*, 962 N.E.2d at 406.  Plaintiffs' claims regarding the sales process undertaken by Defendants similarly faced a high bar:  "[M]anagement is ordinarily not obligated to discuss the panoply of possible alternatives to a course of action it is proposing."  *Id.* (citations omitted).  Moreover, in the absence of a showing of disloyalty or lack of care in agreeing the preclusive deal measures such as those alleged here, such provisions "are reviewable as business judgments and are, thus, granted deference."  *In re IXC Commc'ns, Inc. S'holder Litig.*, *v. Cincinnati Bell, Inc.*, No. 17324, 1999 Del. Ch. LEXIS 210, at *29 (Del. Ch. Oct. 27, 1999).  Likewise, the Delaware Chancery Court has not ruled that standstill provisions are *per se* indicative of a breach of fiduciary duty.  *See In re Celera*, 2012 Del. Ch. LEXIS 66, at *82.  Defendants would have likely argued that all of these aspects of the case did not rise to the level of actionable offenses or breaches of fiduciary duty, resulting in hotly contested motion practice to resolve such issues.

Recognizing these and other risks and obstacles to obtaining a judgment on the merits on all of Plaintiffs' claims, Plaintiffs and their counsel negotiated a fair and reasonable compromise

in the form of the proposed Settlement, which provided material benefits for the Settlement Class in the form of the Supplemental Disclosures.  As a direct result of Plaintiffs' Counsel's efforts in litigating the Actions, Defendants divulged the previously undisclosed information to R.G. Barry's public shareholders which was necessary for shareholders to make a fully informed decision on whether or not to vote in favor of the Merger.  As detailed above (*see supra* § IV), such supplemental disclosures are generally considered a valuable and material benefit because, in cases in which shareholders are being asked to vote in connection with a transformative corporate transaction, "stockholders are entitled to disclosure of all material facts pertinent to the decisions they are being asked to make."  *In re Pure Res.*, 808 A.2d at 447-48 ("As a result, it is the information that is material to these various choices that must be disclosed.").  Thus, R.G. Barry shareholders, while not receiving monetary compensation, did receive consideration of no less importance.  In fact, as the Delaware Chancery Court explained in *In re Talley Industries, Inc. Shareholders Litigation*,

> [T]he timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.

1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 13, 1998).

With a fully-informed vote achieved, further litigation over monetary damages likely would not have succeeded.  *See, e.g.*, *Pfeffer v. Redstone*, 965 A.2d 676, 684 n.17 (Del. 2009) ("in the absence of coercion or disclosure violations, the adequacy of the price in a voluntary tender offer cannot be an issue") (citation omitted).  After weighing the expense, length, and uncertainty of continued litigation as well as the likelihood of obtaining a better result after continued

litigation, Plaintiffs and their counsel concluded that the Supplemental Disclosures provide ample consideration for the Settlement and release of the claims in the litigation.

Accordingly, after balancing the likelihood of success on the merits with the substantial relief obtained for the benefit of the Settlement Class in connection with the Settlement, this factor tips the scales in favor of granting final approval of the Settlement. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 U.S. Dist. LEXIS 46846, at *52 (S.D. Ohio Apr. 4, 2014) ("Under all of these circumstances, it cannot be said that the likelihood of success on the merits of plaintiffs' claims is certain. This factor therefore weighs in favor of approval of the Settlement Agreement.").

## C. The Risk, Complexity, and Delay of Further Litigation

As this Court and others in the Sixth Circuit have recognized, "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Amos*, 2015 U.S. Dist. LEXIS 106944, at *10 (citing *In re Broadwing*, 252 F.R.D. at 373; *see also Wess*, 2011 U.S. Dist. LEXIS 41050, at *8 (same); *In re Telectronics*, 137 F. Supp. 2d at 1013 ("Generally speaking, [m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citation omitted). Shareholder class and derivative litigation in the context of mergers and acquisitions is a notoriously complex and niche area of corporate litigation practice. Again, prevailing in such litigation is difficult because a board of directors approving a friendly merger deal is so often shielded by the business judgment rule unless it can be shown that the board violated one of its triad of duties of loyalty, care and/or candor. *See McMullin v. Beran*, 765 A.2d 910, 917-18 (Del. 2000); *Orman v. Cullman*, 794 A.2d 5, 20 (Del. Ch. 2002).

This litigation in particular has been ongoing for over two years and has been extremely complex, both factually and legally, since its inception. Without the proposed Settlement now

before the Court, Plaintiffs would have been required to engage in additional lengthy, complex, expensive, and burdensome litigation which would have likely drained substantial additional resources from both the parties and the Court, with at best uncertain prospects for a positive, more favorable outcome. This litigation involved difficult issues concerning the duties of directors and others to the public shareholders of a corporation in an end-stage, sale-of-control context. Like virtually all complex cases, this litigation (absent settlement) would potentially have continued for several years, through trial and appeal, involving great expense. *See Wess*, 2011 U.S. Dist. LEXIS 41050, at *9-10 (acknowledging that, "[d]ue to the legal and factual complexities, this case would be expensive to fully litigate and might take years to resolve" absent settlement.); *In re Telectronics*, 137 F. Supp. 2d at 1013 (Settlement of complex action "also serves the laudable goal of eliminating the costs and time attendant to continued litigation.").

Plaintiffs' Counsel have carefully considered and evaluated, *inter alia*, the relevant legal authorities, the facts and circumstances and the evidence adduced to date, the likelihood of prevailing on the claims asserted, the likelihood of obtaining additional economic and/or equitable relief over and above the benefits obtained by the Settlement, as well as the risk, expense and duration of continued litigation. Having done so, Plaintiffs' Counsel have concluded that the proposed Settlement is fair, reasonable and adequate and in the best interests of the Settlement Class. This factor also weighs in favor of final approval of the Settlement.

### D. Plaintiffs Have Completed Ample Discovery, Supporting The Settlement

The purpose of this particular factor is "[t]o ensure that class representatives have had access to sufficient information to evaluate their cases and to assess the adequacy of the proposed Settlement Agreement[.]" *Amos*, 2015 U.S. Dist. LEXIS 106944, at *12. "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery

33

but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. General Motors Corp.*, No. 05-CV-73991, 2006 U.S. Dist. LEXIS 14890, *58 (E.D. Mich. Mar. 31, 2006). Indeed, "[f]ormal discovery is not a necessary ticket to the bargaining table." *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004). *See also Amos*, 2015 U.S. Dist. LEXIS 106944, at *12 ("While Plaintiffs and [defendant] have not engaged in formal discovery, counsel represented at the fairness hearing that the parties informally exchanged information."); *Levell v. Monsanto*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (finding that although little formal discovery was conducted, class counsel retained experts and conducted informal discovery before negotiating the settlement agreement).

Thus, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *UAW*, 2006 U.S. Dist. LEXIS 14890, at *58-59 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (upholding settlement despite fact that little formal discovery had been conducted, reasoning that "[d]iscovery in its most efficient utilization should be totally extra-judicial. The Court should rarely be required to intervene. Being an extra judicial process, informality in the discovery of information is desired.")); *see also Redington v. Goodyear Tire & Rubber Co.,* No. 5:07CV 1999, 2008 U.S. Dist. LEXIS 64639, at *40-41 (N.D. Ohio Aug. 22, 2008) (factor supported settlement despite no formal discovery where, "[t]here was significant information available to the parties to negotiate their compromise, and there is more than an adequate basis and evidentiary record on which the Court can assess the parties' agreement.").

Here, the Parties and their counsel have conducted sufficient discovery to accurately assess the strengths and weaknesses of this litigation and to make an intelligent, well-informed decision that the Settlement is fair, reasonable, and in the best interests of the Settlement Class. Before

entering into the Settlement, Plaintiffs' Counsel received document productions from Defendants and third parties totaling nearly 6500 pages.  Moreover, the efforts of Plaintiffs and their counsel to achieve this Settlement included, among other things, devoting substantial time and resources to conduct an extensive investigation (including, *inter alia*, a thorough review of all SEC filings regarding the Merger by R.G. Barry, and Mill Road, as well as non-public documents concerning the Merger produced in discovery) with respect to the complex legal and factual issues relevant to the Actions and, with the assistance of a finance and valuation expert, thoroughly analyzing these issues.  In sum, sufficient investigation, discovery and analysis have been conducted to provide Plaintiffs and their counsel with ample information to confirm that the proposed Settlement is fair, reasonable and adequate.  This factor thus favors granting final approval of the Settlement as well.

### E.    Highly Experienced And Well-Informed Plaintiffs' Counsel Endorse The Settlement

There is an initial presumption that a settlement is fair and reasonable where, as here, the decision to enter into the Settlement was made by highly experienced counsel in complex shareholder litigation who reached that decision only after significant evaluation and arm's-length negotiations.  *See Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 U.S. Dist. LEXIS 85551, at *14 (N.D. Ohio Nov. 6, 2007) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'") (quoting *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).[9]

---

[9]  *See also Olden v. Gardner*, 294 F. App'x. 210, 219 (6th Cir. 2008) ("Under ordinary conditions, this court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *In re Broadwing*, 252 F.R.D. at 375 ("It is well settled that, in approving a class action settlement, the court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *Amos*, 2015 U.S. Dist. LEXIS 106944, at *14-15 ("The Court gives significant weight to the belief of experienced counsel that the settlement is in the best interest of the class."); *Redington*, 2008 U.S. Dist. LEXIS 64639, at *40 ("All counsel support

Here, the Settlement was negotiated at arm's length by highly qualified counsel who have considerable experience in complex shareholder derivative and class action litigation practice, and particularly litigation arising from mergers and acquisitions. *See Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 U.S. Dist. LEXIS 111711, at *3 (S.D. Ohio 2008) ("[c]lass counsel are all experienced class action litigators. . . . [having been] involved in dozens, if not hundreds, of such cases. [] His opinion that the proposed settlement is fair to the class is entitled to considerable weight."); *In re Telectronics*, 137 F. Supp. 2d at 1015 ("We find that these attorneys, serving with others as Class Counsel, are extremely qualified and experienced in medical class action litigation. Certainly, Class Counsel's recommendation to approve the settlement is well-informed. The Court heeds the recommendation of such experienced, professional, and competent Counsel.")

Thus, counsel's endorsement of the proposed Settlement warrants significant weight, and heavily supports a finding of final approval of the Settlement.

**F.    The Settlement Is The Result Of Good Faith, Arms-Length Negotiations, And Is Entirely Non-Collusive**

The proposed Settlement is the product of arm's-length, good-faith negotiations. As courts in the Sixth Circuit have advised, "[a]bsent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion." *Mees v. Skreened, Ltd.*, No. 2:14-CV-142, 2016 U.S. Dist. LEXIS 1242, at *6 (S.D. Ohio Jan. 6, 2016); adopted by, settled by 2016 U.S. Dist. LEXIS 8841 (S.D. Ohio Jan. 26, 2016).[10]  Indeed,

---

this settlement. The informed and reasoned judgment of plaintiffs' counsel, and their weighing of the relative risks and benefits of protracted litigation, is entitled to great deference.")

[10]  *See also Redington*, 2008 U.S. Dist. LEXIS 64639, at *52-53 ("The settlement process was arm's length, with each party representing and pursuing its own interests. Courts presume the absence of fraud or collusion unless there is evidence to the contrary."); *Brent v. Midland Funding, LLC*, No. 3:11-CV 1332, 2011 U.S. Dist. LEXIS 98763 (N.D. Ohio Sept. 1, 2011) (holding that "the courts respect the integrity of counsel and presume the absence of fraud and collusion in negotiating the settlement unless evidence to the contrary is offered."); *IUE-CWA v. GMC*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary.").

"courts customarily demand evidence of improper incentives for the class representatives or class counsel . . . before abandoning the presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands." *UAW*, 497 F.3d 615, 628 (6th Cir. 2007).  Thus, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with."  *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).

Here, there is no evidence to support a conclusion that there was any collusion among the Parties in reaching the Settlement.  To the contrary, the record before the Court, including evidence of contentious positions relating to the merits of Plaintiffs' claims and the negotiation of the Settlement, establishes that the Parties' conduct in this litigation was at all times adversarial and non-collusive.  Indeed, this complex litigation has been ongoing for over two years, and the Parties' entry into and finalization of the proposed Settlement was a result of arm's length, good faith negotiations which took place over the course of approximately 10 months.

The proposed Settlement here was the result of good faith, arms-length negotiations and was not the product of fraud or collusion, nor is there any evidence or indication otherwise; accordingly, this factor weighs in favor of final approval of the Settlement.

### G.    There Have Been No Objections To The Settlement, Further Supporting Final Settlement Approval

The reaction of class members to a proposed settlement is also a significant consideration in granting final approval.  *See Amos*, 2015 U.S. Dist. LEXIS 106944, at *16; *Wess*, 2011 U.S. Dist. LEXIS 41050, at *15.  "As courts have recognized, '[i]n the class action context, silence may be construed as assent.'"  *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 332 (W.D. Pa. 1997) (quoting *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 451 (W.D. Pa. 1987)).  Thus, "a relatively small number of class members who object is an indication of a settlement's fairness." *Brotherton*

*v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).[11]

Here, not a single shareholder/Settlement Class member (institutional or individual) has objected to any aspect of the Settlement or the Fee Request. Following entry of the Court's Preliminary Approval Order, Plaintiffs' Counsel retained the Garden City Group, LLC, an experienced and qualified notice administrator, as the Notice Administrator in this case tasked with disseminating the Court-directed best notice practicable under the circumstances to absent Settlement Class members. Acocelli Decl., ¶62. Beginning on April 4, 2016 through July 12, 2016, Notice was disseminated by first-class mail to 4,079 Settlement Class members and potential nominees in conformity with the Preliminary Approval Order. *Id.* at ¶63. (ECF No. 25, ¶6). Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel filed proof of mailing of the Notice with the Court on July 19, 2016. *Id.* (ECF No. 25).

The fact that not a single R.G. Barry shareholder, to date, has objected to the Settlement, is indicative that the Settlement enjoys the unanimous support of the Settlement Class, and is a factor which heavily supports final approval. Acocelli Decl., ¶¶ 4, 12, 62-65. *See Amos*, 2015 U.S. Dist. LEXIS 106944, at *16 ("There were no objections. The Settlement Class reaction therefore indicates the Settlement Class supports the Settlement Agreement."); *Wess*, 2011 U.S. Dist. LEXIS 41050, *16 ("No Class Members objected to the Settlement. As such, the Class reaction indicates the Class supports the Settlement.").[12]

---

[11] *See also Robinson v. Ford Motor Co.*, Nos. 1:04-CV-00844, 1:04-CV-00845, 2005 U.S. Dist. LEXIS 11673, at *17 (S.D. Ohio June 15, 2005) (stating that "a relatively small number of class members who object is an indication of a settlement's fairness."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *IUE-CWA*, 238 F.R.D. at 600 (where only 34 out of 32,000 class members objected, finding that "[t]his extremely minimal level of opposition represents significant supports by the Class for the Settlement Agreement.").

[12] Even assuming arguendo that some objections had been made (and as far as Plaintiff is aware, none have been made), this Court has held that "[o]f course, 'the fact that some class members object to the settlement does not by itself prevent the court from approving the agreements.'" *Amos*, 2015 U.S. Dist. LEXIS 106944, at *16 (citing *In re*

Accordingly, this factor weighs heavily in favor of final Settlement approval.

**H.     The Public Interest Is Served By Final Approval Of The Settlement**

It is well established that "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Gascho*, 2014 U.S. Dist. LEXIS 46846, at *55-56 (citing *In re Cardizem*, 218 F.R.D. at 530); *see also Amos*, 2015 U.S. Dist. LEXIS 106944, *17 ("There is certainly a public interest in the settlement of disputed cases that require substantial federal judicial resources to supervise and resolve."); *Stinson*, 302 F.R.D. at 165 ("Public policy generally favors settlement of class action lawsuits."). As the Court in *Lonardo* explained, "[c]lass actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile. Similarly, the law favors settlement of class actions for policy reasons." 706 F. Supp. 2d at 782.

Accordingly, approval of the Settlement is consistent with the goals and policies underlying class action and complex shareholder litigation and would serve the public interest. The proposed Settlement should therefore be finally approved.

**V.     CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER**

Pursuant the Preliminary Approval Order, the Court conditionally certified the following non-opt-out Settlement Class for settlement purposes under Federal Rules of Civil Procedure 23(a), 23(b)(1) and 23(b)(2):

> All record and beneficial owners of R.G. Barry common shares during the period beginning on May 2, 2014 (the announcement date of the Merger Agreement),

---

*Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 369, 376 (S.D. Ohio 2006); *see also IUE-CWA*, 238 F.R.D. at 600 ("A court should not withhold approval of a settlement merely because some class members object.").

through September 3, 2014 (the date of the consummation of the Merger) ("Class Period"), including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them.  Excluded from the Settlement Class are R.G. Barry Defendants, members of the immediate family of any R.G. Barry Defendant, any entity in which an R.G. Barry Defendant has or had a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded person.

In order to finally approve a proposed settlement, the Court must grant final certification of the related settlement class.  *Amos*, 2015 U.S. Dist. LEXIS 106944, at \*17.  Under Rule 23 of the Federal Rules of Civil Procedure, a case is appropriate for class treatment if:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. Proc. 23(a); *see also Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 195 (S.D. Ohio 2002) (setting forth Rule 23's requirements for class certification).  To be properly certified, a class action "must also pass at least one of the tests set forth in Rule 23(b).  *Amos*, 2015 U.S. Dist. LEXIS 106944, at \*23.  Here, each of the criteria of Rule 23 as well as Rules 23(b)(1) and (2) is satisfied, thereby making final certification of the Settlement Class appropriate and warranted.  Final certification of the Settlement Class should therefore be granted.

### A.    The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable

The numerosity requirement is met if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P.  23(a)(1).  Although "[t]his requirement is not amenable to a strict numerical test[,] … common sense dictates that at some point numbers alone will satisfy the numerosity requirement."  *Kennedy*, 206 F.R.D. at 195*; see also Walther v. Pension Plan for*

*Salaried Employees of the Dayton-Walther Corp.*, 880 F. Supp. 1170, 1177 (S.D. Ohio 1994) ("Rule 23 does not create a specific number which it deems to be sufficiently 'numerous' to permit class certification."). "Courts have observed that usually more than 40 members is adequate" to satisfy the numerosity requirement. *Mentis v. Delaware Am. Life Ins. Co*., C.A. No. 98C-12-023 WTQ, 2000 Del. Super. LEXIS 237, at *8, (Del. Super. Ct. May 30, 2000); *see, e.g.*, *Dubroff v. Wren Holdings, LLC*, C.A. No. 3940-VCN, 2010 Del. Ch. LEXIS 178, at *15-17 (Del. Ch. Aug. 20, 2010) (forty-five member class met the numerosity requirement); *Adams v. Anheuser-Busch Cos., Inc*., No. 2:10-CV-826, 2012 U.S. Dist. LEXIS 42364, at *8-10 (S.D. Ohio Mar. 28, 2012) (class of approximately 60 individuals sufficient to satisfy numerosity).

Numerosity is easily satisfied here. According to the Definitive Proxy, as of July 21, 2014, R.G. Barry had 11,178,921 common shares outstanding and entitled to vote in the Stockholder Vote, owned by hundreds of thousands of individual shareholders, and Notice was disseminated to 4,079 absent Settlement Class members and potential nominees. *See*, *e.g.*, *Wess*, 2011 U.S. Dist. LEXIS 41050, at *18 ("In the instant case, 220 Class Members were provided notice of the proposed Settlement via regular first class mail service. Therefore, there is no question that the class is so numerous that joinder of all members would be impracticable."); *Amos*, 2015 U.S. Dist. LEXIS 106944, at *18 ("There are more than 1,600 individuals in the [Settlement Class]. Therefore, there is no question that the class is so numerous that joinder of all members would be impracticable, and the Court finds that Rule 23(a)(1) is satisfied.").

Joinder of all Settlement Class members is particularly impracticable here given that Settlement Class members are geographically dispersed throughout the country. *See*, *e.g.*, *Adams*, 2012 U.S. Dist. LEXIS 42364, at *9-10 ("The fact that class members live in widespread areas of the country is a factor that may be considered in determining whether the numerosity requirement

has been satisfied."); *Gascho*, 2014 U.S. Dist. LEXIS 46846, at *24 (noting that joinder of tens of thousands of class members across multiple states would be impracticable); *Prater v. Ohio Educ. Ass'n*, No. C2041077, 2008 U.S. Dist. LEXIS 88511, at *7 (S.D. Ohio June 26, 2008) (finding joinder impracticable where class was in excess of 118 members who lived in states other than Ohio).  Thus, it would have been difficult, if not impossible, to join all of R.G. Barry's shareholders before this Court.

Accordingly, the numerosity requirement has been satisfied here.

**B.     There Are Issues Of Law And Fact Common To All Settlement Class Members**

The commonality requirement is satisfied where there are questions of law or fact common to the proposed class.  *See* Fed. R. Civ. P. 23(a)(2).  The test for satisfying the commonality requirement is qualitative rather than quantitative: there need be only a single issue common to the members of the class, but the issue's resolution must "advance the litigation."  *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998); *see also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) ("Rule 23(a) simply requires *a* common question of law or fact.") (emphasis in original).  As such, "[b]ecause even a single common question of law or fact will satisfy the requirement, commonality has been characterized as a low hurdle to class certification."  *Prater*, 2008 U.S. Dist. LEXIS 88511, at *7.

Here, there are numerous questions of law or fact capable of class-wide resolution, as all Settlement Class members were similarly harmed because of Defendants' alleged breaches of fiduciary duty in connection with the Merger.  *See, e.g.*, *In re Countrywide Corp. S'holder Litig.*, Consolidated C.A. No. 3464-VCN 2009 Del. Ch. LEXIS 44, at *51 (Del. Ch. Mar. 31, 2009) ("The plaintiffs allege injuries which all investors share in proportion to their holdings stemming from a common course of action by the Defendants in the alleged breaches of fiduciary duties owed to

42

the class in connection with the merger.  This is sufficient to meet the commonality requirement."); *In re Wm. Wrigley Jr. Co. S'holders Litig.*, Consolidated Civil Action No. 3750-VCL, 2009 Del. Ch. LEXIS 12, at *14 (Del. Ch. Jan. 22, 2009) ("[T]he claims of all [] stockholders other than the defendants are identical in challenging the process by which the merger was approved and the proxy materials used to solicit the stockholders to vote in favor of it."); *Marie Raymond Revocable Trust v. MAT Five LLC*, 980 A.2d 388, 400 (Del. Ch. 2008) (claim that defendant directors breached their fiduciary duties to the class was sufficient to meet the commonality requirement).

Therefore, sufficient questions of law or fact common to the Settlement Class exist to satisfy the commonality requirement, further supporting final certification of the Settlement Class.

### C.    Plaintiffs' Claims Are Typical Of The Settlement Class' Claims

With respect to the typicality requirement the Sixth Circuit has explained that "a representative's claims need not always involve the *same* facts or law provided there is a common element of fact or law [which unites the claims of the representative and the class]." *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 581 (S.D. Ohio 1993) (citing *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976) (emphasis added); *see also Prater*, 2008 U.S. Dist. LEXIS 88511, at *9 ("The claims of the named plaintiffs and the absent members must be typical, not identical or homogeneous.").

Rather, the typicality requirement asks whether there is a sufficient nexus between the alleged injuries to the class representative and the conduct affecting the class rendering the conduct complained of that of a collective nature.  *See Sprague*, 133 F.3d at 399; *see also Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (inquiry is whether the class representatives and putative class members' claims arise from the same practice or course of conduct engaged in by the defendants and whether their claims are based on the same legal theory).

43

Thus, "[d]iffering degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts is the same. Likewise, typicality may be found even if different defenses may apply to some class members." *Amos*, 2015 U.S. Dist. LEXIS 106944, at *20 (internal citation omitted).

In this case, Plaintiffs owned R.G. Barry common stock on the day that the Merger was announced and all relevant times thereafter. As such: (1) Plaintiffs were confronted with the same alleged injury as the others members of the Settlement Class of R.G. Barry public shareholders they seek to represent; (2) Plaintiffs' alleged injury resulted from the same alleged course of conduct by Defendants; and (3) Plaintiffs' claims are based on the same legal theory as the claims of the other members of the Settlement Class.

Because Plaintiffs' claims arise from the same course of conduct and are predicated on the same legal theories as the claims of the other members of the Settlement Class, the typicality requirement is satisfied. Plaintiffs' claims are typical of those of the rest of the Settlement Class, and this factor therefore supports final certification of the Settlement Class.

### D. Plaintiffs Have And Will Continue To Fairly And Adequately Protect The Interests Of The Settlement Class

To establish adequacy of representation, "plaintiffs must satisfy two elements. First, the representatives must have interests common with the unnamed members of the class. Second, it must be shown that the representatives—through qualified counsel—will vigorously prosecute the interests of the class." *Amos*, 2015 U.S. Dist. LEXIS 106944, at *21. Here, the Settlement Class representatives and Settlement Class members have been subjected to the same alleged misconduct and each has the same interest in achieving the best possible result. Plaintiffs' interests are not antagonistic towards the interests of the Settlement Class, and there are no insurmountable conflicts of interest (indeed, no apparent conflicts at all) between Plaintiffs and the other members

of the Settlement Class.  Since the inception of this litigation and the Actions, Plaintiffs and their counsel have vigorously and aggressively pursued the claims against Defendants on behalf of those Plaintiffs and the Settlement Class.  *See Prater*, 2008 U.S. Dist. LEXIS 88511, at *22 (adequacy met where "[plaintiffs] have each demonstrated willingness to participate actively in the litigation and to protect the interests of the unnamed class members."); *Gascho*, 2014 U.S. Dist. LEXIS 46846 at *37 (finding adequacy of representation where "[t]he Class Representatives and Class Counsel have also aggressively pursued the claims on behalf of the class.").

In addition, Plaintiffs have retained and been represented in the Actions by counsel who are highly experienced in class actions and corporate matters.  *See* Plaintiffs' Counsel's respective firm resumes attached as Exhibits A to Exhibits 6 through 9 to the Acocelli Decl.  Given the lack of conflict and the retention of experienced and competent counsel, Plaintiffs are adequate Settlement Class representatives.  *See, e.g.*, *Walther*, 880 F. Supp. at 1178 (finding adequacy met where plaintiffs' counsel has "vigorously represented Plaintiffs in the current litigation" and is "experienced in class action litigation"); *Kennedy*, 206 F.R.D. at 198 (finding counsel well-qualified to serve as class counsel where "[C]ounsel in this case has served as class counsel in factually similar cases"); *Gascho*, 2014 U.S. Dist. LEXIS 46846, at *37 (finding counsel adequate where counsel were experienced practitioners in class action litigation and consumer law).

Accordingly, the adequacy requirement is satisfied, and final certification of the Settlement Class should be granted.

### E.        Settlement Class Certification Is Proper Under Rules 23(B)(1) And 23(b)(2)

In addition to the requirements of Fed. R. Civ. P. 23(a), a proposed class must satisfy one of the three alternative requirements of Fed. R. Civ. P. 23(b).  *See, e.g.*, *Walther*, 880 F. Supp. at 1176-77 (noting that "if the foregoing [Rule 23(a)] prerequisites are satisfied, the court must then decide whether one of the factual situations described in Rule 23(b) has been met.").  While only

one of the conditions of Rule 23(b) must be satisfied to merit class certification, if the class in a particular meets more than one of the alternatives the court may certify the action under each section satisfied. *See e.g., Babcock v. Computer Assocs. Int'l.,* 212 F.R.D. 126, 133 (E.D.N.Y. 2003) (granting class certification under subsections 23(b)(1), (b)(2) and (b)(3) for breach of fiduciary duty claims).

Courts routinely find that class certification is appropriate under Fed. R. Civ. P. 23(b)(1) and (b)(2) in actions like this one which challenge the exercise of fiduciary responsibilities and most commonly certify under Rule 23(b)(1). *See, e.g.*, *In re Syncor ERISA Litig*., 227 F.R.D. 338, 346 (C.D. Cal. 2005) (noting that breach of trust by fiduciary similarly affecting the members of a large beneficiary class is a "classic example of a Rule 23(b)(1)(B) action").[13]

Here, pursuant to Fed. R. Civ. P. 23(b)(1), if separate actions were commenced by other Settlement Class members, Defendants would be subject to the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct and would, as a practical matter, be dispositive of the interests of other Settlement Class members. Additionally, pursuant to Fed. R. Civ. P. 23(b)(2), Defendants' conduct as alleged in the Actions amounted to a single course of conduct that affected all members of the Settlement Class, such that injunctive and/or declaratory relief would be appropriate with respect to the entire Settlement Class.

Accordingly, this Federal Court Action, which alleges that Defendants breached their fiduciary duties to the Settlement Class in connection with the Merger, is properly certifiable and should be finally certified pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2).

---

[13] *See also In re Celera*, 2012 Del. Ch. LEXIS 66, at *66. *In re Cox Radio, Inc. S'holders Litig.*, Consolidated Civil Action No. 4461-VCP, 2010 Del. Ch. LEXIS 102, at *27-28 (Del. Ch. May 6, 2010); *Turner v. Bernstein*, 768 A.2d 24, 33 (Del. Ch. 2000).

## VI.    PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

For their efforts in achieving the substantial benefits under the Settlement, Plaintiffs' Counsel respectfully requests that the Court approve their Fee Request for an award of attorneys' fees in the amount of aggregate amount of up to $318,000, consisting $300,000 in fees plus up to $18,000 in reasonable, itemized, out-of-pocket, expenses incurred in prosecuting this litigation on behalf of the Settlement Class.[14] Acocelli Decl., ¶¶1, 14.  Defendants have no objection to Plaintiffs' Fee Request.

The amount of attorneys' fees that Plaintiffs would seek in this application was agreed upon in the wake of an intense arms'-length negotiation among highly experienced and well-informed counsel, and commenced only after the substantive terms of the Settlement had been finalized.  *Id.* at ¶¶69-70. Accordingly, Defendants had no incentive other than to negotiate the lowest fee possible.  "Where, as here, the value of the settlement to class members is reasonable," and where "the parties negotiated the payment of attorneys' fees and costs after having reached agreement" on substantive relief, it is more likely that a fee award is reasonable and the risk of collusion is significantly less.  *Gascho*, 2014 U.S. Dist. LEXIS 46846, at *74-75 ("separate negotiations suggest a lower risk of collusion where, as here, relief to the class is fair, reasonable, and adequate.").  Under the circumstances of this case, and when measured against the applicable legal standards and precedent, Plaintiffs' Counsel respectfully submit that the Fee Request (which encompasses the work and time spent by Plaintiffs' Counsels' respective law firms in both Actions), is fair and reasonable in light of the amount of work done by Plaintiffs'

---

[14]  After the Settlement had been negotiated, the Parties met and conferred through arm's-length negotiations regarding the amount of attorneys' fees and expenses to be paid to Plaintiffs' Counsel in connection with the prosecution of the Actions, subject to Court approval.  However, the Parties were unable to reach an agreement as to the amount of fees and expenses for which Plaintiffs would seek Court approval before the Notice was issued to the Settlement Class. The Notice advised that, in the event that no such agreement was reached by the Parties, Plaintiffs' Fee Request would not exceed $650,000.  *See* Acocelli Decl. ¶¶ 70 and Ex. 3..  Following further hard-fought negotiations, the Parties were able to reach agreement and Defendants agreed not to oppose a fee request in the aggregate amount of up to $318,000, consisting of $300,000 in fees plus up to $18,000 in reasonable, itemized, out-of-pocket, expenses, subject to Court approval.  *Id.*  Any award of attorneys' fees will not reduce the benefits to the Settlement Class, nor is the Settlement Class obliged to pay any of the fees or expenses awarded by the Court.  *Id.*, ¶70.

Counsel in litigating the Actions, and the substantial benefits achieved for the benefit of R.G. Barry shareholders.

### A.    The Applicable Legal Standard

Rule 23(h) expressly authorizes the Court to "award reasonable attorney's fees and nontaxable costs ... by the parties' agreement." Fed. R. Civ. P. 23(h).  One aspect of the responsibility afforded to the Court by this subsection is to ensure "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citations omitted).  This Court has previously recognized that "[n]egotiated and agreed-upon attorneys fees as part of a class-action settlement are encouraged as an 'ideal' toward which the parties should strive." *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 U.S. Dist. LEXIS 18838, at *2-3 (S.D. Ohio Feb. 28, 2008) (citations omitted).  "[C]ourts are especially amenable to awarding negotiated attorneys fees and expenses in a reasonable amount where that amount is in addition to and separate from the defendant's settlement with the class [and] fees negotiated and paid separate and apart from the class recovery are entitled to a 'presumption of reasonableness.'" *Id.* at *3.  (citations omitted).

In this Circuit, where "[a] litigant [] creates a 'common fund' or 'substantial benefit' allocable with some exactitude to a definite group of persons [the litigant] may acquire an equitable claim against that group for the costs incurred in creating the fund or benefit." *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).  Courts calculate an appropriate attorney's fee in common benefit class actions by two methods:  (1) the percentage of the benefit method; and (2) the lodestar method.  "Use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and that the determination of which method is appropriate in any given case will depend upon its circumstances." *Rawlings*, 9 F.3d at 517.  The Sixth Circuit recognizes either method as appropriate and "require[s] only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id.*, 516 (citing *Smillie*, 710 F.2d at 275).  Thus, this Court is

permitted to "select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.* at 516 (affirming district court's use of the lodestar method); *cf.*, *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) (affirming district court's methodology basing fee award on a percentage of the fund and then cross-checked the fee against class counsel's lodestar).

Here, although there is no "common fund," there was a "substantial benefit," in the form of the additional information contained in the Current Report on Form 8-K containing the Supplemental Disclosures, which was provided to the R.G. Barry shareholders who comprise the Settlement Class prior to the Stockholder Vote on the Merger. *See*, *e.g.*, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (in actions where "it may be impossible to assign monetary value to the benefit ... the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders") (citation and internal quotations omitted).  As such, the Fee Request should be evaluated pursuant to six factors used by courts in the Sixth Circuit to determine whether the requested fee is "reasonable under the circumstances."  These factors are as follows:  "(1) the value of the benefit rendered to the corporation or its stockholders, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides." *Ramey*, 508 F.2d at 1196 (citations omitted); *see In re Broadwing*, 252 F.R.D. at 381 (same).

## B.     Application Of The Legal Standard Supports Approval Of The Fee Request

Here, application of the six *Ramey* factors supports the requested attorneys' fees in the aggregate amount of up to $318,000, consisting of $300,000 in fees plus up to $18,000 in reasonable, itemized, out-of-pocket, expenses.

### 1.      The Value of the Benefit Rendered to the Settlement Class

Courts in the Sixth Circuit consider the value of the benefit to the Settlement Class to be
the most important of the *Ramey* factors in determining the reasonableness of a fee request.  *See
Lonardo*, 706 F. Supp. 2d at 795 ("The most important *Ramey* factor is the first") (citing *In re
Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 935 (N.D. Ohio 2003)
(calling the benefit to the class the "primary" *Ramey* factor)).

As discussed above in more detail (*see* §§ IV and V(B) *supra*), Plaintiffs' Counsel have
conferred a significant benefit on the Settlement Class by obtaining the Supplemental Disclosure
prior to the Stockholder Vote in order to enable R.G. Barry shareholders to cast a fully informed
vote on the Merger.  As a result of the supplemental disclosure of this information, holders of over
11 million R.G. Barry shares were able to make informed, intelligent, and rational evaluations as
to the current and future value of their R.G. Barry stock and, in turn, whether they should vote for
or against the Merger.  Because, absent these efforts, such information would not have been made
available to R.G. Barry's shareholders prior to their Stockholder Vote on the Merger, the
Settlement provided a substantial benefit to R.G. Barry's shareholders.

The fact that not a single member of the Settlement Class, to date, has objected to any part
of the Settlement or Fee Request signifies their belief that the Settlement conferred a benefit for
the Settlement Class.  *See Lazy Oil*, 95 F. Supp. 2d at 332 ("As courts have recognized, [i]n the
class action context, silence may be construed as assent.") (citing *In re GNC S'holder Litig.*, 668
F. Supp. at 451)); *Lonardo*, 706 F. Supp. 2d at 795 ("Finally, as this Court noted in *Sulzer*, the
paucity of objections suggests that the Settlement Class Members believe the Settlement
Agreement is beneficial.").

Moreover, the requested Fee Request of in the aggregate amount of up to $318,000, consisting
of $300,000 in fees plus up to $18,000 in reasonable, itemized, out-of-pocket, expenses, is well within the

range (and indeed below) recent fee awards in similar merger cases in the Sixth Circuit and nationwide where the settlement consisted of supplemental disclosures. *See, e.g.*, *In re Associated Estates Realty Corp. S'holder Litig.*, No. 1:15-cv-00857-DCN, slip op., ¶14 (N.D. Ohio June 8, 2016) (approving $390,000 fee and expense award for supplemental disclosures) (Acocelli Decl., Ex. 11); *Nichting v. DPL, Inc.*, No. 3:11-cv-00141, slip op., ¶12 (S.D. Ohio Feb. 24, 2012) (approving $700,000 fee and expense award for supplemental disclosures) (Acocelli Decl., Ex. 12); *In re Meadowbrook Ins. Group, Inc. S'holder Litig.*, No. 5:15-cv-11057-JCO-MJH, slip op., ¶12 (E.D. Mich. April 7, 2016) (approving $425,000 fee and expense award for supplemental disclosures relating to management's financial projections, the financial analyses performed by the company's financial advisor, and the financial advisor's potential conflicts of interests) (Acocelli Decl., Ex. 13); *In re LCA-Vision S'holder Litig.*, No. A1401239, slip op., ¶18 (Ohio Com. Pl.- Hamilton Cnty. Aug. 10, 2015) (approving $562,500 fee and expense award for supplemental disclosures relating to the company's financial projections, the sales process leading up to the merger, conflicts of interest of the financial advisor, and assumptions underlying the analyses performed by the financial advisor, among other things) (Acocelli Decl., Ex. 14); *Continuum Capital v. Nolan*, No. 5687-VCL, 2011 Del. Ch. LEXIS 69, at *10 (Del. Ch. Feb. 3, 2011) (approving $525,000 fee and expense award for supplemental disclosures).

Accordingly, the substantial benefit obtained for the benefit of Settlement Class members justifies the Fee Request.

### 2. Society's Stake in Rewarding Class Counsel who Obtain Benefits for the Class

"Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling … claimants to pool their claims and resources to achieve a result they could

not obtain alone." *In re Sulzer*, 268 F. Supp. 2d at 936 (citing *In re Telectronics Pacing Sys.*, 137

F. Supp. 2d at 1043). As the Court in *In re Rio Hair Naturalizer Prods. Liab. Litig.* articulated:

> The Court also finds the "benefit to society" factor satisfied in this case. Without
> compensation to those who are willing to undertake the inherent complexities and
> unknowns of consumer class action litigation, enforcement of the federal and state
> consumer protection laws would be jeopardized. As the Supreme Court has
> recognized, without a class action, small claimants individually lack the economic
> resources to vigorously litigate their rights. Thus, attorneys who take on class
> action matters enabling litigants to pool their claims provide a huge service to the
> judicial process.

1996 U.S. Dist. LEXIS 20440, at *54 (E.D. Mich. 1996) (internal citation omitted); *see also Wess*,

2011 U.S. Dist. LEXIS 41050, at *28 ("Absent adequate compensation, counsel will not be willing

to undertake the risk of contingent fee class action litigation."). To that end, "the Court must

ensure that Class Counsel is fairly compensated in order to facilitate the goal of class actions – *i.e.*,

to provide a vehicle for collective action to pursue redress for tortious conduct that is not feasible

for an individual litigant to pursue." *Lonardo*, 706 F. Supp. 2d at 795.

Here, absent the efforts of Plaintiffs' Counsel in prosecuting these complex Actions on a

purely contingent basis, R.G. Barry shareholders would have been deprived of the meaningful

Supplemental Disclosures that were vital to their ability to cast a fully informed vote on the

Merger. *See, e.g.*, *Lonardo*, 706 F. Supp. 2d at 795 ("But for this litigation, it is a virtual certainty

that these consumers would not have received a rebate of any kind."); *In re Sulzer*, 268 F. Supp.

2d at 936 ("Absent this class action, most individual claimants would lack the resources to litigate

a case of this magnitude.").

This factor therefore supports the granting of the Fee Request.

### 3. Plaintiffs' Counsel Undertook this Litigation on a Purely Contingent Basis

"This factor accounts for the substantial risk an attorney takes when he or she devotes

substantial time and energy to a class action despite the fact that it will be uncompensated if the

case does not settle and is dismissed." *Lonardo*, 706 F. Supp. 2d at 796.  Plaintiffs' Counsel undertook this litigation on a purely contingent basis, at a risk of total loss, with no assurance of recovering any expenses or attorneys' fees.  *See Gascho*, 2014 U.S. Dist. LEXIS 46846 at *100-101 (recognizing the substantial public interest in compensating class counsel for the amount of work done, where "Class Counsel undertook the litigation on a contingent fee basis and devoted substantial time and energy to the action despite the risk of not being compensated."); *Wess*, 2011 U.S. Dist. LEXIS 41050, at *28 ("Class Counsel accepted this case on a contingent basis and, therefore, have received no compensation during the course of this litigation and have incurred significant expenses in litigating for the benefit of the Class.  Any fee award or expense reimbursement to Class Counsel has always been at risk and completely contingent on the results achieved.  The risk was monumental in this case where Defendants vigorously contested the litigation.").

Accordingly, this factor strongly supports the Fee Request.

### 4. The Value of the Services on an Hourly Basis

Plaintiffs' Counsel collectively spent 737.70 hours and incurred a total aggregate lodestar of $407,264.44, plus collective unreimbursed expenses of $18,629.44 in litigating the Actions and obtaining the related Settlement and the Supplemental Disclosures, substantial material benefits for the Settlement Class.[15]  *See* Acocelli Decl., ¶82.  The Acocelli Fee Decl., the Bronson Fee

---

[15]  Plaintiffs' Counsels' declarations attesting to their time and expenses are attached as Exhibits 6 through 9 to the Acocelli Decl.  *See* Declaration of Richard A. Acocelli on Behalf of WeissLaw LLP in Support of Request for Attorneys' Fees and Expenses ("Acocelli Fee Decl."); Declaration of Kent A. Bronson on Behalf of Milberg LLP in Support of Request for Attorneys' Fees and Expenses ("Bronson Fee Dec;."); Declaration of John C. Camillus on Behalf of Law Office of John C. Camillus, LLC in Support of Request for Attorneys' Fees and Expenses ("Camillus Fee Decl."); and Declaration of James B. Rosenthal on Behalf of Cohen Rosenthal & Kramer LLP in Support of Request for Attorneys' Fees and Expenses ("Rosenthal Fee Decl.").  These declarations, executed under penalty of perjury, break down the time of each individual comprising Plaintiffs' Counsel who billed hours on this litigation by detailing the individual's hours expended and hourly billing rate, and aver that the hours expended and costs incurred were reasonably necessary to prosecute the Actions.  Each individual's specific experience in shareholder litigation is

Decl., the Camillus Decl., and the Rosenthal Decl. each contains a summary of the time spent by the attorneys and paralegals at each of Plaintiffs' Counsel's law firms who worked on the Actions, by hours expended, with their current hourly billing rate, as well as the costs and expenses for which reimbursement is requested.

The work reflected was necessary, performed without duplication to the extent possible, and ultimately successfully resulted in the Settlement.  As indicated, the regular hourly rates of Plaintiffs' Counsel multiplied by the number of hours expended results in a total overall lodestar of $407,264.44.  *Id.*; *see also* Acocelli Decl., Exs. 6 through 9.  *See generally, Bailey*, 2008 U.S. Dist. LEXIS 18838, at *7 (discussing lodestar calculation).  As such, Plaintiffs' Counsel's Fee Request represents a ***negative*** lodestar multiple of .74, which further underscores the reasonableness of the requested fee.[16]  Plaintiffs' Counsel's Fee Request also includes a request for reimbursement of costs and expenses, which totaled $18,000, slightly less than the actual out-of-pocket costs and expenses incurred by Plaintiffs' Counsel in prosecuting the Actions.  *See* Acocelli Decl., ¶¶82, 85. *see also* Exs. 6 through 9.  This factor therefore also supports the Fee Request.

---

reflected in the firm resumes of Plaintiffs' Counsel, attached as Exhibits A to each of Exhibits 6 through 9 to the Acocelli Decl.

[16]  This is in accord with case law from other courts, and Plaintiffs' Counsel respectfully submit that the multiplier here would be considered reasonable (indeed, more than reasonable) in almost any jurisdiction in this country.  *See Rawlings*, 9 F.3d at 517 (holding that the trial court did not abuse its discretion in awarding a multiplier of 3); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (multiplier of 9.3); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (multiplier of 5); *In re Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, PA.*, 778 F.2d 890 (1st Cir. 1985) (multiplier of 6); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (multiplier of 8.9 in a derivative action); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) ("Most lodestar multiples awarded in cases like this are between 3 and 4"), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828 (E.D. Mich. 1998) (recommending multiplier of 2); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) (approving multiplier of 3.7 in a derivative action); *In re Fine Host Corp. Sec. Litig.*, No. 3:97-CV-2619 (MDL No. 1241), 2000 WL 33116538 (D. Conn. Nov. 8, 2000) (approving multiplier of 3.6).

### 5.    The Complexity of the Litigation

As discussed above (*see* § V(C) *supra*), this Court and others in the Sixth Circuit have recognized that "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Amos*, 2015 U.S. Dist. LEXIS 106944, at *10.  The complexity of Plaintiffs' claims in the Actions and the arm's length negotiations that were conducted leading to the Settlement weigh in favor of approving the Fee Request.  *See In re Sulzer*, 268 F. Supp. 2d at 939-40 ("The complexity and novelty of the factual and legal issues presented, and the settlement negotiations necessary to resolve those issues, were exceptional.") (citing *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282 (S.D. Ohio 1996) ("Counsel were confronted with myriad complex legal and factual questions in bringing this action and in negotiating the settlement.  The structure of the settlement agreement approved by the Court reflects this fact.")).

### 6.    The Professional Skill and Standing of Counsel

As evident from their firm resumes, Plaintiffs' Counsel consists of highly experienced and skilled shareholder advocates with nationwide practices specializing in complex shareholder litigation, particularly in the context of mergers and acquisitions.  *See In re Sulzer*, 268 F. Supp. 2d at 940 ("The Court has reviewed the attorney biographies and narratives of services performed, which were submitted by each applicant.").  On the other side of the litigation, the skills and standing of Defendants' counsel is very high.  Defendants were represented by highly regarded counsel in the shareholder litigation arena.  Thus, the Settlement was reached only after intensive arm's-length negotiations between the Parties, who were each represented by counsel with extensive experience and expertise in shareholder litigation.

Accordingly, this factor, as well as all of the other *Ramey* factors, strongly supports granting the Fee Request.

## VII.    CONCLUSION

Plaintiffs and their counsel therefore respectfully request that the Court grant final certification of the Settlement Class, grant final approval of the proposed Settlement itself, and grant the Fee Request in its entirety.

DATED: July 26, 2016

Respectfully submitted,

/s/ John C. Camillus
John C. Camillus (0077435)
Law Office of John C. Camillus, LLC
P.O. Box 141410
Columbus, Ohio 43214
Telephone: (614) 558-7254
Facsimile:  (614) 559-6731
jcamillus@camilluslaw.com

*Counsel for Plaintiff LR Trust*

**OF COUNSEL:**

WeissLaw LLP
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 683-3025
Facsimile: (212) 682-3010
racocelli@weisslawllp.com
mrogovin@weisslawllp.com
kkeenan@weisslawllp.com

*Counsel for Plaintiff LR Trust*

*Additional Counsel:*

Milberg LLP

Kent A. Bronson
Roy Shimon
One Pennsylvania Plaza
49th Floor
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
kbronson@milberg.com
rshimon@milberg.com

Cohen Rosenthal & Kramer LLP
James Rosenthal
700 West St. Clair Avenue
Cleveland, OH  44113
Telephone: (216) 781-7956
Facsimile: (212) 781-8061
jbr@crklaw.com

***Counsel for State Court Action Plaintiff***
***Neil Scarfuto***

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2016, I electronically filed the foregoing paper(s) with

the Clerk of the Court using the ECF system, which will send notification of such filing to all

ECF participants.

/s/ John C. Camillus