LR Trust,

  Plaintiff,

   v.

Nicholas DiPaolo, *et al.*,

  Defendants.

Case No. 2:14–cv–612

Judge Michael H. Watson
Magistrate Judge Jolson

## OPINION AND ORDER

Plaintiff LR Trust ("LR Trust"), a holder of common stock of Defendant R.G.
Barry Corporation ("R.G. Barry"), brings this action individually and derivatively
against R.G. Barry and members of the R.G. Barry Board of Directors,
Defendants Nicholas DiPaolo, David P. Lauer, David L. Nichols, Janice E. Page,
Greg. A. Tunney, Thomas M. Von Lehman, and Harvey Weinberg (collectively,
"Board Members") (Board Members collectively with R.G. Barry, "Defendants"),
alleging that Defendants attempted to obtain shareholder approval of a merger
through a materially incomplete and misleading preliminary proxy statement in
violation of federal law and in breach of Board Members' fiduciary duties. LR
Trust moves, unopposed, for final approval of the settlement, final certification of
the settlement class, and approval of award of attorneys' fees and

reimbursement of expenses. ECF No. 26. For the reasons that follow, LR

Trust's unopposed motion is **GRANTED**.

## I. BACKGROUND

### A.    Alleged Wrongdoing

On May 2, 2014, R.G. Barry announced that the Board Members had

authorized R.G. Barry to enter into a merger agreement ("Merger Agreement"),

pursuant to which Mill Road Capital II, L.P., MRGB Hold Co., and MRVK Merger

Co. (collectively, "Mill Road") would acquire all of the outstanding shares of R.G.

Barry ("the Merger"). Acocelli Decl. ¶ 15, ECF No. 26-1. The Merger was valued

at approximately $215 million. *Id.*

R.G. Barry filed a preliminary proxy with the Securities and Exchange

Commission ("SEC") regarding the Merger on June 12, 2014 ("Preliminary

Proxy"). *Id.* at ¶ 19. Defendants filed amendments to the Preliminary Proxy on

June 23, 2014, July 16, 2014, and July 29, 2014. *Id.*

On August 1, 2014, R.G. Barry filed a definitive proxy statement

("Definitive Proxy Statement"). *Id.* at ¶ 29. A shareholder vote on the proposal to

adopt the Merger Agreement was scheduled for September 3, 2014 (the

"Shareholder Vote"). *Id.*

### 1.    The State Court Action

On May 8, 2014, Neil Scarfuto, an R.G. Barry shareholder, filed a putative

class action on behalf of himself and all similarly-situated R.G. Barry shareholders against Board Members, R.G. Barry, and Mill Road in the Fairfield County Court of Common Pleas, Fairfield County, Ohio, captioned *Scarfuto v. R.G. Barry Corporation*, Case No. 14 CV 344 (respectively, the "State Court Action" and the "State Court"). *Id.* at ¶ 16. Mr. Scarfuto later filed an amended derivative and class action complaint in the State Court Action, which Board Members, R.G. Barry, and Mill Road moved to dismiss. *Id.* at ¶¶ 16, 20.

On August 6, 2014, the State Court granted leave to file a second amended derivative and class action complaint in the State Court Action, which mooted the motion to dismiss. *Id.* at ¶ 26. The amendments removed Mill Road as a defendant and alleged, *inter alia*, that Board Members breached their fiduciary duties in several ways, including by: (1) failing to maximize shareholder value in connection with the Merger, evidenced by, *inter alia*, restricting deal protection devices that disproportionately benefited Mill Road; and (2) making materially misleading statements and/or failing to disclose material information in the Preliminary Proxy. *Id.* at ¶ 25.

## 2. The First LR Trust Action

On May 14, 2014, LR Trust, an R.G. Barry shareholder, filed a direct shareholder class action in the Fairfield County Court of Common Pleas, Fairfield County, Ohio, captioned *LR Trust v. R.G. Barry Corporation*, Case No. 14 CV

362, which challenged the Merger on behalf of R.G. Barry shareholders against the Board and R.G. Barry ("the First LR Trust Action"). *Id.* at ¶ 17. LR Trust dismissed the First LR Trust Action on June 9, 2014. *Id.* at ¶ 18.

### 3. The Federal Action

LR Trust instituted the present action by filing a verified derivative and class action complaint on behalf of R.G. Barry shareholders against R.G. Barry and Board Members on June 24, 2014, challenging the Merger ("the Federal Court Action"). *Id.* at ¶ 21; Compl., ECF No. 1. LR Trust specifically alleges that the Board Members breached their fiduciary duties in connection with the Merger in the following ways: (1) failing to provide a sufficient sales process; (2) failing to consider a possibly superior bid from another party; (3) approving insufficient consideration in relation to the Merger; (4) including in the Merger Agreement certain provisions that favored Mill Road; and (5) making materially misleading statements and/or failing to disclose material information in the Preliminary Proxy, including, *inter alia*, information regarding the background of the Merger and the financial analyses completed by R.G. Barry's financial advisor. Acocelli Decl. ¶ 21, ECF No. 26-1; Compl., ECF No. 1.

## B. Negotiations and Preliminary Approval

In July and early August of 2014, the parties in the State Court Action and the Federal Court Action (collectively, "the Parties") met and conferred several

times regarding, *inter alia*, discovery requests of LR Trust and Mr. Scarfuto (collectively, "Named Plaintiffs") and terms of a stipulated protective order. Acocelli Decl. ¶ 27, ECF No. 26-1. During the same time, LR Trust prepared a motion for a temporary restraining order and preliminary injunction, seeking production of certain discovery on an expedited basis. *Id.* LR Trust's motion also sought to temporarily enjoin the planned shareholder vote on the Merger Agreement ("Stockholder Vote") until this discovery was completed. *Id.* at ¶¶ 27, 29. LR Trust provided a draft of its motion in an attempt to further the Parties' negotiations regarding Named Plaintiffs' expedited discovery demands. *Id.* at ¶ 28.

In accordance with the Parties' negotiations and stipulated protective order, R.G. Barry and the Board thereafter began a rolling production of internal documents regarding the Merger. *Id.* at ¶ 30. According to Named Plaintiffs, a review of these documents revealed that the Preliminary Proxy and/or the Definitive Proxy improperly omitted certain material information that prevented R.G. Barry's public shareholders from making fully informed decisions when voting on the Merger. *Id.* at ¶ 31.

On August 14, 2014, Named Plaintiffs served a written settlement demand on Defendants ("the Demand"). Acocelli Decl. ¶ 32, ECF No. 26-1. The Demand contained requests for supplemental disclosures of additional material

information about the Merger to the shareholders. *Id.* The Parties thereafter engaged in extensive arm's-length negotiations regarding these requests. *Id.*

The Parties eventually reached an agreement-in-principle of the State Court Action and the Federal Action (collectively, "the Litigation"), initially memorialized in a memorandum of understanding ("MOU"), *id.* at ¶ 33, and later set forth in the proposed Stipulation of Settlement, ECF Nos. 18-3 & 26-2 ("Stipulation"). On August 22, 2014, pursuant to the agreement in the MOU, R.G. Barry filed with the SEC the Current Report on Form 8-K containing supplemental disclosures regarding the Merger ("the Supplemental Disclosures"). Acocelli Decl. ¶ 33, ECF No. 26-1. The Supplemental Disclosures were filed with the SEC with sufficient time prior to the Shareholder Vote on September 3, 2014. *Id.*

Under the MOU, Defendants also agreed to provide additional discovery to Named Plaintiffs in order to confirm the fairness, reasonableness, and adequacy of the proposed settlement ("Confirmatory Discovery"). *Id.* at ¶¶ 35–39. The Confirmatory Discovery, which included the depositions of representatives of R.G. Barry as well as production of confidential documents that continued into July 2015, enabled Named Plaintiffs' counsel to determine that the Supplemental Disclosures provided R.G. Barry's shareholders with additional information

sufficient to make a fully informed decision as to whether or not to vote in favor of the Merger. *Id.* at ¶¶ 38–39.

Thereafter, Named Plaintiffs moved for preliminary approval of the proposed settlement. ECF No. 18. On March 14, 2016, the Court preliminarily approved the proposed settlement, conditionally certified a class for settlement purposes only, appointed Named Plaintiffs LR Trust and Neil Scarfuto as class representatives, appointed WeissLaw LLP and Milberg LLP as counsel for the class ("Class Counsel"), appointed the Law Office of John C. Camillus LLC as liason counsel to the class, approved and directed the issuance of notice to the class, and scheduled a fairness hearing. Prelim. Approval, ECF No. 20. The Court also established a procedure for the filing of written objections to the proposed settlement. *Id.* at ¶¶ 15–17.

The Undersigned held a fairness hearing, conducted pursuant to Federal Rule of Civil Procedure 23(e), on August 9, 2016. No members of the class appeared at the hearing. Thereafter, Named Plaintiffs filed time records in further support of their request for attorneys' fees and expenses. ECF No. 28.

This matter is now ripe for consideration.

## C.    Conditionally Certified Class

The conditionally certified class ("Settlement Class" or "Class Members") consists of the following:

[A]ll record and beneficial owners of R.G. Barry common shares during the period beginning on May 2, 2014 (the announcement date of the Merger Agreement), through September 3, 2014 (the date of the consummation of the Merger) ("Class Period"), including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, claiming under, any of them, and each of them. Excluded from the Settlement Class are R.G. Barry Defendants, members of the immediate family of any R.G. Barry Defendant, any entity in which an R.G. Barry Defendant has or had a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded person.

Prelim. Approval ¶ 4, ECF No. 20.

## D. The Proposed Stipulation

The proposed Stipulation memorializes that, as a direct result of the pursuit of this action and the State Court Action, and in consideration for the settlement and release of all settled claims (as defined in the proposed Stipulation) ("Settled Claims"), R.G. Barry filed the Supplemental Disclosures in a Form 8-K with the SEC on August 22, 2014. Stip. ¶¶ 1(a) & 4, ECF No. 18-3. The Supplemental Disclosures provided additional material information to R.G. Barry shareholders, including the events, facts, and circumstances leading up to the Merger and the financial analyses underlying the Merger. Stip. Ex. A., ECF No. 18-3 (detailing material information); Acocelli Decl. ¶ 41, ECF No. 26-1. Equipped with this material information, "R.G. Barry shareholders were able to decide based on full

and complete information whether or not to vote for the proposed Merger." Acocelli Decl. ¶ 43, ECF No. 26-1.

Finally, Defendants, without admitting any wrongdoing, acknowledge in the proposed Stipulation that the filing and pursuit of this action and the State Court Action as well as the discussions with Class Counsel were the sole causes of Defendants' decision to make the Supplemental Disclosures. Stip. 9, ECF No. 18-3; Acocelli Decl. ¶ 42, ECF No. 26-1.

## E.    Notice

Garden City Group, LLC ("GCG") was retained as the Notice Administrator in connection with the settlement of this action. Fraga Aff. ¶ 1, ECF No. 25-1. In accordance with the Preliminary Approval Order, ECF No. 20, GCG mailed 4,079, notices to potential nominees and Class Members. *Id.* at ¶ 6. The notices provided the potential Class Members with a copy of the "Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing" (the "Notice"). *Id.* at ¶ 2; Fraga Aff. Ex. A, ECF No. 25-1 (copy of the Notice). The Notice described the proposed settlement, including the request for attorneys' fees and expenses. Notice, ECF No. 25-1. The Notice also provided the time and location of the Settlement Hearing and explained the procedures for objecting to the proposed settlement and request for attorneys' fees. *Id.* at 6. The Notice specifically advised that the deadline for objecting was July 26, 2016. *Id.*

Consistent with the requirements under the Class Action Fairness Act ("CAFA"), the Notice was also sent by certified mail to the Attorneys General of the United States, the 50 states, and the District of Columbia and by FedEx International to the Attorneys General of Puerto Rico, American Samoa, Northern Mariana Islands, U.S. Virgin Islands, and Guam. Cabrera Decl. ¶¶ 2–4, ECF No. 21-1.

Named Plaintiffs moved for final approval of the Stipulation and for an award of attorneys' fees and expenses on July 26, 2016. Mot., ECF No. 26. Defendants have not responded to Named Plaintiffs' motion. As previously noted, the Court conducted a fairness hearing on August 9, 2016. Counsel for Named Plaintiffs and Defendants appeared at the hearing. No appearance was made by or on behalf of any Class Member or objector.

This matter is now ripe for consideration.

## II. CLASS CERTIFICATION

The Court retains broad discretion in determining whether an action may be certified as a class action, but must first perform a "rigorous analysis" of the requirements under Federal Rule of Civil Procedure 23. *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000) (internal quotation marks omitted). Rule 23(a) establishes four prerequisites to class certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). *See also*, *e.g.*, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). "In addition to

fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). Here, Named Plaintiffs seek class certification under Rule 23(b)(1) and (b)(3). The Court will consider each of these requirements for class certification.

## A. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all member is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Although this is not a "strict numerical test," "substantial numbers" of affected people are sufficient to satisfy this requirement. *In re Whirlpool Corp.*, 722 F.3d at 852 (internal quotation marks omitted).

Here, Notice was sent to 4,079 absent Class Members. Fraga Aff. ¶ 6, ECF No. 25-1. Joinder of thousands of Class Members scattered throughout the United States is impractical. *See, e.g., Adams v. Anheuser-Busch Cos., Inc.*, No. 2:10–cv–826, 2012 WL 1058961, at *4 (S.D. Ohio Mar. 28, 2012) ("The fact that class members live in widespread areas of the country is a factor that may be considered in determining whether the numerosity requirement has been satisfied."). The Court is satisfied the numerosity prerequisite has been met.

## B. Commonality

Under Rule 23(a)(2), Named Plaintiffs must prove that there are questions

of fact or law common to the class. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). "To demonstrate commonality, plaintiffs must show that class members have suffered the same injury." *In re Whirlpool Corp.*, 722 F.3d at 852. *See also Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) ("Rule 23(a) simply requires *a* common question of law or fact.") (emphasis in original).

In this case, Named Plaintiffs and the Class Members' claims arise from harm caused by Defendants' alleged breaches of fiduciary duty in connection with the Merger. *See, e.g., In re Countrywide Corp. S'holders Litig.*, C.A. No. 3464–VCN, 2009 WL 846019, at *13 (Del. Ch. Mar. 31, 2009) ("The Named Plaintiffs allege injuries which all investors share in proportion to their holdings stemming from a common course of action by the Defendants in the alleged breaches of fiduciary duties owed to the class in connection with the merger. This is sufficient to meet the commonality requirement."); *In re Wm. Wrigley Jr. Co. S'holders Litig.*, No. 3750–VCL, 2009 WL 154380, at *3 (Del. Ch. Jan. 22, 2009) ("[T]he claims of all [] stockholders other than the defendants are identical in challenging the process by which the merger was approved and the proxy materials used to solicit the stockholders to vote in favor of it."). For this reason, the commonality requirement has been satisfied. *See id.*

## C.    Typicality

A named plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). *See also Prater v. Ohio Educ. Ass'n*, No. C2 04 1077, 2008 WL 2566364, at *3 (S.D. Ohio June 26, 2008) ("The claims of the named plaintiffs and the absent members must be typical, not identical or homogeneous."); *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 196 (S.D. Ohio 2002) ("Differing degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts is the same. . . . Likewise, typicality may be found even if different defenses may apply to some class members.") (internal citation omitted).

Here, the Named Plaintiffs, like the Settlement Class, owned R.G. Barry common stock at the time the Merger was announced and at relevant times thereafter. Accordingly, Named Plaintiffs and the Class Members suffered the same alleged injury arising from the same alleged course of conduct. Named Plaintiffs' claims are also based on the same legal theory as the claims of the Class Members. For these reasons, the typicality requirement has been satisfied.

## D. Adequacy of Representation

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In considering adequacy of representation, the Court considers two factors: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id*.

As discussed above, the Named Plaintiffs' claims are typical of the Settlement Class, motivating them to pursue class claims. In addition, the Court has received no objections suggesting that Named Plaintiffs will not vigorously pursue the class claims. This record persuades the Court that Named Plaintiffs will effectively advocate for the Settlement Class in pursuing their own claims.

Moreover, Class Counsel have extensive experience in class actions and corporate matters. *See* Exhs. 6–9 (copies of firm resumes), attached to Acocelli Decl., ECF No. 26-1. In light of the Named Plaintiffs' and Class Counsel's ability to vigorously prosecute the claims of the Settlement Class and because there is

no conflict of interest between the Named Plaintiffs and the rest of the Settlement Class, the Court finds that Named Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Settlement Class.

## E.    Rule 23(b)

Having determined that the four prerequisites of Rule 23(a) are satisfied, the Court now considers whether this action may properly be maintained as a class action under one of the subdivisions of Rule 23(b). Here, Named Plaintiffs seek class certification under Rule 23(b)(1) and (b)(2). Rule 23(b)(1) authorizes a class action if pursuing separate actions by or against individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or would create a risk of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]" Fed. R. Civ. P. 23(b)(1)(A), (B). Rule 23(b)(2) permits a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

Other courts have previously concluded that class certification under Rule (b)(1) and (b)(2) is appropriate where the plaintiffs challenge the exercise of fiduciary duties. *See, e.g., In re Cox Radio, Inc. S'holders Litig.*, 2010 WL 1806616, at *8 (Del. Ch. 2010) ("Delaware courts repeatedly have held that actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable under both subdivisions (b)(1) and (b)(2)."); *In re Syncor Erisa Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005) ("A classic example of a Rule 23(b)(1)(B) action is one which charges 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust.'") (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999)); *Turner v. Bernstein*, 768 A.2d 24, 33–34 (Del. Ch. 2000) (certifying class under Rule 23(b)(1) where shareholders alleged directors failed to disclose material information before shareholders approved merger).

In this case, under Rule 23(b)(1), Defendants would face the risk of inconsistent or varying adjudications if other Class Members filed separate actions. Such adjudications would establish different standard of conduct and would essentially be dispositive of other Class Members' interests. In addition, under Rule 23(b)(2), injunctive and/or declaratory relief would be appropriate as to all of the Class Members because Defendants' alleged conduct constituted a

single course of conduct that affected all Class Members. For these reasons, the Court finds that this class is certifiable under Rule 23(b)(1) and (b)(2). *Id.*

Accordingly, the Court **GRANTS** the motion to approve the Settlement Class for purposes of settlement and approves the maintenance of this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) and (b)(2).

### III. APPROVAL OF THE PROPOSED CLASS SETTLEMENT

In deciding whether to approve the proposed settlement, the Court must also consider whether the Stipulation is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).

For the reasons that follow, the Court concludes that the Stipulation is fair, adequate, and reasonable.

## A.    The Risk of Fraud or Collusion

First, the Court finds that there is no evidence—or even a suggestion—that the settlement was the product of fraud or collusion. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."). The Stipulation is the result of arm's-length, well-researched, and protracted negotiations over the course of approximately ten months. *See* Acocelli Decl. ¶¶ 32–38, ECF No. 26-1. The Court concludes that this factor favors approval of the Stipulation.

## B.    Complexity, Expense, and Likely Duration of the Litigation

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D. N.Y. 2000)). Here, the difficulty Named Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Stipulation.

The Parties have been litigating in this Court for nearly three years. Given the complexity of the facts, claims, and defenses raised in this case, Defendants would be incentivized to consider appealing an adverse decision. The Stipulation presents

the opportunity for a prompt and substantial benefit to the Class Members, with relatively limited costs and fees incurred. Settling the case now will result in the saving of time and money to the Parties and the Court.

If this matter is not settled at this time, there would, inevitably, be additional discovery. There would also likely be summary judgment motions, pre-trial motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort.

Furthermore, the additional delay due to post-trial motions and the appellate process could prolong an already protracted litigation.

Accordingly, this factor also weighs in favor of approving the Stipulation. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and the uncertainty of protracted litigation.

## C.    The Amount of Discovery Engaged in By the Parties

To confirm that Named Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement" Stipulation, the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation

commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id.*

In this case, the Parties engaged in extensive informal discovery. In August of 2014, Defendants produced internal non-public documents, including, *inter alia*, minutes of meetings of R.G. Barry's Board Members regarding the Merger, written presentations made to Board Members by R.G. Barry's financial advisor, Peter J. Solomon Company, L.P. ("PJSC") that contained PJSC's financial analysis relating to the Merger, and some communications between third-party bidders and R.G. Barry and/or PJSC. Acocelli Decl. ¶¶ 30–32, ECF No. 26-1. Defendants later also provided additional confidential, non-public documents relevant to Named Plaintiffs' claims, including additional emails regarding the Merger. *Id.* at ¶¶ 34–39. Named Plaintiffs received from Defendants and third parties nearly 6,500 pages of documents. *Id.* at ¶ 54. In addition, Named Plaintiffs conducted the depositions of David P. Lauer, R.G. Barry's lead director, and Jeffrey Hornstein, Managing Director of PJSC's Mergers and Acquisitions Group and lead financial advisor on the R.G. Barry engagement. *Id.* at ¶¶ 36, 55.

In short, this record demonstrates that both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made well-informed decisions to enter into the Stipulation. This factor weighs in favor of approving the proposed Stipulation.

## D. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, Named Plaintiffs face a heavy burden in establishing direct claims for breach of fiduciary duty. For example, under Ohio law, "[a] plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third party directed towards the corporation." *Adair v. Wozniak*, 23 Ohio St.3d 174, 175 (Ohio 1986). Notably, a minority shareholder must bring a derivative action if that

shareholder's alleged injury was shared by "all other shareholders alike."

*Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St. 3d 377, 379 (Ohio 1996).

Moreover, even if Named Plaintiffs could establish standing to bring direct claims for breach of fiduciary duty, Defendants would likely argue that they exercised their business judgment. "Ohio courts adhere to the 'business judgment rule,' and will not inquire into the wisdom of actions taken by the directors in the absence of fraud, bad faith or abuse of discretion." *Radol v. Thomas*, 772 F.2d 244, 256 (6th Cir. 1985). To overcome the presumption of the business judgment rule, Named Plaintiffs must present "clear and convincing evidence that the director has not acted in good faith." O.R.C. § 1701.59(C)(1). *See also Monday v. Meyer*, No. 1:10 CV 1838, 2011 WL 5974664, at \*5 (N.D. Ohio Nov. 29, 2011) (same).

Accordingly, due to the existence of uncertainties inherent in their claims, Named Plaintiffs' likelihood of success on the merits remains uncertain. This factor therefore weighs in favor of approving the proposed Stipulation.

### E. The Opinions of Class Counsel and Class Representatives

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Stipulation is entitled to deference. *See, e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has

competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Sols., LLC*, No. 2:10–cv–0729, 2012 WL 1945144, at \*7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel have extensive experience in complex shareholder derivative and class action litigation and corporate matters. *See* Acocelli Decl. ¶ 60, ECF No. 26-1; ECF Nos. 26-7, 26-8, 26-8, 26-9, & 26-10 (copies of firm resumes). After significant informal discovery and protracted arm's-length negotiations, the Parties reached a settlement in principle. Equipped with extensive experience, Class Counsel have concluded that this settlement is not only fair and reasonable but also an excellent result and confers substantial benefits on the Settlement Class. Acocelli Decl. ¶¶ 59–60, ECF No. 26-1. Named Plaintiffs also approve the Stipulation. *Cf.* Stip. ¶¶ 7–8, ECF No. 18-3. The Court therefore finds that this factor favors approval of the proposed Stipulation.

## F. The Reaction of Absent Class Members

The Court must also consider the reaction of the absent class members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Here, individual notices were sent by first class mail to the 4,079 Class Members. Fraga Aff. ¶ 6, ECF No. 25-1; Acocelli Decl. ¶¶ 62–65, ECF No. 26-1. Notice was also sent by certified mail to the Attorneys General of the United States, the 50 states, and the District of Columbia and by FedEx International to the Attorneys General of Puerto Rico, American Samoa, Northern Mariana Islands, U.S. Virgin Islands, and Guam. Cabrera Decl. ¶¶ 2–4, ECF No. 21-1. Despite such notice, no objections were filed, and no Class Members appeared at the fairness hearing, which creates the inference that all or most of the shareholders had no concerns about the proposed settlement. This positive response from the Settlement Class weighs in favor of approving the settlement. *See*, *e.g.*, *In re Broadwing*, 252 F.R.D. at 376.

### G.    The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007) (citations omitted). In this case, the Stipulation confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources. The Court therefore finds that this factor favors approving the settlement.

In sum, after considering all of the relevant factors, the Court concludes that the Stipulation provides a substantial benefit to the parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## IV. ATTORNEYS' FEES AND COSTS

### A.   Attorneys' Fees

Before the Notice was issued to the Settlement Class, the Parties were unable to agree on the amount of fees and expenses for which Named Plaintiffs would seek Court approval.  Acocelli Decl. ¶ 70, ECF No. 26-1.  The Notice advised that, in the event that the Parties were unable to agree as to this amount, Named Plaintiffs' request for fees and expenses would not exceed $650,000. Notice PAGEID # 337, ECF No. 25-1.  Following additional arm's-length negotiations, Defendants agreed to pay $300,000, in attorney's fees.  Acocelli Decl. ¶¶ 1, 14, 70, ECF No. 26-1.  Any award of attorneys' fees will not reduce the benefits to the Settlement Class, nor is the Settlement Class obligated to pay any of the fees or expenses awarded by the Court.  *Id.* at ¶ 70.  Defendants have not opposed Named Plaintiffs' request for fees.

Federal Rule of Civil Procedure 23(h) authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement."  Named Plaintiffs' successful pursuit of this action supports an award of reasonable attorneys' fees.  *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto– Lite Co.*, 396 U.S. 375 (1970)).  "[C]ourts are especially amenable to awarding negotiated attorneys fees and expenses in a reasonable amount where that

amount is in addition to and separate from the defendant's settlement with the class. . . . [F]ees negotiated and paid separate and apart from the class recovery are entitled to a 'presumption of reasonableness.'" *Bailey v. AK Steel Corp.*, No. 1:06–cv–468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) (internal citations omitted).

"A litigant who creates a 'common fund' or 'substantial benefit' allocable with some exactitude to a definite group of persons may acquire an equitable claim against that group for the costs incurred in creating the fund or benefit." *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983). In such common fund class actions, courts utilize two methods in determining reasonable attorneys' fees: The percentage of the benefit method and the lodestar method. *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (recognizing that the district court had a choice between the two methods). Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id.* at 516 (citing *Smillie*, 710 F.2d at 275).

While there was no "common fund" created in this action, Named Plaintiffs contend that a "substantial benefit" was conferred on the Class in the form of the additional material information contained in the Form 8-K containing the

Supplemental Disclosures. Named Plaintiffs therefore take the position that the

Court should consider whether the fee request is reasonable under the

circumstances. Under the circumstances of this specific case, particularly where

Defendants have not opposed Named Plaintiffs' fee request and the Class has

received a "substantial benefit," the Court agrees. *See cf. See Ramey*, 508 F.2d

at 1196 (recognizing "the importance of fair and informed corporate suffrage" and

therefore finding that plaintiffs "rendered a substantial service to the corporation

and its shareholders" where "it may be impossible to assign monetary value to

the benefit") (internal quotation marks and citations omitted). Accordingly, the

Court will consider the following factors in determining whether the fee request is

reasonable under the circumstances:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Id.*

The Court concludes that all of these factors weigh in favor of approving an

award of attorneys' fees.

As to the first factor, the Court has already described at length above the

substantial benefit conferred on the Class in the form of the Supplemental

Disclosures, which enabled the R.G. Barry shareholders to cast a fully informed vote on the Merger. This factor therefore weighs in favor of approving the requested award.

Second, society's stake in rewarding attorneys who produce such benefits militates in favor of an award of the requested attorneys' fees. Without the substantial benefit of the Supplemental Disclosures, the Class would have been denied the ability to meaningfully evaluate the propriety of the Merger and therefore would have been unable to cast a fully informed vote on the Merger. This factor supports the approval of the fee request.

Third, Class Counsel agreed to undertake this case on a contingency basis. Acocelli Decl. ¶ 78, ECF No. 26-1. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. *Id.* at ¶¶ 78–80. This factor weighs in favor of approving the requested fee award. *See, e.g., In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.").

The Court next considers whether the fourth factor, the value of the services on an hourly basis, favors the proposed fee award. A cross-check using Class Counsel's lodestar weighs in favor of granting the requested fee award of

$300,000. Class Counsel collectively expended 737.70 hours on this case. Acocelli Decl. ¶ 82, ECF No. 26-1 (averring to a 737.70 aggregate total number of hours expended); Acocelli Decl. ¶ 6, ECF No. 26-7 (averring that WeissLaw LLP expended 378 hours on this case); Bronson Decl. ¶ 7, ECF No. 26-8 (averring that Millberg LLP expended 316 hours on this case); Camillus Decl. ¶ 7, ECF No. 26-9 (averring that the Law Offices of John C. Camillus expended 30.5 hours on this case); Rosenthal Decl. ¶ 7, ECF No. 26-10 (averring that Cohen, Rosenthal & Kramer LLP expended 13.20 hours on this case).[1] *See also* Billing Records, ECF Nos. 28-1, 28-2, 28-3 & 28-4. Class Counsel's hourly rates are reasonable under the circumstances of this particular case. *See* Acocelli Decl. ¶¶ 7–10, ECF No. 26-7; Bronson Decl. ¶¶ 8–11, ECF No. 26-8; Camillus Decl. ¶¶ 8–10, ECF No. 26-9; Rosenthal Decl. ¶¶ 8–11, ECF No. 26-10. *See also* Billing Records, ECF Nos. 28-1, 28-2, 28-3 & 28-4. Class Counsel's total aggregate lodestar is $407,264.44. *See id.*; Acocelli Decl. ¶¶ 82–83, ECF No. 26-1; Acocelli Decl. ¶ 3, ECF No. 26-7. In other words, the amount of fees requested is less than what the fee would be under the lodestar calculation, strongly favoring approval of the requested amount. *See* Acocelli Decl. ¶ 82 (explaining that the fee request represents a negative lodestar multiplier of

---

[1] For ease of reference, the term "Class Counsel" as used in this section includes Class Counsel, the Law Office of John Camillus, and the law firm of Cohen, Rosenthal & Kramer LLP.

approximately .74); *Kritzer v. Safelite Sols.*, LLC, No. 2:10–cv–0729, 2012 WL 1945144, at \*10 (S.D. Ohio May 30, 2012) ("As for the value of the services rendered on an hourly basis, this factor strongly favors the fee requested by Named Plaintiffs' counsel. The amount of fees requested (a maximum of $235,000.00) is less than what the fee would be under a lodestar calculation.").

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also militate in favor of granting the requested award. This is a complex verified derivative and class action that challenged the Merger on behalf of the R.G. Barry shareholders and asserted claims for breach of fiduciary duty. As discussed above, the procedural history and the facts surrounding this case are lengthy and complicated and the legal issues presented complex.

Class Counsel have extensive experience in shareholder class actions and derivative litigation similar to this action. Acocelli Decl. ¶ 91, ECF No. 26-1; Acocelli Decl. ¶ 3, ECF No. 26-7; Bronson Decl. ¶¶ 3–4, ECF No. 26-8; Camillus Decl. ¶¶ 3–4, ECF No. 26-9; Rosenthal Decl. ¶¶ 3–4, ECF No. 26-10. As discussed above, the hours expended and time records submitted by Class Counsel further underscore their competency and efficient handling of this matter, favoring approval. *See also* Acocelli Decl. ¶ 91, ECF No. 26-1; Acocelli Decl. ¶ 3, ECF No. 26-7; Acocelli Decl. ¶¶ 6–7, ECF No. 28-1; Bronson Decl. ¶¶

3–4, ECF No. 26-8; Camillus Decl. ¶¶ 3–4, ECF No. 26-9; Rosenthal Decl. ¶¶ 3–4, ECF No. 26-10; Billing Records, ECF Nos. 28-1, 28-2, 28-3, 28-4.

For all of these reasons, the Court concludes that these factors favor approval of the fee award of $300,000, to Class Counsel.

## B. Settlement Administration Costs and Out-of-Pocket Expenses

As set forth above, the Parties were unable to agree on the amount of fees and expenses for which Named Plaintiffs would seek Court approval before the Notice was issued to the Settlement Class. Acocelli Decl. ¶ 70, ECF No. 26-1. The Notice advised that, in the event that the Parties were unable to agree as to this amount, Named Plaintiffs' request for fees and expenses would not exceed $650,000. Notice PAGEID # 337, ECF No. 25-1. Following additional arm's-length negotiations, Defendants agreed to pay up to $18,000, in reasonable, itemized, out-of-pocket expenses. Acocelli Decl. ¶¶ 1, 14, 70, ECF No. 26-1.

Class Counsel avers that out-of-pocket expenses currently amount to $18,629.44, which include travel, telephone, legal research, photocopying, meals, filing fees, and Court costs. Acocelli Decl. ¶ 85, ECF No. 26-1 (averring that Class Counsel incurred an aggregate total of $18,629.44, in out-of-pocket costs); Acocelli Decl. ¶ 11, ECF No. 26-7 (averring that WeissLaw LLP incurred a total of $7,957.57, in out-of-pocket costs); Bronson Decl. ¶ 12, ECF No. 26-8 (averring Millberg LLP incurred a total of $8,813.58, in out-of-pocket costs);

Camillus Decl. ¶ 11 (averring that the Law Offices of John C. Camillus, incurred a total of $1,210, in out-of-pocket costs); Rosenthal Decl. ¶ 12, ECF No. 26-10 (averring that Cohen, Rosenthal & Kramer LLP incurred a total of $648.29, in out-of-pocket expenses). The Court finds that all of these costs are reasonable and necessary to litigate and settle this case and therefore approves the request of $18,000, for out-of-pocket expenses. *Cf. Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *8 (S.D. Ohio Sept. 9, 2016).

For the foregoing reasons, the Court **GRANTS** the unopposed motion for final approval of the settlement, final certification of the Settlement Class, and approval of the award of attorneys' fees and expenses, ECF No. 26, and **ORDERS** as follows:

1.    The Parties' Stipulation of Settlement is approved as fair, reasonable, and adequate;

2.    The following Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a), (b)(1), and (b)(2):

> All record and beneficial owners of R.G. Barry common shares during the period beginning on May 2, 2014 (the announcement date of the Merger Agreement), through September 3, 2014 (the date of the consummation of the Merger), including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of, claiming under, any of them, and each of them. Excluded from the Settlement Class are R.G. Barry Defendants, members of the immediate family of any R.G. Barry Defendant, any entity in

which an R.G. Barry Defendant has or had a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded person;

3.    LR Trust and Neil Scarfuto are finally approved as the class representatives of the Settlement Class;

4.    WeissLaw LLP and Milberg LLP are approved as Class Counsel for the Settlement Class;

5.    The Law Office of John C. Camillus LLC is approved as Liason Counsel to the Settlement Class;

6.    Named Plaintiffs' request for attorneys' fees in the amount of $300,000, and for costs in the amount of $18,000, is finally approved; and

7.    As provided in the Stipulation, this action is **DISMISSED with prejudice.** The Clerk is **DIRECTED** to enter **FINAL JUDGMENT.**

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**